IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| SHANNON WHITE, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>v.<br><br>SANTA FE NATURAL TOBACCO COMPANY, INC.,<br><br>　　　　Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Shannon White ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Defendant Santa Fe Natural Tobacco Company, Inc. ("Santa Fe" or "Defendant"), and alleges, based upon personal knowledge as to herself and her own acts and upon information and belief as to all other matters, as follows:

## I. INTRODUCTION

1. This is a class action lawsuit arising from Defendant's labeling, packaging, and marketing of its Natural American Spirit cigarettes as, among other things, "NATURAL" and "100% ADDITIVE FREE."

2. These claims are prominently displayed on the labels of each pack of Defendant's Natural American Spirit cigarettes as well as throughout Defendant's marketing materials and on its website.

3. Defendant's claims are intended to, and do, mislead consumers into believing that its Natural American Spirit cigarettes are healthier or less harmful than other cigarettes that do not bear such claims on their labels.

4. Defendant's claims are false and misleading. Natural American Spirit cigarettes are no healthier or less harmful than other cigarettes that are not labeled "NATURAL" or "100% ADDITIVE FREE." Defendant knows that its cigarettes provide no added benefits to smokers and that they are equally as harmful as other brands.

5. On August 27, 2015, Defendant received a warning letter from the U.S. Food and Drug Administration ("FDA") notifying Defendant that it was selling or distributing "adulterated" cigarette products. Defendant's Natural American Spirit cigarettes were considered "adulterated" because they were being sold or distributed as "modified risk tobacco products" without an FDA order in effect that permits such sale or distribution. A true and correct copy of the FDA's letter dated August 27, 2015 is attached hereto as Exhibit A (hereinafter the "FDA Letter").

6. Throughout the Class Period (defined below), Defendant made uniform misrepresentations on the labels of its Natural American Spirit cigarettes, which misrepresentations were communicated to Plaintiff and every member of the Class at every point of sale and consumption. Plaintiff and Class members relied on Defendant's misrepresentations that its Natural American Spirit cigarettes were, among other things, "NATURAL" and "100% ADDITIVE FREE" in purchasing these cigarette products.

7. Defendant's parent, the second largest tobacco company in the United States, Reynolds American Inc., acknowledges that Defendant's Natural American Spirit cigarettes are "priced higher than most other competitive brands." The apparent reason for this is because Natural American Spirit cigarettes are "differentiated from key competitors through [the] use of all natural, additive-free tobacco, including styles made with organic tobacco." Reynolds American also recognizes the importance of the public perception that Defendant's cigarettes are "NATURAL" and "100% ADDITIVE FREE" because "[c]ompetition in the cigarette category is based primarily on *brand positioning*, including price, product attributes and *packaging*, consumer loyalty, *promotions*, *advertising* and retail presence."[1]

---

[1] Reynolds American Inc., Form 10-K (2015), *available at* http://www.reynoldsamerican.com/Investors/Financials-and-Filings/Annual-Reports/default.aspx  (emphasis added).

8. As a result of Defendant's false and misleading labeling, packaging, and marketing of its Natural American Spirit cigarettes, Plaintiff and Class members have suffered injury in fact, including economic damages, and have lost money or property. Plaintiff and Class members purchased Natural American Spirit cigarettes under the mistaken belief that these cigarettes were healthier or less harmful than other cigarettes. But for Defendant's false and misleading advertising and marketing of Natural American Spirit cigarettes, Plaintiff and Class members would not have purchased or paid as much for these cigarettes.

9. Plaintiff, on behalf of herself and the proposed Class (defined below), seeks redress from Defendant's false and misleading labeling, packaging, and marketing of its Natural American Spirit cigarettes. Plaintiff brings claims on behalf of herself and the proposed nationwide Class for violations of the New Mexico Unfair Trade Practices Act, N.M.S.A. § 57-12, *et seq.*, negligent misrepresentation, and unjust enrichment.

## II. PARTIES

### A. Plaintiff

10. Plaintiff Shannon White is a citizen and resident of Albuquerque, New Mexico. Throughout the Class Period, Ms. White purchased approximately six packs of Natural American Spirit cigarettes per week from various retail locations in New Mexico, primarily from a 7-11 store in Albuquerque. Ms. White used to smoke Marlboro cigarettes but switched to Natural American Spirit cigarettes because, *inter alia*, she believed Natural American Spirit cigarettes contained less carcinogens and were less harmful than other cigarettes. Ms. White relied on Defendant's deceptive labeling, packaging, and marketing in her decisions to purchase Natural American Spirit cigarettes, and she paid the premium price of approximately $9 per pack for those cigarettes. Were it not for Defendant's deceptive advertising, Ms. White would not have purchased or paid as much for Natural American Spirit cigarettes.

### B. Defendant

11. Defendant Santa Fe Natural Tobacco Co. is a New Mexico corporation with its principal place of business located at 1 Plaza La Prensa, Santa Fe, New Mexico 87507. It is a

wholly-owned subsidiary of holding company Reynolds American Inc., the second largest tobacco company in the United States. Santa Fe manufactures and markets Natural American Spirit brand cigarettes. It was founded in 1982 and was acquired by Reynolds American in 2002.

### III.  JURISDICTION AND VENUE

12.  This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the aggregated claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which some members of the Class are citizens of states different than Defendant.

13.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, including all material decisions relating to the labeling, packaging, marketing, sale, and distribution of the products at issue. Additionally, Defendant are authorized to conduct business in the State of New Mexico, systematically and continuously conduct business in and throughout the State of New Mexico, and intentionally avail themselves of the laws and markets within New Mexico through the promotion, sale, and distribution of their products.

### IV.  FACTUAL ALLEGATIONS

14.  The "natural" and "organic" movement has grown tremendously over the past several decades, as consumers increasingly seek out products they believe to be healthier, more socially conscious, and less harmful to the environment.

15.  Descriptors such as "natural," "organic," and "additive-free" are powerful buzz words that appeal to health-conscious consumers. Products that contain such descriptors lead consumers to believe that these products are healthier, promote sustainable farming, and minimize human and environmental exposure to dangerous chemicals and toxins.

16.  The health risks associated with tobacco use and cigarette smoking are well known. Cigarette smoking is the leading preventable cause of death in the United States, causing

more deaths each year than the *combined* effects of HIV, illegal drug use, alcohol use, motor vehicle injuries, and firearm-related incidents.[2]

17. Increased public awareness of the health risks associated with smoking threatens the sale of cigarettes. Thus, tobacco manufacturers need to find ways to appeal to individuals' growing demand for healthier products.

18. In the early 1990s, Defendant introduced "100% organic tobacco" into the marketplace. It then launched a line of cigarettes containing the organic tobacco, which it advertised as "THE ONLY CIGARETTE made with 100% organic tobacco."

19. Today, Defendant's Natural American Spirit cigarettes are sold in colorful packs, each of which bears the same or substantially similar claims. Each pack of Natural American Spirit cigarettes prominently states the words "NATURAL" and "100% ADDITIVE-FREE." The word "NATURAL" appears on the front label of each pack above the name of the brand "American Spirit." The words "100% ADDITIVE FREE" appear on the bottom left corner of the front label, along with the words "NATURAL TOBACCO," or in some cases, "U.S. GROWN TOBACCO." Certain packs also state "Made with Organic Tobacco" on the front label and make additional claims on the back label, all of which promote the message that Natural American Spirit cigarettes are "natural," "organic," and less harmful to the environment.



---

[2] http://www.cdc.gov/tobacco/data_statistics/fact_sheets/health_effects/effects_cig_smoking/.

20.     In addition to these on-label claims, Defendant employs a comprehensive marketing campaign designed to promote Natural American Spirit cigarettes as more "natural," less toxic, and less harmful than other cigarettes.

21.     For example, the website for Natural American Spirit cigarettes contains a large banner on the home page that states in prominent letters "100% ADDITIVE-FREE NATURAL TOBACCO."[3]

22.     Defendant's website is full of images and text promoting its commitment to "natural" and "organic" tobacco, supporting U.S. tobacco farmers, reducing waste, and using environmentally friendly processes.[4]  All of these images and claims are intended to convey the message that Natural American Spirit cigarettes are healthier, more socially conscious, and less harmful to the environment than other cigarettes.

23.     Defendant uses its "NATURAL" and "100% ADDITIVE-FREE" claims to charge a premium for Natural American Spirit cigarettes.  Indeed, Reynolds American describes Natural American Spirit cigarettes as the "leading super-premium cigarette brand" and acknowledges that they are priced higher than other competitive brands.[5]

24.     Defendant's use of the words "NATURAL" and "100% ADDITIVE-FREE" to describe its Natural American Spirit cigarettes creates consumer confusion and deception. Research has shown that consumers believe such words indicate that the cigarettes are healthier or less harmful than other cigarettes.  An article published by the National Center for Biotechnology Information of the U.S. National Library of Medicine reported two main themes in its analysis of market research concerning "natural" cigarettes:  (1) smokers initially expressed confusion about how to interpret the term "natural" in relation to cigarettes; and (2) after

---

[3] https://www.nascigs.com/Security/Login.

[4] https://www.sfntc.com/site/ourCommitment/discover-our-commitment/.

[5] Reynolds American Inc., Form 10-K (2015), *available at* http://www.reynoldsamerican.com/Investors/Financials-and-Filings/Annual-Reports/default.aspx.

discussion of cigarette ingredients, smokers viewed "natural" cigarettes as healthier.[6]

25. Defendant explicitly knows that consumers infer from its use of the words "NATURAL" and "100% ADDITIVE-FREE" that Natural American Spirit cigarettes are somehow healthier or less harmful than other cigarettes. The Stanford School of Medicine created a research group in 2006 called Stanford Research into the Impact of Tobacco Advertising (SRITA), which studies the effects of tobacco advertising, marketing, and promotion. SRITA cites an internal tobacco industry document that reveals Defendant's knowledge and resulting marketing strategy: "The document explains that the Natural American Spirit brand is 'seeking health-conscious, 'back-to-basics,' YAS' (YAS is an industry acronym for Young Adult Smoker). The document also elucidates that Natural American Spirit cigarettes were only sold at specialty retail stores and natural food stores in order to 'maintain image as 'alternative' natural tob. [tobacco] supplier.'"[7]

26. Defendant, in fact, targets health-conscious, eco-friendly consumers. In addition to the words on the packaging described above, the label of each pack of Natural American Spirit cigarettes depicts an image of a Native American figure wearing a headdress and smoking a traditional peace pipe, portraying Natural American Spirit cigarettes as spiritually healing and therapeutic. Each pack of Natural American Spirit cigarettes also contains images and/or makes claims regarding Defendant's commitment to the environment, including images and claims relating to recycling, respect for the Earth, and supporting farmers.

27. SRITA confirms Defendant's intentional targeting and appeal to health-conscious customers: "Natural American Spirit targets a more health-conscious audience. Imagery on the cigarette pack features a figure wearing a headdress and smoking a traditional peace pipe,

---

[6] McDaniel, Patricia A. and Ruth E. Malone, "'I always thought they were all pure tobacco': American smokers' perceptions of 'natural' cigarettes and tobacco industry advertising strategies," *Tob Control* 16, no. 6 (December 2007), *available at* http://www.ncbi.nlm.nih.gov/pmc/articles/PMC2807204/.

[7] http://tobacco.stanford.edu/tobacco_main/images.php?token2=fm_st124.php&token1=fm_img3610.php&theme_file=fm_mt010.php&theme_name=Fresh,%20Pure,%20Natural%20&%20Toasted&subtheme_name=Organic.

harkening back to Native American smoking traditions in an effort to position Natural American Spirit cigarettes as spiritually healing and therapeutic. Though its ads also include the [ ] warning that 'No additives in our tobacco does NOT mean a safer cigarette,' the ads themselves work to counteract this small message."[8]

28. On August 27, 2015, the FDA sent a warning letter to Defendant notifying it that its use of the words "NATURAL" and "ADDITIVE-FREE" on the labels of Natural American Spirit cigarettes violated the Federal Food, Drug, and Cosmetic Act ("FDCA"). *See* Ex. A. This was the first time the FDA used its authority under the Family Smoking Prevention and Tobacco Control Act of 2009[9] to pursue action regarding the use of these claims on tobacco product labeling.

29. Specifically, the FDA Letter warned Defendant that it was selling or distributing cigarette products that were "adulterated" under section 902(8) of the FDCA because these products are "modified risk tobacco products" sold or distributed without an FDA order in effect that permits such sale or distribution. *Id.*

30. The FDA Letter explained: A tobacco product is considered a "modified risk tobacco product" under section 911(b)(2)(A)(i) of the FDCA if its label, labeling, or advertising explicitly or implicitly represents that: (1) the product presents a lower risk of tobacco-related disease or is less harmful than one or more other commercially marketed tobacco products; (2) the product or its smoke contains a reduced level of a substance or presents a reduced exposure to a substance; or (3) the product or its smoke does not contain or is free of a substance. *Id.* Under section 911(a) of the FDCA, no person may introduce or deliver for introduction into

---

[8] http://tobacco.stanford.edu/tobacco_main/images.php?token2=fm_st125.php&token1=fm_img3612.php&theme_file=fm_mt010.php&theme_name=Fresh,%20Pure,%20Natural%20&%20Toasted&subtheme_name=No%20Additives.

[9] The Family Smoking Prevention and Tobacco Control Act of 2009 authorized the FDA to regulate the manufacture, distribution, and marketing of tobacco products. The Act, among other things, restricts tobacco marketing and sales to youth, requires smokeless tobacco product warning labels, and ensures "modified risk" claims are supported by scientific evidence. *See* http://www.fda.gov/TobaccoProducts/GuidanceComplianceRegulatoryInformation/ucm246129.htm.

interstate commerce any modified risk tobacco product without an FDA order in effect under section 911(g) of the FDCA. A product that is in violation of section 911(a) of the FDCA is considered "adulterated" under section 902(8) of the FDCA.

31. The FDA Letter continued: Your [Defendant's] product labeling for Natural American Spirit cigarettes, which uses the descriptors "Natural" and "Additive Free," represents explicitly and/or implicitly that the products or their smoke do not contain or are free of a substance and/or that the products present a lower risk of tobacco-related disease or are less harmful than one or more other commercially marketed tobacco products. As such, these products are modified risk tobacco products. Because these products are sold or distributed to customers in the United States without an appropriate FDA order in effect under section 911(g) of the FDCA, these products are adulterated under section 902(8) of the FDCA. *Id.*

32. Thus, Defendant's claims on the labels of Natural American Spirit cigarettes that the cigarettes are "NATURAL" and "100% ADDITIVE-FREE" violate the FDCA and are expressly prohibited by law.

33. Defendant's representations, including that Natural American Spirit cigarettes are "NATURAL," "100% ADDITIVE-FREE," "ORGANIC," and environmentally friendly, are false and misleading and are intended to deceive consumers into believing that Natural American Spirit cigarettes are healthier or less harmful than other cigarettes.

34. Defendant intended to, and did, use these representations to induce consumers into believing that Natural American Spirit cigarettes were a safer or less harmful alternative to regular cigarettes. It also used these representations as part of a comprehensive marketing campaign to create the public perception that Natural American Spirit cigarettes are healthier, more socially conscious, and less harmful to the environment than regular cigarettes.

35. Reasonable consumers, including Plaintiff, relied on Defendant's representations in deciding to purchase Defendant's Natural American Spirit cigarettes and paid a premium for these cigarettes based on those representations.

36. Defendant has profited enormously from its false and misleading labeling, packaging, and marketing of Natural American Spirit cigarettes. Plaintiff and Class members would not have purchased, or paid as much for, Defendant's Natural American Spirit cigarettes had they known the truth—Defendant's representations that Natural American Spirit cigarettes are "NATURAL," "100% ADDITIVE-FREE," "ORGANIC," and environmentally friendly do not make them any healthier or less harmful than other cigarettes.

## V.  RULE 9(b) ALLEGATIONS

37. Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

38. WHO: Defendant Santa Fe Natural Tobacco Company, Inc. made material misrepresentations and/or omissions of fact in the labeling, packaging, and marketing of Natural American Spirit cigarettes.

39. WHAT: Defendant made material misrepresentations and/or omissions of fact regarding the quality and health of Natural American Spirit cigarettes by using words such as "NATURAL," "100% ADDITIVE-FREE," and "ORGANIC" to portray an image of cigarettes that are healthier, more socially conscious, and less harmful to individuals and the environment. Defendant's misrepresentations and/or omissions were material because reasonable consumers would not have purchased or paid as much for Natural American Spirit cigarettes if they knew that these cigarettes were no healthier or less harmful than ordinary cigarettes.

40. WHEN: Defendant made the material misrepresentations and/or omissions detailed herein continuously throughout the Class Period.

41. WHERE: Defendant's material misrepresentations and/or omissions were made, *inter alia*, on the labeling and packaging of Natural American Spirit cigarettes, on Defendant's website, and through Defendant's various other advertisements.

42. HOW: Defendant made written misrepresentations and/or failed to disclose material facts on the labeling and packaging of Natural American Spirit cigarettes and on its website and other advertising.

43. WHY: Defendant engaged in the material misrepresentations and/or omissions detailed herein for the express purpose of inducing Plaintiff and other reasonable consumers to purchase and/or pay a premium for Natural American Spirit cigarettes based on the belief that they were natural and healthier or less harmful than ordinary cigarettes. Defendant profited by selling Natural American Spirit cigarettes to thousands of unsuspecting consumers nationwide.

## VI. CLASS ACTION ALLEGATIONS

44. Plaintiff brings this action as a class action on behalf of herself and the following Class pursuant to Rule 23(a) and 23(b)(2) and (3):

> All individuals residing in the United States who purchase one or more Natural American Spirit cigarette products for personal use and not for resale any time between March 18, 2012 and the present (the "Class Period").

45. Plaintiff reserves the right to redefine the Class prior to certification.

46. Excluded from the Class are Defendant, any of its officers, directors, legal representatives, and employees, any co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

47. This action is brought and may properly be maintained as a class action pursuant to Federal Rule of Civil Procedure 23. This action satisfies the numerosity, typicality, adequacy, predominance, and superiority requirements of those provisions.

48. The Class is so numerous that the individual joinder of all of its members is impracticable. While the exact number of Class members is unknown at this time, due to the nature of the trade and commerce involved, Plaintiff believes that the total number of Class members is in the thousands or hundreds of thousands, and that members of the Class are geographically dispersed across the United States.

49. Common questions of law and fact exist as to all members of the Class, and these common questions predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any Class member include, but are not limited to, the following:

    a. Whether Defendant's labeling, packaging, and marketing of Natural American Spirit cigarettes is false and misleading;

    b. Whether Defendant's representation that Natural American Spirit cigarettes are "NATURAL" is material to reasonable consumers;

    c. Whether Defendant's representation that Natural American Spirit cigarettes are "100% ADDITIVE FREE" is material to reasonable consumers;

    d. Whether Defendant violated provisions of the FDCA and federal regulations through the labeling, packaging, and marketing of Natural American Spirit cigarettes;

    e. Whether Defendant's conduct constitutes a violation of the New Mexico Unfair Trade Practices Act;

    f. Whether Defendant's conduct constitutes negligent misrepresentation;

    g. Whether Defendant has been unjustly enriched;

    h. Whether Plaintiff and the Class are entitled to compensatory damages;

    i. Whether Plaintiff and the Class are entitled to restitutionary relief; and

    j. Whether Plaintiff and the Class are entitled to injunctive relief.

50. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have been similarly affected by Defendant's common course of conduct since they all relied on Defendant's representations concerning Natural American Spirit cigarettes and purchased one or more Natural American Spirit cigarette products based on those representations.

51. Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in handling complex class action

litigation. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.

52. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the Class is impracticable. Even if individual members of the Class had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all Class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the Class. Furthermore, for many, if not most, a class action is the only feasible mechanism that allows an opportunity for legal redress and justice.

53. This action is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(1) because individual actions by Class members would create: (1) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant; and/or (2) adjudications that, as a practical matter, would be dispositive of the interests of other class members not parties to the adjudications, and would substantially impair or impede the ability of such non-party class members to protect their interests.

54. This action is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief respecting the class as a whole.

55. This action is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3) because the common questions of law and fact identified above, without limitation, predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## VII. CLAIMS FOR RELIEF

## COUNT I

## VIOLATION OF NEW MEXICO UNFAIR TRADE PRACTICES ACT

### (N.M.S.A. 1978, § 57-12-1, *et seq.*)

### (Plaintiff and the Class Against Defendant)

56. Plaintiff incorporates by reference and realleges the allegations contained in the paragraphs above as if fully set forth herein.

57. This claim is brought pursuant to New Mexico's Unfair Trade Practices Act, N.M.S.A. 1978, § 57-12-1, *et seq.* ("UPA").

58. Defendant, Plaintiff, and all Class members are "persons" within the meaning of the UPA.

59. Defendant's actions as alleged herein occurred in the conduct of trade or commerce within the meaning of the UPA.

60. The UPA declares unlawful "unfair or deceptive trade practices" and "unconscionable trade practices" in the conduct of any trade or commerce.

61. "Unfair or deceptive trade practices" within the meaning of the UPA include "any act specifically declared unlawful pursuant to the [UPA], a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person." *Id.* § 57-12-2(D). "Unconscionable trade practices" within the meaning of the UPA include "an act or practice in connection with the sale, lease, rental or loan . . . of any goods or services . . . that to a person's detriment: (1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid." *Id.* § 57-12-2(E).

62. Defendant's misrepresentations regarding its Natural American Spirit cigarettes are unfair, deceptive, and unconscionable in violation of the UPA.

63. Specifically, Defendant has violated the UPA in at least the following ways:

a. Causing confusion or misunderstanding as to the source, sponsorship, approval or certification of Natural American Spirit cigarettes by representing that Natural American Spirit cigarettes are "organic"; implying that Natural American Spirit cigarettes are the product of Native American craftsmanship; and misrepresenting the "natural" quality and additives in Natural American Spirit cigarettes;

b. Representing that Natural American Spirit cigarettes have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have by falsely representing that Natural American Spirit cigarettes are "NATURAL" and "100% ADDITIVE-FREE," and thus, healthier or less harmful than other cigarettes;

c. Representing that Natural American Spirit cigarettes are of a particular standard, quality or grade if they are of another (i.e., falsely representing that Natural American Spirit cigarettes are "NATURAL" and "100% ADDITIVE-FREE");

d. Using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive (i.e., misleading consumers such as Plaintiff and Class members with the use of healthy buzz words into believing that Defendant's Natural American Spirit cigarettes were safer than other cigarettes); and

e. Failing to deliver the quality of goods contracted for.

64. Defendant's actions described above and herein are also "unconscionable trade practices" in violation of the UPA because Defendant took advantage of the lack of knowledge, ability, experience or capacity of Class members to a grossly unfair degree, and those actions resulted in a gross disparity between the value received by Class members and the price paid for Defendant's Natural American Spirit cigarettes.

65. Throughout the Class Period, Defendant consistently and systematically misrepresented the "natural" and "organic" quality of its Natural American Spirit cigarettes and the additives contained therein. It deceived Class members into believing that Natural American Spirit cigarettes were somehow healthier or less harmful than other cigarettes and failed to

adequately inform Class Members that these cigarettes provide no benefits and are just as dangerous as regular cigarettes.

66. Defendant's unfair or deceptive trade practices were fraudulently concealed and likely to, and did, deceive reasonable consumers, including Plaintiffs and Class members, into believing that Natural American Spirit cigarettes were a safer or less harmful alternative to regular cigarettes. Defendant intentionally and knowingly misrepresented and/or omitted material facts regarding its Natural American Spirit cigarettes with the intent of deceiving Plaintiff and Class members.

67. Reasonable consumers, including Plaintiff, relied on Defendant's representations in deciding to purchase Natural American Spirit cigarettes and paid a premium for those cigarettes based on Defendant's representations.

68. As a result of Defendant's false and misleading labeling, packaging, and marketing of its Natural American Spirit cigarettes, Plaintiff and Class members have suffered injury in fact, including economic damages, and have lost money or property. Plaintiff and Class members purchased Natural American Spirit cigarettes under the mistaken belief that these cigarettes were healthier or less harmful than other cigarettes. But for Defendant's false and misleading advertising and marketing of the Natural American Spirit cigarettes, Plaintiff and Class members would not have purchased or paid as much for these cigarettes.

## COUNT II

### NEGLIGENT MISREPRESENTATION

**(Plaintiff and the Class Against Defendant)**

69. Plaintiff incorporates by reference and realleges the allegations contained in the paragraphs above as if fully set forth herein.

70. During the Class Period, Defendant represented to consumers through the labeling, packaging, and marketing of Natural American Spirit cigarettes that the cigarettes were, among other things, "NATURAL" and "100% ADDITIVE-FREE," and thus, healthier or less harmful than other cigarettes. Defendant made these representations knowing that such claims

would be material to a reasonable consumer's purchasing decision.

71. Defendant's representations that Natural American Spirit cigarettes were "NATURAL" and "100% ADDITIVE-FREE," and thus, healthier or less harmful than other cigarettes, were false because Natural American Spirit cigarettes are no healthier or less harmful than ordinary cigarettes.

72. Defendant's misrepresentations regarding the natural quality, health, characteristics, and composition of Natural American Spirit cigarettes were material because a reasonable consumer would attach importance to them in determining whether to purchase and consume Natural American Spirit cigarettes.

73. Defendant's material misrepresentations concerning the natural quality, health, characteristics, and composition of Natural American Spirit cigarettes were false and made without reasonable grounds for believing them to be true.

74. Defendant made material misrepresentations concerning the natural quality, health, characteristics, and composition of Natural American Spirit cigarettes with the intent to induce Plaintiff and the Class to purchase and consume Natural American Spirit cigarettes.

75. Plaintiff and the Class reasonably and materially relied on Defendant's material misrepresentations in choosing to purchase and consume Natural American Spirit cigarettes.

76. As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have incurred damages in an amount to be proven at trial.

## COUNT III

### UNJUST ENRICHMENT

**(Plaintiff and the Class Against Defendant)**

77. Plaintiff incorporates by reference and realleges the allegations contained in the paragraphs above as if fully set forth herein.

78. Plaintiff and the Class have conferred substantial benefits on Defendant by purchasing Natural American Spirit cigarettes.

79.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' purchases of Natural American Spirit cigarettes. Such retention is unjust and inequitable because Defendant misrepresented the facts concerning the natural quality, health, characteristics, and composition of Natural American Spirit cigarettes to Plaintiff and Class members, and caused Plaintiff and Class members to lose money as a result thereof.

80.     Plaintiff and Class members have been injured as a direct and proximate result of Defendant's wrongful conduct and unjust enrichment. Plaintiff and Class members would not have purchased, or paid as much for, Natural American Spirit cigarettes if they had known the true facts regarding their natural quality, health, characteristics, and composition.

81.     Defendant, having retained the moneys by which it was unjustly enriched, should be required by the Court to pay restitution to Plaintiff and Class members and to disgorge all monies, profits, and gains which it has obtained or will unjustly obtain in the future at the expense of Plaintiff and the Class.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff and members of the Class pray for relief and judgment against Defendant, as follows:

A.     For an order certifying the Class, appointing Plaintiff and her counsel to represent the Class, and notice to the Class to be paid by Defendant;

B.     For damages suffered by Plaintiff and the Class;

C.     For restitution to Plaintiff and the Class of all monies wrongfully obtained by Defendant;

D.     For injunctive relief requiring Defendant to cease and desist from engaging in the unlawful, unfair, and/or deceptive practices alleged in the Complaint;

E.     For Plaintiff's reasonable attorneys' fees, as permitted by law;

F.     For Plaintiff's costs incurred;

G.     For pre-judgment and post-judgment interest at the maximum allowable rate on any amounts awarded; and

H.     For such other and further relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

DATED: March 18, 2016          **PEARSON, SIMON & WARSHAW, LLP**


By:   */s/ Daniel L. Warshaw*
                DANIEL L. WARSHAW

DANIEL L. WARSHAW (*pro hac vice forthcoming*)
   dwarshaw@pswlaw.com
ALEXANDER R. SAFYAN (*pro hac vice forthcoming*)
   asafyan@pswlaw.com
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: (818) 788-8300
Facsimile:  (818) 788-8104

ERIKA E. ANDERSON (State Bar No. 14606)
   erika@eandersonlaw.com
**LAW OFFICES OF ERIKA E. ANDERSON**
201 Third Street NW, Suite 500
Albuquerque, New Mexico 87102
Telephone: (505) 944-9039
Facsimile:  (505) 944-9091

*Attorneys for Plaintiff and the Proposed Class*