**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

| | |
|---|---|
| **In Re: Santa Fe Natural Tobacco Company Marketing & Sales Practices Litigation**<br><br>*This Document Relates to All Actions* | Lead Case No. 1:16-md-02695-JB-LF |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... iv

INTRODUCTION ................................................................................................. 1

STANDARD OF REVIEW ..................................................................................... 3

ARGUMENT ......................................................................................................... 4

I.      FEDERAL LAW DOES NOT PREEMPT PLAINTIFFS' CLAIMS ............................... 4

        A.      Federal Law Does Not Preempt Plaintiffs' Claims................................... 5

                1.      Defendants Have Not Met Their Burden of Overcoming the
                        Presumption Against Federal Preemption of State Law ........................... 5

                2.      Plaintiffs' Claims Do Not Stand as an Obstacle to Federal Law ............... 6

                3.      Defendants' Arguments in Favor of Preemption Are Wrong ................... 12

        B.      Federal Law Does Not Preempt Plaintiffs' Claims Concerning
                Defendants' Representations that Natural American Spirit Cigarettes Are
                "Organic" ..................................................................................................... 15

II.     THE FIRST AMENDMENT DOES NOT PROTECT DEFENDANTS' FALSE
        AND MISLEADING REPRESENTATIONS .................................................... 16

        A.      The First Amendment Is Not an Appropriate Basis for Dismissal of
                Plaintiffs' Claims under Federal Rule of Civil Procedure 12(b)(6) Because
                Plaintiffs Have Plausibly Alleged the Representations at Issue are
                Misleading ..................................................................................................... 16

        B.      Plaintiffs' Claims Satisfy the Test Set Forth in *Central Hudson* ........................... 18

        C.      Even If the Court Finds Defendants' Representations to Be "Potentially
                Misleading," Plaintiffs' Claims Satisfy the Final Three Prongs of the
                *Central Hudson* Test ...................................................................................... 21

                1.      The Government's interest implicated in this lawsuit is substantial ......... 21

III.    THE COURT SHOULD NOT DISMISS PLAINTIFFS' STATUTORY CLAIMS ....... 23

        A.      The Consent Order Does Not Provide Safe Harbor from State Unfair
                Practices Acts ............................................................................................... 23

                1.      *Altria II* Held that FTC Consent Orders Do Not Authorize Specific
                        Conduct ........................................................................................... 23

2.      Compliance with the FTC Act Does Not Ensure Compliance with State Law ................................................................................. 24

3.      The Consent Order Governs Some of Defendants' Advertising But Not Its Packaging ........................................................................ 25

4.      The Consent Order Does Not Purport to Address the Use of "Natural" or "Organic" ..................................................................... 26

5.      The NAS Packaging Does Not Comply With the Consent Order ........... 28

6.      The FTC Consent Order Does Not Constitute a Safe Harbor Under the Applicable State Statutes .................................................... 29

        a.      California ................................................................................. 29

        b.      Colorado .................................................................................. 31

        c.      Florida ..................................................................................... 31

        d.      Illinois ..................................................................................... 33

        e.      Massachusetts ......................................................................... 34

        f.      Michigan .................................................................................. 35

        g.      New Jersey ............................................................................... 35

        h.      New Mexico .............................................................................. 36

        i.      New York ................................................................................. 36

        j.      North Carolina ........................................................................ 37

        k.      Ohio ......................................................................................... 38

        l.      Washington .............................................................................. 38

B.      Each of Plaintiffs' Statutory Claims Survive Because Plaintiffs Have More Than Adequately Alleged that Defendants Made Statements Capable of Misleading a Reasonable Consumer .................................................... 39

        1.      Reasonable consumers could be deceived by Defendants' use of the terms "Natural" and "Additive Free." ................................. 42

                a.      Consumers are not required to look beyond misleading representations on the front of the cigarette package to discover the truth from a small print disclaimer on the side. ........ 42

ii

     b.  Defendants' Cases Do Not Support Their Position ...................... 49

    2.  The reasonable consumer would interpret the term "100% Additive Free-Natural Tobacco" to mean exactly what it says, that Defendants' tobacco is devoid of additives, which it is not. .................... 52

    3.  A reasonable consumer could interpret the term "Natural" to mean that Defendants have not altered their tobacco through manufacturing processes. ........................................................................ 53

 C.  The Statutes of Illinois, New Jersey, and Ohio Apply Here ................................ 54

IV.  PLAINTIFFS' UNJUST ENRICHMENT CLAIMS ARE PROPERLY PLED .............. 62

 A.  Plaintiffs' Unjust Enrichment Claims Are Governed by the Law of the State Where Plaintiffs Purchased the Cigarettes, and Procedural Questions Are Governed by Federal Law .............................................................................. 62

 B.  Plaintiffs Have Adequately Alleged Misleading Conduct ................................... 62

 C.  Defendants' Arguments for Dismissal of Plaintiffs' Unjust Enrichment Claims Are Premature ........................................................................................ 63

 D.  Defendants' "Adequate Remedy at Law" Arguments Are Legally Incorrect ............................................................................................................. 64

 E.  Plaintiffs' Unjust Enrichment Claims Should Not Be Dismissed Due to Lack of Direct Purchase from Defendants ........................................................... 69

 F.  Plaintiffs' New Jersey Unjust Enrichment Claim Does Not Sound in Tort ......... 70

 G.  Plaintiffs' New York Unjust Enrichment Claim Should Not be Dismissed for Being Duplicative of Its Statutory Claims ..................................................... 71

V.  PLAINTIFFS' WARRANTY CLAIM IS PROPERLY STATED ................................... 72

 A.  Plaintiffs Properly Allege That Defendants Breached an Express Warranty ....... 72

 B.  Plaintiffs Properly Allege Pre-Litigation Notice ................................................ 73

 C.  Plaintiffs' Warranty Claims Should Not Be Dismissed Based on a Lack of Privity.................................................................................................................. 75

VI.  PLAINTIFFS' DEMANDS FOR INJUNCTIVE RELIEF ARE NOT MOOT .............. 76

VII.  THE COURT HAS JURISDICTION OVER RAI ........................................................ 77

CONCLUSION...............................................................................**Error! Bookmark not defined.**

# TABLE OF AUTHORITIES

### CASES

*Abraham v. WPX Energy Prod., LLC*,
20 F. Supp. 3d 1244 (D.N.M. 2014) ............................................................. 66, 67

*Ackerman v. Coca-Cola Co.*, case no. 09-cv-0395,
2010 WL 2925955 (E.D.N.Y. July 21, 2010) ............................................ 46, 47, 49

*Adamson v. Ortho-McNeil Pharm., Inc.*,
463 F. Supp. 2d 496 (D.N.J. 2006) ..................................................................... 66

*Adrion v. Knight*, case no. 07-cv-11277-RGS,
2009 WL 3152885 (D. Mass. Sept. 28, 2009) ...................................................... 65

*Alvarez v. Chevron Corp.*,
656 F.3d 925 (9th Cir. 2011) ............................................................................. 30

*Am. Fin. Servs. Assoc'n v. F.T.C.*,
767 F.2d 957 (D.C. Cir. 1985) ........................................................................... 25

*Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*,
390 F. Supp. 2d 1170 (M.D. Fla. 2005) .............................................................. 64

*Arizona v. United States*,
567 U.S. 387 (2012) ............................................................................................ 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................ 3

*Aspinall v. Philip Morris, Inc.*,
902 N.E.2d 421 (Mass. 2009) ............................................................................ 34

*Astiana v. Hain Celestial Group, Inc.*,
783 F.3d 753 (9th Cir. 2015) ............................................................................. 54

*Barber ex rel. Barber v. Colorado Dep't of Revenue*,
562 F.3d 1222 (10th Cir. 2009) ........................................................................... 7

*Barry v. Arrow Pontiac, Inc.*,
100 N.J. 57 (1985) ............................................................................................. 56

*Bates v. Dow Agrosciences LLC*,
544 U.S. 431 (2005) ............................................................................................ 6

*Behagen v. Amateur Basketball Ass'n of U.S.A.*,
744 F.2d 731 (10th Cir. 1984) ........................................................................... 78

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................. 3, 4

*Bietsch v. Sergeant's Pet Care Prod., Inc.*, case no. 15-cv-5432,
   2016 WL 1011512 (N.D. Ill. Mar. 15, 2016)........................... 75

*Biffar v. Pinnacle Foods Grp., LLC*, case no. 16-cv-0873-DRH,
   2016 WL 7429130 (S.D. Ill. Dec. 26, 2016)............................ 40

*Bioganic Safety Brands, Inc. v. Ament*,
   174 F. Supp. 2d 1168 (D. Colo. 2001).................................... 20

*Blankenship v. CF Moto Powersports, Inc.*,
   944 N.E. 2d 769 (Ohio Ct. Com. Pl. 2011)............................. 61

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*,
   133 F. Supp. 2d 162 (E.D.N.Y. 2001) .................................... 37

*Boule v. Hutton*,
   328 F.3d 84 (2d Cir. 2003)..................................................... 41

*Bower v. IBM*,
   495 F. Supp.2d 837 (S.D. Ohio 2004) .................................... 61

*Braddock v. Orlando Reg'l Health Care Sys., Inc.*,
   881 F. Supp. 580 (M.D. Fla. 1995)......................................... 59

*Brown v. Hain Celestial Grp., Inc.*, case no. 11-cv-03082 LB,
   2012 WL 3138013 (N.D. Cal. Aug. 1, 2012) .......................... 15

*Bruton v. Gerber Prods. Co.*,
   961 F. Supp. 2d 1062 (N.D. Cal. 2013) ............................. 16, 19

*Burton v. Elsea, Inc.*, No. 97CA2556,
   1999 WL 1285874 (Ohio Ct. App. Dec. 27, 1999).................. 42

*Bustillos v. Bd. of Cty. Comm'rs of Hidalgo Cty.*,
   310 F.R.D. 631 (D.N.M. 2015)......................................... 66, 67

*California Fed. Sav. & Loan Ass'n v. Guerra*,
   479 U.S. 272 (1987)................................................................. 5

*Caster v. Hennessey*,
   781 F. 2d 1569 (11th Cir. 1986) ............................................. 60

*Cel-Tech Commc'ns, Inc. v. L. A. Cellular Tel. Co.*,
   973 P.2d 527 (Cal. 1999) ....................................................... 30

*Central Hudson Gas & Electric Corp. v. Public Service Commission*,
447 U.S. 557 (1980) ........................................................................................ passim

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
467 U.S. 837 (1984) .................................................................................... 24, 30

*Cipollone v. Liggett Grp., Inc.*,
505 U.S. 504 (1992) ............................................................................................ 36

*Cleary v. Philip Morris USA, Inc.*,
683 F. Supp. 2d 730 (N.D. Ill. 2010) .............................................................. 34

*Cox v. Sears Roebuck & Co.*,
647 A.2d 454 (N.J. 1994) ................................................................................... 41

*Cozier v. Johnson & Johnson Consumer Cos.*,
901 F. Supp. 2d 494 (D.N.J. 2012) .................................................................. 40

*Crowe v. Tull*,
126 P.3d 196 (Colo. 2006) ................................................................................. 31

*Dawson v. Blockbuster, Inc.*, case no. 86451,
2006 WL 1061769 (Ohio Ct. App. 2006) ....................................................... 61

*Delgado v. Capital Mgmt. Servs. LP*, case no. 4:12-cv-4057-SLD-JAG,
2013 WL 1194708 (C.D. Ill. Mar. 22, 2013) ................................................. 24

*Delgado v. Ocwen Loan Servicing, LLC*, case no. 13-cv-4427,
2014 WL 4773991 (E.D.N.Y. Sept. 23, 2014) .............................................. 47

*Depianti v. Jan-Pro Franchising Int'l, Inc.*,
39 F. Supp. 3d 112 (D. Mass. 2014) ............................................................... 65

*Dix v. American Bankers Life Assurance Co.*,
415 N.W.2d 206 (Mich. 1987) ......................................................................... 40

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) ........................................................................... 31

*Edenfield v. Fane*,
507 U.S. 761 (1993) ............................................................................................ 19

*Edmonds v. John L. Scott Real Estate, Inc.*,
942 P.2d 1072 (Wash. Ct. App. 1997) ............................................................ 39

*Elder v. Fischer*,
717 N.E.2d 730 (Ohio Ct. App. 1998) ............................................................ 38

*Embree Const. Grp., Inc. v. Rafcor, Inc.*,
   411 S.E.2d 916 (N.C. 1992) ................................................................. 68

*Erie R.R. v. Tompkins*,
   304 U.S. 64 (1938) ............................................................................ 59

*Farina v. Bastianich*,
   116 A.D.3d 546 (N.Y. App. Div. 2014) ............................................... 67

*Fed. Ins. Co. v. Binney & Smith, Inc.*,
   913 N.E.2d 43 (Ill. App. Ct. 2009) ..................................................... 33

*Fed. Trade Comm'n v. Wellness Support Network, Inc.*, case no. 10-cv-04879,
   2014 WL 644749 (N.D. Cal. Feb. 19, 2014) ................................... 18, 20

*Feikema v. Texaco, Inc.*,
   16 F.3d 1408 (4th Cir. 1994) .......................................................... 13, 14

*Fenerjian v. Nongshim Co., Ltd*,
   72 F. Supp. 3d 1058 (N.D. Cal. 2014) ................................................ 67

*Ferreira v. Sterling Jewelers, Inc.*,
   130 F. Supp. 3d 471 (D. Mass. 2015) ................................................. 65

*Flanagan v. Altria Grp., Inc.*, case no. 05-cv-71697,
   2005 WL 2769010 (E.D. Mich. Oct. 25, 2005) ................................... 35

*Florida Bar v. Went For It, Inc.*,
   515 U.S. 618 (1995) .......................................................................... 19

*Florida Lime & Avocado Growers, Inc. v. Paul*,
   373 U.S. 132 (1963) ............................................................................ 6

*Ford Motor Co. v. F. T. C.*,
   547 F.2d 954 (6th Cir. 1976) ............................................................. 24

*Foster v. Chattem, Inc.*, case no. 14-cv-346 GJK,
   2014 WL 3687129 (M.D. Fla. July 23, 2014) ..................................... 40

*Francis v. Mead Johnson & Co.*, case no. 10-cv-00701-JLK,
   2010 WL 5313540 (D. Colo. Dec. 17, 2010) ....................................... 64

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) ............................................................... 51

*Garcia v. Kashi Co.*,
   43 F. Supp. 3d 1359 (S.D. Fla  2014) ................................................. 54

*Garcia v. New Mexico Office of the Treasurer*,
   959 F. Supp. 1426 (D.N.M. 1997) ............................................... 3

*Geier v. American Honda Motor Co.*,
   529 U.S. 861 (2000) ....................................................... 12, 13

*Gen. Motors Corp. v. Abrams*,
   897 F.2d 34 (2d Cir. 1990)................................................... 5, 7

*Genesee County Emples. Ret. Sys. v. Thornburg Mortg. Secs. Trust 2006-3*,
   825 F. Supp. 2d 1082 (D.N.M. 2011) ........................................... 3

*Georgia Malone & Co. v. Rieder*,
   973 N.E.2d 743 (N.Y. 2012)................................................... 67

*Gilles v. Ford Motor Co.*,
   24 F. Supp. 3d 1039 (D. Colo. 2014)....................................... 25, 31

*Global Network Communs., Inc. v. City of New York*,
   458 F.3d 150 (2d Cir. 2006).................................................. 54

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, case no. 13–cv–3073 NSR,
   2014 WL 1285137 (S.D.N.Y. Mar. 27, 2014) .................................... 48

*Good v. Altria Grp., Inc.*,
   501 F.3d 29 (1st Cir. 2007)............................................. passim

*Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*,
   708 F. Supp. 2d 1209 (D.N.M. 2010) .......................................... 41

*Hauk v. JP Morgan Chase Bank USA*,
   552 F.3d 1114 (9th Cir. 2009) ............................................... 30

*Herazo v. Whole Foods Mkt., Inc.*, case no. 14-cv-61909,
   2015 WL 4514510 (S.D. Fla. July 24, 2015)................................. 32, 64

*Hofmann v. Fifth Generation, Inc.*, case no. 14-cv-2569 JM JLB,
   2015 WL 5440330 (S.D. Cal. Mar. 18, 2015) ................................... 31

*Holk v. Snapple Beverage Corp.*,
   575 F.3d 329 (3d Cir. 2009)................................................... 6

*Ibanez v. Florida Dep't of Bus. & Prof'l Regulation, Bd. of Accountancy*,
   512 U.S. 136 (1994).......................................................... 19

*In re Am. Tobacco Co.*,
   119 F.T.C. 3 (1995).......................................................... 33

viii

*In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*, case no. 14-cv-3722 JBS-JS,
    2015 WL 4591236 (D.N.J. July 29, 2015) ............................................................... 74

*In re Checking Account Overdraft Litig.*,
    694 F. Supp. 2d 1302 (S.D. Fla. 2010) ................................................................... 63

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, case no. 9-cv-3690,
    2015 WL 3988488 (N.D. Ill. June 29, 2015) .......................................................... 68

*In re Dial Complete Mktg. & Sales Practices Litig.*, case no. 11-md-2263-SM,
    2013 WL 1222310 (D.N.H. Mar. 26, 2013) ............................................................ 63

*In re First Cent. Fin. Corp.*,
    377 F.3d 209 (2d Cir. 2004) .................................................................................... 68

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*, case no. 12-md-2413 RRM,
    2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) .................................................. 37, 54

*In re Gen. Am. Life Ins. Co. Sales Practices Litig.*,
    391 F.3d 907 (8th Cir. 2004) .................................................................................. 62

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
    801 F. Supp. 2d 993 (S.D. Cal. 2011) ............................................................. 73, 74

*In re Indep. Serv. Organizations Antitrust Litig.*, CIV. A-md-1021,
    1998 WL 919125 (D. Kan. Dec. 31, 1998) ............................................................ 62

*In re LIBOR-Based Fin. Instruments Antitrust Litigation*, case no. 11-md-2262 NRB,
    2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) ........................................................ 70

*In re Light Cigarettes Mktg. Sales Practices Litig.*,
    751 F. Supp. 2d 183 (D. Me. 2010) ....................................................................... 63

*In re Methyl Tertiary Butyl Ether ("MBTE") Prods. Liab. Litig.*,
    725 F.3d 65 (2d Cir. 2013) ....................................................................................... 7

*In re Processed Egg Prod. Antitrust Litig.*,
    851 F. Supp. 2d 867 (E.D. Pa. 2012) ..................................................................... 68

*In re R. M. J.*,
    455 U.S. 191 (1982) ................................................................................................ 19

*In re Rust-Oleum Restore Mktg., Sales Practices & Prod. Liab. Litig.*,
    155 F. Supp. 3d 772 (N.D. Ill. 2016) ............................................................... 73, 74

*John Doe No. 1 v. Reed*,
    561 U.S. 186 (2010) ................................................................................................ 20

*Jones v. ConAgra Foods, Inc.*,
   912 F. Supp. 2d 889 (N.D. Cal. 2012) ............................................................... 15

*Jou v. Kimberly Clark Corp.*, case  no. 13-cv-03075  JSC,
   2013  WL  6491158  (N.D. Cal. Dec.  10, 2013) ............................................. 48, 54

*Karhu v. Vital Pharm., Inc.*, case no. 13-cv-60768,
   2013 WL 4047016 (S.D. Fla. Aug. 9, 2013) ......................................................... 75

*Keith v. Ferring Pharm., Inc.*, case no. 15-cv-10381,
   2016 WL 5391224 (N.D. Ill. Sept. 27, 2016) .................................................. 73, 75

*Kellogg Co. v. Mattox*,
   763 F. Supp. 1369 (N.D. Tex. 1991) ................................................................... 25

*Kerns v. Bd. of Commissioners of Bernalillo Cty.*, case no. 07-cv-0771 JB/WPL,
   2015 WL 7873783 (D.N.M. Nov. 19, 2015) ....................................................... 62

*Kikumura v. Osagie*,
   461 F.3d 1269 (10th Cir. 2006) ........................................................................... 63

*Kron Med. Corp. v. Collier Cobb & Assocs.*,
   420 S.E.2d 192 (N.C. Ct. App. 1992) ................................................................. 37

*Kugler v. Romain*,
   58 N.J. 522 (N.J. 1971) ...................................................................................... 57

*Kure Corp. v. Peterson*, case no. 16-cv-13776,
   2017 WL 61969 (N.C. Super. Jan. 5, 2017) ....................................................... 37

*Lam v. Gen. Mills, Inc.*,
   859 F. Supp. 2d 1097 (N.D. Cal. 2012) .............................................................. 48

*Lassv. Bank of America, N.A.*,
   695 F.3d 129 (1st Cir. 2012) ............................................................................... 65

*Leiner v. Johnson & Johnson Consumer Cos.*, case no. 15-cv-5876,
   2016 WL 128098 (N.D. Ill. Jan. 12, 2016) ........................................................ 55

*Lemelledo v. Beneficial Mgmt. Corp. of Am.*,
   696 A.2d 546 (N.J. 1997) .................................................................................... 35

*Lonner v. Simon Prop. Grp., Inc.*,
   57 A.D.3d 100 (N.Y. App. Div. 2008) ............................................................... 48

*Lopes v. Com.*,
   811 N.E.2d 501 (Mass. 2004) ............................................................................. 65

*Lump v. Best Door & Window, Inc.*, case nos. 8-01-09 and 8-01-10,
    2002 WL 462863 (Ohio Ct. App. Mar. 27, 2002) .................................................. 42

*Mace v. Van Ru Credit Corporation*,
    109 F. 3d 338 (7th Cir. 1997) ........................................................................... 59

*Marrone v. Philip Morris USA, Inc.*,
    850 N.E.2d 31 (Ohio 2006) ............................................................................. 38

*Marty v. Anheuser-Busch Cos., LLC*,
    43 F. Supp. 3d 1333 (S.D. Fla. 2014) ................................................................ 33

*Maybank v. S. S. Kresge Co.*,
    273 S.E.2d 681 (N.C. 1981)............................................................................. 75

*Mennen Co. v. Gillette Co.*,
    565 F. Supp. 648 (S.D.N.Y. 1983) ................................................................... 41

*Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*,
    72 Fed. Appx. 916 (4th Cir. 2003)..................................................................... 70

*Miller v. MSX-IBS Holding, Inc.*, case no. 16-cv-10596,
    2016 WL 4138238 (E.D. Mich. Aug. 4, 2016) ...................................................... 69

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. Abrams*,
    684 F. Supp. 804 (S.D.N.Y. 1988) ............................................................... 21, 22

*Mulford v. Altria Grp., Inc.*,
    506 F. Supp. 2d 733 (D.N.M. 2007) ............................................................. 24, 36

*Nat'l Amusements, Inc. v. New Jersey Tpk. Auth.*,
    619 A.2d 262 (N.J. Law. Div. 1992) .................................................................. 66

*Nessle v. Whirlpool Corp.*, case no. 07-cv-3009,
    2008 WL 2967703 (N.D. Ohio July 25, 2008) ...................................................... 68

*New Mexico ex. Rel. Balderas v. Preferred Care, Inc.*,
    158 F. Supp. 3d 1226 (D.N.M. 2015) ................................................................ 41

*Olcott v. Delaware Flood Co.*,
    76 F.3d 1538 (10th Cir. 1996) ......................................................................... 62

*OMI Holdings, Inc. v. Royal Ins. Co. of Can.*,
    149 F.3d 1086 (10th Cir. 1998) ....................................................................... 77

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
    647 N.E.2d 741 (N.Y. 1995)............................................................................ 41

*Overstreet v. Brookland, Inc.*,
 279 S.E.2d 1 (N.C. Ct. App. 1981) ........................................................ 41

*Oxman v. Amoroso*,
 659 N.Y.S.2d 963 (N.Y. City Ct. 1997) ................................................. 41

*Packer Corp. v. State of Utah*,
 285 U.S. 105 (1932) ................................................................................. 6

*Paikai v. Gen. Motors Corp.*, case no. 07-cv-892 FCD GGH,
 2009 WL 275761 (E.D. Cal. Feb. 5, 2009) .................................... 68, 70

*Payne v. Wood*,
 62 F.3d 1418 (6th Cir. 1995) ................................................................ 65

*Pearson v. Shalala*,
 164 F.3d 650 (D.C. Cir. 1999) .............................................................. 18

*Penrod Ricard USA, LLC v. Bacardi U.S.A, Inc.*,
 653 F.3d 241 (4th Cir. 2011) ................................................................ 47

*Peter v. Stryker Orthopaedics, Inc.*,
 581 F. Supp. 2d 813 (E.D. Mich. 2008) ............................................... 35

*Price v. Philip Morris, Inc.*,
 43 N.E.3d 53 (2015) .............................................................................. 33

*Price v. Philip Morris, Inc.*,
 848 N.E.2d 1 (Ill. 2005) .................................................................. 33, 34

*Prohias v. AstraZeneca Pharm., L.P.*,
 958 So. 2d 1054 (Fla. Dist. Ct. App. 2007) ......................................... 32

*Prohias v. Pfizer, Inc.*,
 490 F. Supp. 2d 1228 (S.D. Fla. 2007) ................................................. 32

*Pueblo of Pojoaque v. New Mexico*, case no. 15-cv-0625 JB/GBW,
 2016 WL 6405927 (D.N.M. Sept. 30, 2016) ...................................... 6, 7

*Pye v. Fifth Generation, Inc.*, case no. 14-cv-493 RH/CAS,
 2015 WL 5634600 (N.D. Fla. Sept. 23, 2015) ..................................... 32

*Quinn v. Walgreen Co.*,
 958 F. Supp. 2d 533 (S.D.N.Y. 2013) ................................................... 41

*Ramsey Winch Inc. v. Henry*,
 555 F.3d 1199 (10th Cir. 2009) ........................................................... 5, 6

*Real v. Radir Wheels, Inc.*,
    198 N.J. 511, 969 A.2d 1069 (2009)....................................................... 36

*Reed v. Zipcar, Inc.*,
    883 F. Supp. 2d 329 (D. Mass. 2012) ................................................... 65

*Reese v. Odwalla, Inc.*, case no. 13-cv-00947-YGR,
    2017 WL 565095 (N.D. Cal. Feb. 13, 2017) ......................................... 76

*Res. Assocs. Grant Writing & Eval. Servs. v. Southampton Union Free Sch. Dist.*,
    193 F. Supp. 3d 1200 (D.N.M. 2016) ..................................................... 79

*Robinson v. Toyota Motor Credit Corp.*,
    735 N.E.2d 724 (Ill. App. Ct. 2000) ....................................................... 55

*Romero v. Bd. of Cty. Commissioners for the Cty. of Curry*,
    202 F. Supp. 3d 1223 (D.N.M. 2016) ..................................................... 76

*Samiento v. World Yacht Inc.*,
    10 N.Y.3d 70, 883 N.E.2d 990 (2008)..................................................... 68

*Santosuosso v. Gibbs Ford, Inc.*,
    1992 Mass. App. Div. 167 (1992)............................................................ 40

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974)................................................................................. 4

*Schumacher v. State Auto Mut. Ins. Co.*,
    47 F. Supp. 3d 618 (S.D. Ohio 2014) ..................................................... 61

*See L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*,
    125 F. Supp. 3d 1155 (D. Colo. 2015)..................................................... 64

*Segedie v. Hain Celestial Grp., Inc.*, case no. 14-cv-5029 NSR,
    2015 WL 2168374 (S.D.N.Y. May 7, 2015) ........................................... 15

*Showpiece Homes Corp. v. Assurance Co. of Am.*,
    38 P.3d 47 (Colo. 2001)........................................................................... 31

*Silva v. Smucker Nat. Foods, Inc.*, case no. 14-cv-6154 JG RML,
    2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) ....................................... 72

*Simon v. Philip Morris, Inc.*,
    86 F. Supp. 2d 95 (E.D.N.Y. 2000) ....................................................... 79

*Sims v. Sims*,
    930 P.2d 153 (N.M. 1996) ....................................................................... 66

*Singleton v. Fifth Generation, Inc.*, case no. 15-cv-474-BKS,
2016 WL 406295 (N.D.N.Y. Jan. 12, 2016)........................................................... 32

*Singleton v. Naegeli Reporting Corp.*,
175 P.3d 594 (Wash. Ct. App. 2008)..................................................................... 38

*Skinner v. E.F. Hutton & Co.*,
333 S.E.2d 236 (N.C. 1985).................................................................................. 41

*Sladen v. Passaro*,
1994 Mass. App. Div. 29 (1994)............................................................................ 40

*Small v. Lorillard Tobacco Co.*,
176 Misc. 2d 413, 672 N.Y.S.2d 601 (Sup. Ct. 1997).......................................... 37

*Snyder v. Phelps*,
562 U.S. 443 (2011).............................................................................................. 20

*Starko, Inc. v. Presbyterian Health Plan, Inc.*,
276 P.3d 252 (N.M. Ct. App. 2011) ..................................................................... 66

*State ex rel. Stratton v. Gurley Motor Co.*,
737 P.2d 1180 (N.M. Ct. App. 1987) ................................................................... 41

*State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Center, Inc.*,
427 Fed. Appx. 714 (11th Cir. 2011)..................................................................... 64

*Stewart v. Beam Glob. Spirits & Wine, Inc.*,
877 F. Supp. 2d 192 (D.N.J. 2012)....................................................................... 69

*Stewart v. Smart Balance, Inc.*,
2012 WL 4168584 (D.N.J. June 25, 2012)............................................................ 41

*Stoll v. Kraft Foods Glob., Inc.*, case no. 09-cv-0364-TWP-DML,
2010 WL 3702359 (S.D. Ind. Sept. 6, 2010) ....................................................... 14

*Sweet Air Inv., Inc. v. Kenney*,
739 N.W.2d 656 (Mich. 2007)............................................................................... 65

*Tavasci v. Cambron*, case no. 16-cv-0461 JB/LF,
2016 WL 6405896 (D.N.M. Oct. 25, 2016)........................................................... 63

*Testo v. Russ Dunmire Oldsmobile*,
554 P.2d 349 (Wash. Ct. App. 1976)..................................................................... 42

*Thompkins v. Key Health Med. Sols., Inc.*, case no. 12-cv-613,
2015 WL 1292228 (M.D.N.C. Mar. 23, 2015) ..................................................... 68

*Thompson v. W. States Med. Ctr.*,
  535 U.S. 357 (2002) ................................................................................................ 19

*Tkachik v. Mandeville*,
  790 N.W.2d 260 (Mich. 2010) .............................................................................. 65

*Tompkins v. Executive Comm. of S. Baptist Convention*, case no. 13–cv-0840 JB,
  2015 WL 1569034 (D. N.M. Mar. 31, 2015) ....................................................... 77

*TOT Payments, LLC v. First Data Corp.*,
  128 A.D.3d 468 (N.Y. App. Div. 2015) ........................................................ 67, 71

*Trujillo v. Apple Computer, Inc.*,
  581 F. Supp. 2d 935 (N.D. Ill. 2008) ................................................ 40, 49, 50, 51

*Truong v. Allstate Ins. Co.*,
  227 P.3d 73 (N.M. 2010) ....................................................................................... 36

*U.S. ex rel. Cestra v. Cephalon, Inc.*, case no. 14-cv-1842,
  2015 WL 3498761 (E.D. Pa. June 3, 2015) .......................................................... 17

*U.S. ex rel. Kester v. Novartis Pharm. Corp.*, case no. 11-cv-8196 CM,
  2014 WL 4401275 (S.D.N.Y. Sept. 4, 2014) ....................................................... 69

*U.S. ex rel. Kester v. Novartis Pharm. Corp.*, case no. 11-cv-8196,
  2014 WL 4401275 (S.D.N.Y. Sept. 4, 2014) ....................................................... 71

*Union Ink Co. v. AT&T Corp.*,
  801 A.2d 361 (N.J. App. Div. 2002) ..................................................................... 41

*United States ex rel. Krohn v. Sun West Servs.*, No. 97-0644,
  2000 U.S. Dist. LEXIS 17193 (D.N.M. Apr. 11, 2000) ......................................... 4

*United States v. Mead Corp.*,
  533 U.S. 218 (2001) ................................................................................................ 24

*United States v. Philip Morris Inc.*,
  263 F. Supp. 2d 72 (D.D.C. 2003) ........................................................................ 25

*United States v. Philip Morris USA, Inc.*,
  449 F. Supp. 2d 1 (D.D.C. 2006) .......................................................................... 27

*United States v. South Florida Water Management District*,
  373 F. Supp. 2d 1338 (S.D. Fla. 2005) ................................................................. 13

*US Airways, Inc. v. O'Donnell*,
  627 F.3d 1318 (10th Cir. 2010) ............................................................................. 13

*Van Dusen v. Barrack,*
  376 U.S. 612 (1964) ........................................................................................... 62

*Vicuna v. Alexia Foods, Inc.*, case no. 11-cv-6119 PJH,
  2012 WL 1497507 (N.D. Cal. Apr. 27, 2012) ...................................................... 72

*Virgin Enterprises Ltd. v. Am. Longevity*, case no. 99-cv-9854 (CSH),
  2001 WL 34142402 (S.D.N.Y. Mar. 1, 2001) ........................................... 16, 17, 21

*Walker v. Quality Loan Serv. Corp. of Wash.*,
  308 P.3d 716 (Wash Ct. App. 2013) ..................................................................... 42

*Wanaque Borough Sewerage Auth. v. Twp. of W. Milford*,
  677 A.2d 747 (N. J. 1996) .............................................................................. 66, 70

*Washington v. American Tobacco Co.*,
  No. 96–2–15056–8 SEA (Wash. Super. Ct. June 9, 1998) .................................... 79

*Watkins v. DineEquity, Inc.*,
  591 Fed. Appx 132 (3d Cir. 2014) .................................................................. 57, 58

*Weisblum v. Prophase Labs, Inc.*,
  88 F. Supp. 3d 283 (S.D.N.Y. 2015) ..................................................................... 75

*Whitaker v. M.T. Auto., Inc.*,
  855 N.E.2d 825 (Ohio 2006) ................................................................................. 60

*Williams v. Bear Stearns & Co.*,
  725 So. 2d 397 (Fla. Dist. Ct. App. 1998) ............................................................ 64

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) ........................................................................ passim

*Wilson v. Frito Lay N. Am., Inc.*, case no. 12-cv-1586 SC,
  2013 WL 1320468 (N.D.Cal. Apr. 1, 2013) .......................................................... 48

*Wyeth v. Levine*,
  555 U.S. 555 (2009) ................................................................................ 5, 6, 12, 15

*Zapata Fonseca v. Goya Foods Inc.*, case no. 16-cv-02559-LHK,
  2016 WL 4698942 (N.D. Cal. Sept. 8, 2016) ........................................................ 74

*Zlotnick v. Premier Sales Group*,
  480 F.3d 1281 (11th Cir. 2007) ............................................................................ 40


## STATUTES

15 U.S.C. § 45 ............................................................................................ 7, 10, 11

15 U.S.C. § 57 ............................................................................................................ 10

15 U.S.C. § 57b .......................................................................................... 7, 10, 11, 14

15 U.S.C. § 78aa–1 .................................................................................................... 62

42 U.S.C. § 6972 ........................................................................................................ 14

42 U.S.C. § 6973 ........................................................................................................ 14

5 U.S.C. § 533 (2007) ................................................................................................ 10

815 Ill. Comp. Stat. Ann. 505/2 ................................................................................. 8

815 Ill. Comp. Stat. Ann. 510/2 ............................................................................... 55

Administrative Procedure Act .................................................................................... 10

Cal. Civ. Code § 1770 ................................................................................................. 8

California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq. ..................... 30, 39

California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. .......... 17, 21, 39

California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq. ........................... 39

Colo. Rev. Stat. Ann. § 6-1-106 ................................................................................ 31

Colo. Rev. Stat. Ann. § 6-1-113 .................................................................................. 8

Colorado Consumer Protection Act ............................................................................ 31

Fla. Stat. Ann. § 501.204 ............................................................................................ 8

Fla. Stat. Ann. § 501.212 ..................................................................................... 32, 40

Florida Deceptive and Unfair Trade Practices Act ........................................... 31, 33, 40

G.L. c. 93A, § 3 ......................................................................................................... 34

Illinois Consumer Fraud & Deceptive Business Practices Act ............................... 40, 50

Illinois Uniform Deceptive Trade Practices Act ....................................................... 54

Lanham Act, 15 U.S.C. § 1051 et seq. ........................................................................ 61

Maine's Unfair Trade Practices Act ............................................................................. 9

Massachusetts General Laws, Chapter 93A ........................................................... 8, 40

MCLS § 445.903 ................................................................................................................ 40

Michigan Consumer Protection Act ................................................................................... 40

N.C. GEN. STAT. § 75-1.1 .................................................................................................. 41

N.J.S.A. 56:8-2 ............................................................................................................ 56, 57

N.Y. GEN. BUS. LAW § 349 ......................................................................................... passim

N.Y. GEN. BUS. LAW § 350 ............................................................................... 37, 41, 46

New Jersey Consumer Fraud Act ............................................................................... passim

New Jersey's Truth-in-Consumer Contract, Warranty and Notice Act .......................... 56, 57, 58

New Mexico Unfair Trade Practices Act ....................................................................... 36, 41, 66

North Carolina's Deceptive Trade Practices Act ........................................................... 37

Ohio Deceptive Trade Practices Act ............................................................................ 61

OHIO REV. CODE ANN. § 1345.11 .................................................................................. 38

Ohio's Consumer Sales Practices Act ....................................................................... 38, 42, 60

Organic Foods Production Act of 1990 ......................................................................... 15

Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.* ......................... 14

WASH. REV. CODE ANN. § 19.86.170 ............................................................................ 38

Washington's Consumer Protection Act ........................................................................ 38, 42

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 8 ................................................................................. 63, 70

Federal Rule of Civil Procedure 12 ......................................................................... passim

Federal Rule of Civil Procedure 23 ............................................................................... 59, 60

Federal Rule of Civil Procedure 54 ............................................................................... 22

S. Conf. Rep. 93-1408, 1974 U.S.C.C.A.N. 7755 (1974) ............................................ 8

U.S. CONST. amend I .................................................................................................. passim

Plaintiffs hereby respectfully submit their opposition to the motion of defendants Santa Fe Natural Tobacco Company, Inc. ("Santa Fe"), Reynold American Inc. ("RAI"), and R.J. Reynolds Tobacco Company ("RJR") (collectively, "Defendants") to dismiss Plaintiffs' Consolidated Amended Complaint. (ECF No. 90) ("Motion" or "Def. Mem.").  For the reasons stated below, Defendants' Motion should be denied in its entirety.

## **INTRODUCTION**

The Consolidated Amended Complaint[1] alleges in detail how Defendants used misleading and deceptive labeling and marketing with respect to its Natural American Spirits cigarettes to reap tremendous profits from consumers.  Defendants do not deny this.  Indeed, they admit that the allegations arise from "common marketing terms … namely, the terms 'Natural' and 'Additive-Free.'" (Def. Mem. at 1).

Instead of denial, Defendants move to dismiss based upon a number of flawed arguments. None of these arguments has merit, and each must be denied.

First, Defendants argue that their misconduct in making misleading and deceptive statements is protected by the First Amendment or otherwise protected by federal law.  This is untrue, and has soundly been rejected by the United States Supreme Court, as well as numerous other courts.  *See, e.g.*, *Altria Grp., Inc. v. Good*, 555 U.S. 70 (2008) ("*Altria II*").

Second, Defendants incorrectly claim that their misconduct is protected by the "safe harbors" of some of the statutory claims at issue.  Analysis of the various laws, however, reveals this to be untrue.  None of the "safe harbors" protect misleading or deceptive conduct.

---

[1] Consolidated Amended Complaint is herein referred to as "CAC" or "Complaint."  Reference herein to "__¶¶" is a citation to paragraphs in the CAC.

Third, Defendants ask this Court to substitute Defendants' own (and biased) interpretation of the deceptive statements at issue here for the well-pled allegations of the Complaint and to find – ***as a matter of law*** – that no reasonable consumer could be misled by Defendants' statements. This argument has been soundly rejected, time and again, by numerous courts (including several appellate courts), which have held that it is improper to reach this issue on a motion to dismiss. Rather, the issue is for the trier of fact to determine, after development of a full evidentiary record.

Fourth, Defendants' arguments regarding certain state state statutory, unjust enrichment and other common law claims also must fail. Analysis of the applicable laws reveals that Defendants' arguments against these claims are without merit.

Fifth, Defendants' argument against injunctive relief also fails. Defendants' argument that injunctive relief is moot due to their settlement with the FDA must be rejected. Defendants continue to use, and are not prohibited from using, the misleading statements at issue here.

Finally, Defendants' arguments regarding the lack of jurisdiction with respect to Defendant RAI concedes that jurisdiction over RAI exists for at least some of the plaintiffs and some of the claims, including nationwide claims that cover all class members. Defendants' argument, then, is premature with respect to the remaining plaintiffs. Moreover, Defendants' argument is contradicted by the plain allegations of the Complaint that RAI was involved in the misconduct at issue here. Defendants' argument is also contradicted by a previous decision of this Court on the issue.

In sum, all of Defendants' arguments are without merit, and Defendants' Motion to Dismiss should be denied in its entirety.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, the complaint must simply include factual allegations that are specific enough "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). This does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *see also Genesee County Emples. Ret. Sys. v. Thornburg Mortg. Secs. Trust 2006-3*, 825 F. Supp. 2d 1082, 1121 (D.N.M. 2011) ("[a] complaint challenged by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement'" but merely "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Accordingly, a court "should not grant a motion to dismiss for failure to state a claim unless it 'appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Garcia v. New Mexico Office of the Treasurer*, 959 F. Supp. 1426, 1428 (D.N.M. 1997).

Determination of facial plausibility must follow well-settled principles: (1) "motions to dismiss for failure to state a claim are viewed with disfavor and are therefore rarely granted;" (2) "the pleadings must be liberally construed" in favor of the plaintiffs; and (3) the "court must accept as true all well-pleaded factual allegations in the complaint," must "view those allegations in the light most favorable to the non-moving party," and must "draw all reasonable inferences in the plaintiff's favor." *Genesee County Emples. Ret. Sys.*, 825 F. Supp. 2d at 1121.

In recognition of the foregoing principles, a complaint must survive a motion to dismiss "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556. This is because "'[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.'" *United States ex rel. Krohn v. Sun West Servs.*, No. 97-0644, 2000 U.S. Dist. LEXIS 17193, at *5 (D.N.M. Apr. 11, 2000). Stated another way, the issue here "is not whether a plaintiff will ultimately prevail," but simply whether he "is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

## ARGUMENT

## I.   FEDERAL LAW DOES NOT PREEMPT PLAINTIFFS' CLAIMS

Plaintiffs have alleged that Defendants' use of the terms "Natural" and "Additive-Free" in the labeling and advertising of Natural American Spirit cigarettes falsely and misleadingly indicates the cigarettes are healthier or safer than other cigarettes.  Defendants argue that Plaintiffs' state law claims based on that deception impose an obstacle to the accomplishment of federal policy because the FTC Consent Order of June 12, 2000 purportedly "authorized" Santa Fe to make "Additive-Free", as well as "Natural", representations in advertisements, so long as the representations include a mandatory disclaimer. (Def. Mem. at 6-20.)  Defendants also contend, in a footnote devoid of elaboration and citation to legal authority, that their representations that Natural American Spirit cigarettes are "organic" comply with the U.S. Department of Agriculture's regulations governing the use of that term.[2] (*Id.* at 12).

---

[2] Defendants ***do not*** argue federal law preempts Plaintiffs' claims that the "Additive-Free"

4

Defendants are wrong as to both arguments. As detailed below, nothing in federal law preempts any of Plaintiffs' claims.

### A.   Federal Law Does Not Preempt Plaintiffs' Claims

#### 1.   *Defendants Have Not Met Their Burden of Overcoming the Presumption Against Federal Preemption of State Law*

"[T]he purpose of Congress is the ultimate touchstone in every pre-emption case." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009). "Courts do not 'lightly attribute to Congress *or to a federal agency* the intent to preempt state or local laws.'" *Ramsey Winch Inc. v. Henry*, 555 F.3d 1199, 1204 (10th Cir. 2009) (emphasis added) (reversing district court order holding that federal law preempted state law under implied conflict preemption principles); *California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 281 (1987) ("[P]re-emption is not to be lightly presumed.").

"In all pre-emption cases, and particularly in those in which Congress has legislated…in a field which the States have traditionally occupied…we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Wyeth*, 555 U.S. at 565. "Because consumer protection law is a field traditionally regulated by the states, *compelling evidence of an intention to preempt is required in this area*." *Gen. Motors Corp. v. Abrams*, 897 F.2d 34, 41 (2d Cir. 1990) (emphasis added). Furthermore, regulation of cigarette advertising is one of the states'

---

representation on their menthol cigarettes is false and misleading because Defendants use the cigarettes' filters as a means of adding menthol to the purportedly "Additive-Free" tobacco. (*See* CAC at ¶¶ 10, 67–69.). Defendants also ***do not*** argue federal law preempts Plaintiffs' claims that the "Natural" representation is false and misleading because Defendants subject the tobacco in Natural American Spirit cigarettes to various complex, unnatural engineering processes. (¶¶ 70–74.) Defendants also ***do not*** argue federal law preempts Plaintiffs' claims premised upon Defendants' use of Native American or environmental imagery and statements like "Tobacco + Water" or "Earth-Friendly Tobacco". (¶¶ 6-7, 70.)

historic police powers. *Packer Corp. v. State of Utah*, 285 U.S. 105, 108 (1932) ("[T]he state may, under the police power, regulate the business of selling tobacco products and the advertising connected therewith.").

"We rely on the presumption because respect for the States as independent sovereigns in our federal system leads us to assume that 'Congress does not cavalierly pre-empt state-law causes of action.'" *Wyeth*, 555 U.S. at 565 n.3. In accordance with the presumption against preemption, when federal law is ambiguous, courts should interpret the law to disfavor preemption. *See Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005) (stating that courts "have a duty to accept the reading [of a federal statute] that disfavors pre-emption").

Recently, "the Supreme Court has put renewed emphasis on the presumption against preemption." *Pueblo of Pojoaque v. New Mexico*, case no. 15-cv-0625 JB/GBW, 2016 WL 6405927, at *28 (D.N.M. Sept. 30, 2016). For example, in *Arizona v. United States*, 567 U.S. 387 (2012), "the Supreme Court once again emphasized the importance of clear Congressional intent when applying obstacle preemption." *Pueblo of Pojoaque*, 2016 WL 6405927, at *29.

### 2. Plaintiffs' Claims Do Not Stand as an Obstacle to Federal Law

Implied conflict preemption results when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 141 (1963); *accord Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 339 (3d Cir. 2009); *Good v. Altria Grp., Inc.*, 501 F.3d 29, 47 (1st Cir. 2007) ("*Altria I*"). "Conflict preemption requires that the state law materially impede or thwart the federal law or policy." *Ramsey Winch*, 555 F.3d at 1204. The burden to establish conflict (or "obstacle") preemption rests squarely on Defendants, and that burden "is heavy." *In re Methyl*

6

*Tertiary Butyl Ether ("MBTE") Prods. Liab. Litig.*, 725 F.3d 65, 101 (2d Cir. 2013). Accordingly, "'the mere fact of 'tension' between federal and state law is generally not enough to establish an obstacle supporting preemption, particularly when the state law involves the exercise of traditional police power.'" *Id*. at 101-02 (citation omitted).

"What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Barber ex rel. Barber v. Colorado Dep't of Revenue*, 562 F.3d 1222, 1232 (10th Cir. 2009). "The Supreme Court has now begun to back away from finding implied preemption based on an alleged conflict with the purposes underlying federal regulations." *Pueblo of Pojoaque*, 2016 WL 6405927, at *27.

The Federal Trade Commission Act, 15 U.S.C. § 41 *et seq.* (the "FTC Act"), prohibits, and it empowers and directs the FTC to prevent, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1), (2). "As an independent federal administrative agency charged with preventing 'unfair methods of competition' and 'unfair or deceptive acts or practices,' the [FTC] ***historically has operated in areas of dual state-federal regulation***." *Abrams*, 897 F.2d at 36 (emphasis added) (reversing district court order that held FTC consent order preempted state law).

The FTC may commence a civil action against any person who violates any rule under the FTC Act respecting unfair or deceptive acts or practices pursuant to 15 U.S.C. § 57b(a)(1), or against any person with respect to which the FTC has issued a final cease and desist order pursuant to § 57b(a)(2). Under § 57b(e), "***[r]emedies provided in this section are in addition to, and not in lieu of, any other remedy or right of action provided by State or Federal law***." 15 U.S.C. § 57b(e) (emphasis added). Furthermore, in enacting 15 U.S.C. § 57b, Congress stated:

> ***It is not the intention of the conferees that private actions for redress based on the acts or practices which are the subject of a Commission consumer redress action be barred by a Commission action.*** In any such case the defendant in the private action would be able to assert a defense of payment or similar defense. Failure of a consumer to appear or accept settlement would therefore not affect private rights. Nor would an action under these consumer redress provisions prevent the FTC from bringing an action under section 5(m) of the Federal Trade Commission Act for a civil penalty.

S. Conf. Rep. 93-1408, 1974 U.S.C.C.A.N. 7755, 7773 (1974) (emphasis added).

Like the FTC Act, Plaintiffs' state consumer protection claims prohibit unfair and deceptive acts and practices.[3] Thus, Plaintiffs' state law claims align with federal law.

Against this backdrop, Defendants argue that in the Consent Order of June 12, 2000, the FTC "specifically passed upon and authorized" Santa Fe's use of "Additive-Free" and "Natural," so long as Santa Fe accompanied the terms with a predetermined disclaimer. (Def. Mem. at 7; 8; 10–11; 13; 17; 19.) According to Defendants, the FTC "has concluded" that "Santa Fe's use of these terms, accompanied by the disclosure, *does not* represent, directly or by implication, that NAS cigarettes are safer than alternatives." (*Id.* at 7.) Based on these assertions, Defendants perceive a conflict between the Consent Order and Plaintiffs' allegations that the "Additive-Free" and "Natural" representations convey to reasonable consumers that Natural American Spirit cigarettes are safer and healthier to smoke than other competing cigarettes. Defendants then argue the Consent Order preempts Plaintiffs' claims.

---

[3] *See, e.g.*, CAL. CIV. CODE § 1770(a) (prohibiting "unfair methods of competition and unfair or deceptive acts or practices"); COLO. REV. STAT. ANN. § 6-1-113 (providing civil action against any person who has engaged in a "deceptive trade practice"); FLA. STAT. ANN. § 501.204(1) (prohibiting "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce"); 815 ILL. COMP. STAT. ANN. 505/2 (prohibiting "[u]nfair methods of competition and unfair or deceptive acts or practices"); MASS. GEN. LAWS ANN. ch. 93A, § 2 (prohibiting ""unfair or deceptive acts or practices in the conduct of any trade or commerce"); N.Y. GEN. BUS. LAW § 349(a) (prohibiting "[d]eceptive acts or practices in the conduct of any business, trade or commerce").

The U.S. Supreme Court's decision in *Altria II* squarely addressed the same argument Defendants make here – *i.e.*, that an FTC consent order impliedly preempted state law claims for false and misleading marketing of cigarettes – ***and roundly rejected it***. *Altria II*, 555 U.S. at 89.

In *Altria II*, smokers of "light" cigarettes claimed the defendants violated Maine's Unfair Trade Practices Act by fraudulently conveying in their advertising that the cigarettes delivered less tar and nicotine than regular brands. *Id.* at 73. In another action, the FTC had charged a cigarette manufacturer with violating the FTC Act by misleadingly advertising certain brands as "low in tar" even though they had a higher-than-average tar rating. *Id.* at 89 n.13. The FTC and the manufacturer entered a consent order that prevented the manufacturer from making any such representations unless they were accompanied by a clear and conspicuous disclosure of the cigarettes' tar and nicotine content as measured by a predetermined testing method. *Id.*

The defendants in *Altria II* offered the consent order as evidence that the FTC had authorized the use of "light" and "low tar" descriptors as long as they accurately described the results of the predetermined testing method, arguing that the consent order impliedly preempted the plaintiffs' consumer protection claims. *Id.* The Supreme Court disagreed, holding that the consent order did not preempt those claims because "the decree only enjoined conduct" and because "a consent order is in any event only binding on the parties to the agreement." *Id.* The Supreme Court concluded that "[i]n short, neither the handful of industry guidances and consent orders on which [the defendants relied] nor the FTC's inaction with regard to 'light' descriptors ***even arguably*** justifies the pre-emption of state deceptive practices." *Altria II*, 555 U.S. at 90.

The First Circuit's decision in *Altria I*, which the Supreme Court affirmed in *Altria II*, further confirms that FTC consent orders similar to the one at issue here ***do not*** impliedly

preempt state consumer protection claims. In *Altria I*, the defendants sought dismissal of the plaintiffs' claims, arguing: (1) that they "conflict[ed] with the FTC's 40-year history of regulation and control over the development, testing and marketing of low tar cigarettes [under the FTC Act], as well as the reporting of tar and nicotine measurements pursuant to the [FTC's testing method] and the use of descriptors substantiated by those measurements;" (2) that the FTC, through its exercises of authority over tar and nicotine claims (including consent orders), had expressed a "policy of allowing [use of tar and nicotine claims] so long as substantiated with the FTC [testing method] numerical results and requiring publication of those results in all brand advertisements;" and (3) that this FTC policy preempted the plaintiffs' state law claims because the claims stood as an obstacle to the policy. *Altria I*, 501 F.3d at 47, 49-51.

The First Circuit rejected each of the defendants' arguments, noting that the FTC "may issue cease-and-desist orders against those engaged in violations of the [FTC] Act," 15 U.S.C. § 45(b), and that the FTC "may enforce such orders…by suing violators for either civil penalties," *id.* § 45(m), or "such relief as the court finds necessary to redress injuries to consumers" or other injured parties, *id.* §§ 57b(a), (b). *Id.* at 49. The First Circuit explained:

> Unlike many other exercises of agency authority, formal rulemaking comes with a host of procedural protections under the Administrative Procedure Act ("APA"), such as notice of the proposed rule, an opportunity for interested parties to participate, a statement of the basis and purpose of any rule adopted, and its publication in the Federal Register. 5 U.S.C. § 533 (2007). Limiting the preemptive power of federal agencies to exercises of formal rulemaking authority, then, ensures that the states will have enjoyed these protections before suffering the displacement of their laws. This reasoning has particular force in the case of the FTC Act, which imposes procedural requirements on the [FTC's] rulemaking powers that exceed those of the APA. 15 U.S.C. §§ 57(c)–(e). Indeed, courts and commentators have understood these additional safeguards to reflect a congressional concern—well-documented in their legislative history—over the preemptive effect of FTC regulation on state consumer protection law.

10

*Altria I*, 501 F.3d at 51–52. The First Circuit continued on to state that:

> [A]part from the likely import of its rulemaking provisions, the FTC Act raises an additional hurdle to [the defendants'] implied preemption theory, at least insofar as that theory relies on the 1971 and 1995 consent orders. The Act states that "[r]emedies provided in [15 U.S.C. § 57b] *are in addition to, and not in lieu of, any other remedy or right of action provided by State or Federal law*." 15 U.S.C. § 57b(e). And § 57b, as we have observed, empowers the [FTC] to sue for relief on behalf of consumers against those who violate its cease-and-desist orders against unfair or deceptive acts or practices. *We do not think it a stretch, then, to say that when the FTC merely issues such an order, but never uses it as the basis for a subsequent lawsuit, the order does not supplant state-law rights of action any more than the lawsuit would have.* A number of authorities have reached the same conclusion, though not necessarily by way of the same rationale.

*Id.* at 52 (emphasis added).

Furthermore, "§ 57b(e) [of the FTC Act] specifically provides that state-law rights of action survive the FTC's efforts at judicial enforcement of its own federal standards: in other words, that those efforts are 'in addition to, and not in lieu of' other available remedies." *Id.* There is "no other purpose for this clause other than to allow further relief from unfair or deceptive acts or practices under state law even after the [FTC] has already challenged them through litigation under the FTC Act[.]" *Id.* at 52–53. The fact that the FTC often prefers to formulate policy through case-by-case adjudication, rather than rulemaking "is far from saying … that commands, decisions, or policies announced in adjudications are 'rules' in the sense that they must, without more, be obeyed by the affected public." *Id.* at 53. "Indeed, the FTC Act itself reflects this distinction, at least with regard to consent orders: it specifically provides that the Commission cannot enforce them against non-parties." *Id.* (citing 15 U.S.C. § 45(m)(1)(B)). As a result, the First Circuit "[did] not believe that the FTC can preempt state-law actions arising out of particular practices simply by entering into a consent order allowing them to continue." *Id.*

11

Consequently, "the mere entry of [an FTC consent] order dealing with a particular practice 'is insufficient to preclude supplemental state regulation.'" *Altria I*, 501 F.3d at 53. After reviewing the FTC's enforcement activity, the First Circuit concluded that "the only policy we perceive is that certain tar and nicotine claims consistent with [FTC testing method] results can still amount to unfair or deceptive acts or practices." *Id.* at 54. Because the court could not "discern a coherent federal policy on low-tar claims, let alone one driven by the sort of 'important means-related federal objectives' necessary to preempt conflicting state law," it held the plaintiffs' claims were not impliedly preempted. *Id.* at 55.

Here as in *Altria I* and *Altria II*, the Consent Order does not preempt Plaintiffs' state law claims, and Defendants' argument to the contrary must be rejected. *See also Wyeth*, 555 U.S. at 575, 580–81.[4]

### 3.   *Defendants' Arguments in Favor of Preemption Are Wrong*

In urging dismissal, Defendants' rely heavily on *Geier v. American Honda Motor Co.*, 529 U.S. 861 (2000), which is off point. (*See* Def. Mem. at 10.) In *Geier*, the plaintiffs sued a manufacturer and its affiliates under District of Columbia tort law after the plaintiff was seriously injured in a car crash, which the plaintiff alleged was due to a defectively designed automobile, in that it lacked an air bag. *Geier*, 529 U.S. at 865. At the time of the accident, federal safety standards provided car manufacturers with a range of options for passive restraint devices. *Id.* at 874–75. The plaintiffs' lawsuit, by contrast, would have required car manufacturers to install an airbag. *Id.* at 881. Because that outcome would undermine Congress'

---

[4] Finally, the Consent Order could not possibly preempt claims based on the packaging as the Consent Order only pertains to advertising, ***and not the labeling***. Defendants have not, and cannot, offered any argument to the contrary.

12

decision to permit a variety of devices, the state tort suit was impliedly preempted; it "would have stood 'as an obstacle to the accomplishment and execution of' the important means-related federal objectives." *Id.* Here, in stark contrast, Defendants do not contend that Congress or the FTC intended Defendants to have a range of advertising (or labeling) options that Plaintiffs' claims will effectively remove. Thus, *Geier* is off point.

The Tenth Circuit's opinion in *US Airways, Inc. v. O'Donnell*, 627 F.3d 1318 (10th Cir. 2010), which Defendants cite (Def. Mem. at 10, 11), is also inapposite because the holding turned exclusively on principles of field preemption, which Defendants do not raise here. *Id.* at 1324 ("Because we conclude that applying New Mexico's regulatory scheme to U.S. Airways implicates the field of aviation safety that Congress intended federal law to regulate exclusively, we need not reach the question of express preemption.").

Defendants cite *United States v. South Florida Water Management District*, 373 F. Supp. 2d 1338 (S.D. Fla. 2005) ("*South Florida Water*"), for the proposition that consent orders "ha[ve] the force of law." (Def. Mem. at 11.) *South Florida Water*, however, does not address preemption and does not involve an FTC consent order. Rather, in that case, the court found that the parties to a consent decree had not complied with the decree and addressed questions related to the appropriate remedy for the lack of compliance. *Id.* at 1339.

Defendants' reliance on *Feikema v. Texaco, Inc.*, 16 F.3d 1408 (4th Cir. 1994), is also misplaced. (*See* Def. Mem. 11.) In *Feikema*, the defendants entered into a consent order with the U.S. Environmental Protection Agency ("EPA") that affirmatively required the defendants to take certain actions immediately and to implement a certain plan under a schedule the EPA approved. *Feikema*, 16 F.3d at 1411, 1416. The consent order was issued pursuant to 42 U.S.C. §

13

6973, a provision of the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.* ("RCRA"), which gives the EPA broad powers to remedy imminent hazards to health or the environment. *See id.* at 1410–11; *Stoll v. Kraft Foods Glob., Inc.*, case no. 09-cv-0364-TWP-DML, 2010 WL 3702359, at *12 (S.D. Ind. Sept. 6, 2010). If the EPA is diligently prosecuting an action under § 6973, the RCRA expressly precludes citizens from suing under its citizen suit provisions. 42 U.S.C. § 6972(b)(2)(B)(i); *see also Stoll*, 2010 WL 3702359, at *12.

Here, the FTC Consent Order prohibits Defendants from using certain representations in advertisements. Unlike the EPA consent order in *Feikema*, the FTC Consent Order ***does not require*** Defendants to take any action relevant to this case. Consent Order § I. Furthermore, the statutory provisions, upon which the FTC's authority to issue the Consent Order is based, do not foreclose the possibility of individual consumer lawsuits, unlike the provision at issue in *Feikema. See Stoll*, 2010 WL 3702359, at *12 (holding EPA consent order did not preempt state common law claims; distinguishing *Feikema* because the consent order in *Stoll* was issued pursuant to an RCRA provision that does not serve as a bar to individual citizen suits). Indeed, as discussed above, the FTC Act provides that its remedies for violations of cease-and-desist orders "***are in addition to, and not in lieu of, any other remedy or right of action provided by State or Federal law.***" 15 U.S.C. § 57b(e); *see also Altria I*, 501 F.3d at 52 ("when the FTC merely issues [a cease-and-desist] order…the order does not supplant state-law rights of action").

14

### B.  Federal Law Does Not Preempt Plaintiffs' Claims Concerning Defendants' Representations that Natural American Spirit Cigarettes Are "Organic"

Plaintiffs have alleged that Defendants' "organic" claims are false and misleading. In a footnote, Defendants argue that this claim is preempted because Natural American Spirit cigarettes comply with the U.S. Department of Agriculture's regulations governing the use of the term "organic." (Def. Mem. 12.) In similar circumstances, federal courts have held that federal law does not preempt state law claims concerning the term "organic." *Segedie v. Hain Celestial Grp., Inc.*, case no. 14-cv-5029 NSR, 2015 WL 2168374, at *2–7 (S.D.N.Y. May 7, 2015) (ultimately concluding that "[i]n accordance with *Wyeth*, this Court rejects the premise that once a certifying agency has passed on a product's organic status, a state-law verdict may not deem the sale or labeling of that product as 'organic' false or misleading"); *Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 894–96 (N.D. Cal. 2012) (noting that while the Organic Foods Production Act of 1990 ("OFPA") preempts state certification requirements, it "does not expressly bar state law claims that do not conflict with OFPA's provisions," and holding that therefore plaintiff's claims alleging that defendant misled reasonable consumers in violation of state law by labeling of its food products as "organic" or "certified organic" were not impliedly preempted); *Brown v. Hain Celestial Grp., Inc.*, case no. 11-cv-03082 LB, 2012 WL 3138013, at *6–12 (N.D. Cal. Aug. 1, 2012) (stating that OFPA "does not expressly bar state law claims that do not conflict with OFPA's provisions," finding no "obvious conflict between the state and federal definitions of the term 'organic,'" and concluding that a finding of preemption "would mean that a consumer would have no protection against deceptive or fraudulent labeling based

15

on the use of the term 'organic'").[5]

## II. THE FIRST AMENDMENT DOES NOT PROTECT DEFENDANTS' FALSE AND MISLEADING REPRESENTATIONS

Defendants argue the First Amendment shields the labeling and advertising at issue. (Def. Mem. 20–30.) As seen below, Defendants are wrong.

### A. The First Amendment Is Not an Appropriate Basis for Dismissal of Plaintiffs' Claims under Federal Rule of Civil Procedure 12(b)(6) Because Plaintiffs Have Plausibly Alleged the Representations at Issue are Misleading

Plaintiffs have plausibly alleged Defendants' marketing representations (including but not limited to "additive free," "natural," and "organic") are false and misleading. Accordingly, Defendants' First Amendment argument is wrong as "'it is well settled that *false commercial speech is not protected by the First Amendment* and may be banned entirely.'" *Virgin Enterprises Ltd. v. Am. Longevity*, case no. 99-cv-9854 (CSH), 2001 WL 34142402, at *8 (S.D.N.Y. Mar. 1, 2001). Because Plaintiffs have sufficiently alleged that Defendants' representations are false and misleading, and such determination is for the trier of fact, dismissal under Rule 12(b)(6) is inappropriate. *Bruton v. Gerber Prods. Co.*, 961 F. Supp. 2d 1062, 1092–93 (N.D. Cal. 2013) (explaining that "[t]o the extent that Defendants attempt to dispute the merits of Burton's allegations" – *i.e.*, that Defendants' baby food labels were misleading – "by virtue of invoking a First Amendment defense, the Court finds such arguments inappropriate for a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)"); *U.S. ex rel.*

---

[5] Defendants also argue that Natural American Spirit advertisements containing "organic" representations "always include the following disclosure: 'Organic tobacco does **NOT** mean a safer cigarette.'" (Def. Mem. 12 n.3.) Defendants do not mention, however, that *none* of the **labels** of the cigarettes that contain "organic" representations include the disclosure. Thus, even assuming that the disclosure somehow caused federal law to preempt Plaintiffs' "organic" claims concerning Defendants' advertisements (which it does not), the disclosure has no impact on Plaintiffs' claims concerning Natural American Spirit cigarettes' labeling.

*Cestra v. Cephalon, Inc.*, case no. 14-cv-1842, 2015 WL 3498761, at *12 (E.D. Pa. June 3, 2015) (holding "the question of First Amendment protection is not properly disposed of on a motion to dismiss").

Indeed, Defendants do not cite a single decision holding that dismissal of consumer protection claims concerning allegedly false and misleading marketing was appropriate under Federal Rule of Civil Procedure 12(b)(6) on the ground that the First Amendment protected the allegedly false and misleading marketing representations.

Particularly illustrative of the foregoing principles is *Virgin Enterprises Ltd. v. American Longevity*, a case in which the plaintiff alleged the defendants were liable for, among other things, false advertising under California's Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 *et seq.* (the "UCL"), because of their marketing and sale of certain products using the plaintiff's trademarks. *Virgin Enterprises Ltd.*, 2001 WL 34142402, at *1–2. The defendants moved to dismiss the plaintiff's UCL claim for failure to state a claim, arguing there, as Defendants do here, that it was barred by the First Amendment. *Id.* at *2, *7. The court rejected the defendants' argument, stating: "Accepting the plaintiff Virgin's allegations as true, as I must on this motion to dismiss, the defendants have made a number of false statements in the context of commercial advertising and promotion." *Id.* at *7. The court concluded that "[b]ecause 'it is well settled that false commercial speech is not protected by the First Amendment and may be banned entirely,' the plaintiff's allegations in their complaint that the utterances in question are false and commercial in nature are sufficient to survive a Rule 12(b)(6) motion." *Id.* at *8.

Here, Plaintiffs adequately alleged Defendants' claims that Natural American Spirit cigarettes are "natural," "additive free," and "organic," as well as other marketing

17

representations, are false and misleading. As in each cases cited above, the Court must accept Plaintiffs' allegations as true and reject Defendants' First Amendment argument, since the question of whether the representations are in fact misleading is an issue for the finder of fact. For this reason alone, the Court should reject Defendants' First Amendment argument.

### B.      Plaintiffs' Claims Satisfy the Test Set Forth in *Central Hudson*

For the foregoing reasons, the First Amendment does not bar Plaintiffs' claims, and the Court need not delve into a more detailed analysis under *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557 (1980). As explained by one court:

> Defendants' reliance on *Pearson* [*v. Shalala*, 164 F.3d 650 (D.C. Cir. 1999)] and *Central Hudson* is misplaced. Neither decision stands for the proposition that a manufacturer or seller of . . . any product . . . has a First Amendment right to make claims that are false or deceptive. ***Nor do these cases announce a requirement that the three-part test under*** <u>***Central Hudson***</u> ***should be applied to causes of action based on a defendant's allegedly false or misleading advertising***. ***Rather, these cases address the Constitutional requirements that apply to regulations that limit or ban whole categories of speech***.

*Fed. Trade Comm'n v. Wellness Support Network, Inc.*, case no. 10-cv-04879, 2014 WL 644749, at *10 (N.D. Cal. Feb. 19, 2014) (emphasis added).

Nonetheless, assuming *arguendo*, that the test from *Central Hudson* applies here (which it does not), Plaintiffs' claims satisfy the test.   In the case of governmental statutes and regulations that limit or ban whole categories of commercial speech, whether the commercial speech is entitled to First Amendment protection is determined by application of the following three-part test that the Supreme Court set forth in *Central Hudson*:

> At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity *and not be misleading.* Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Central Hudson*, 447 U.S. at 566. (emphasis added).

Under the first prong of *Central Hudson*, Defendants' marketing is false and misleading and, consequently, does not merit any First Amendment protection as "there can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity." *Id.* at 563. "[T]he government may freely regulate commercial speech that concerns unlawful activity or is misleading." *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 623–24 (1995); *see also Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 367 (2002) ("Under [the *Central Hudson*] test we ask as a threshold matter whether the commercial speech concerns unlawful activity or is misleading. If so, then the speech is not protected by the First Amendment."). "[F]alse, deceptive, or misleading commercial speech may be banned." *Ibanez v. Florida Dep't of Bus. & Prof'l Regulation, Bd. of Accountancy*, 512 U.S. 136, 142 (1994); *Central Hudson*, 447 U.S. at 563 ("The government may ban forms of communication more likely to deceive the public than to inform it[.]").[6]

Plaintiffs believe discovery will support their allegations that the labeling and advertising statements at issue are false and misleading, and that at trial they will prove that to be the case. Thus, at trial, Plaintiffs will show that the representations at issue are "misleading" for purposes

---

[6] *Edenfield v. Fane*, 507 U.S. 761, 768 (1993) ("[O]ur cases make clear that the State may ban commercial expression that is fraudulent or deceptive without further justification[.]"); *In re R. M. J.*, 455 U.S. 191, 203 (1982) ("Misleading advertising may be prohibited entirely.").

of *Central Hudson* and are entitled to no First Amendment protection. At this juncture, however, as discussed above, it is sufficient that Plaintiffs have plausibly alleged the marketing and labeling at issue are false and misleading. *E.g.*, *Bruton*, 961 F. Supp. 2d at 1093. Because the representations at issue are allegedly "misleading" under the first step of the *Central Hudson* test, they are not entitled to First Amendment protection, and no further analysis is necessary.

Defendants argue that to show the representations at issue are "misleading" under the initial inquiry of the *Central Hudson* test, Plaintiffs must show the representations are "inherently misleading," *i.e.*, that Defendants' commercial speech is "incapable of being presented in a way that is not deceptive." (Def. Mem. at 22.) As stated above, *Central Hudson* applies where state action limits or bans whole categories of commercial speech. *Wellness Support*, 2014 WL 644749, at *10. Because broad-based state action may potentially apply to a variety of actors and in a variety of situations, when engaging in analysis of a statute or regulation under *Central Hudson*, it makes sense to consider whether such action may unnecessarily restrict speech by considering the various ways in which the speech may be presented. Plaintiffs' case, however, is not akin to a "facial" challenge to the entirety of a statute or regulation, but rather is analogous to, if anything, an "as applied" challenge. *See John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010). It defies logic to consider whether circumstances theoretically exist in which Defendants' speech may be presented in a non-deceptive manner because the only representations before the Court are Defendants' representations as Defendants have already presented them.[7]

---

[7] Defendants' reliance on an order entered after a full trial on the merits in *Bioganic Safety Brands, Inc. v. Ament*, 174 F. Supp. 2d 1168 (D. Colo. 2001) ("*Bioganic*"), is misplaced. (*See* Def. Mem. at 21–23, 28.) The order in *Bioganic* is inapposite because the court entered it after

C. **Even If the Court Finds Defendants' Representations to Be "Potentially Misleading," Plaintiffs' Claims Satisfy the Final Three Prongs of the *Central Hudson* Test**

Plaintiffs' claims also satisfy the final three prongs of *Central Hudson*: the governmental interest in restricting the potentially misleading use of "additive free," "natural," and "organic" (as well as the other representations at issue) in the labeling and advertising of Natural American Spirit cigarettes is substantial; the ruling in this case will directly advance the governmental interest asserted; and the ruling will not be more extensive than necessary to serve that interest.

### 1.   *The Government's interest implicated in this lawsuit is substantial*

Courts recognize that by protecting consumers from deceptive business practices, state consumer protection statutes serve a legitimate and substantial public interest. *See, e.g.*, *Virgin*, 2001 WL 34142402, at *7 ("§ 17200 reflects California's substantial governmental interest in discouraging false and misleading advertising, and, through its broad standing requirements, directly advances this interest."); *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. Abrams*, 684 F. Supp. 804, 806 (S.D.N.Y. 1988) ("There can also be little debate that a substantial governmental interest is served by the State's overall efforts at consumer protection.").

Defendants concede that an interest "Plaintiffs *could* have in imposing liability on Defendants…is an interest in preventing consumers from being deceived in any of the three ways Plaintiffs allege." (Def. Mem. at 27.) Defendants argue, however, that "Santa Fe already fully protects that interest" because it includes so-called disclaimers, and it labels and advertises its menthol cigarettes as containing menthol. Similarly, Defendants argue there is not a meaningful

---

engaging in fact finding on the merits of the plaintiff's claims during a trial. *Id.* at 1171. This case, by contrast, is at the pleading stage. Defendants cite *Snyder v. Phelps*, 562 U.S. 443 (2011), but that case is also off point. (*See* Def. Mem. at 20.) *Snyder* does not address commercial speech and does not even mention *Central Hudson*.

standard for the term "natural." (*Id.* at 28.) These arguments miss the mark, as they do not contest that the interest at issue is "substantial." Indeed, the interest in discouraging misleading marketing is widely recognized as substantial.  *Abrams*, 684 F. Supp. 806.

Defendants also incorrectly contend that Plaintiffs aim to "silenc[e] Santa Fe's speech altogether." (Def. Mem. 28.) While removal of the challenged representations from the labeling and advertising at issue is just one remedy Plaintiffs seek, they need not commit to any particular remedies at this stage of the case, and they have not done so. *See* Fed. R. Civ. P. 54(c) ("Every … final judgment [other than a default judgment] should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.").

Defendants do not, and cannot, contend that this Court is incapable of granting all appropriate relief in accordance with applicable law and with the facts asserted and proven at trial. Instead, Defendants incorrectly presume that the only remedy Plaintiffs are able to seek is suppressing Santa Fe's speech altogether. (Def. Mem. 29–30.) Defendants do not seriously address any form of monetary relief or explain why the Court will not be capable of awarding appropriate monetary relief in accordance with Plaintiffs' proof at trial and applicable law. *See* Fed. R. Civ. P. 54(c). In short, this Court is fully capable of awarding all proper relief, and Defendants' arguments to the contrary are without merit.

III.    **THE COURT SHOULD NOT DISMISS PLAINTIFFS' STATUTORY CLAIMS**

A.      **The Consent Order Does Not Provide Safe Harbor from State Unfair Practices Acts**

Defendants seek to shield themselves from liability by arguing that the Consent Order authorizes their conduct and serves as a safe harbor, failing to cite any post-*Altria II* opinions that support this specific proposition. Defendants cannot use the Consent Order as a shield for several reasons. First, the U.S. Supreme Court determined in *Altria II* that FTC consent orders only "enjoin enforcement" of the FTC Act and should not be construed as authorizing any specific conduct, thereby implicitly overruling a host of state court decisions that had previously held to the contrary. Second, compliance with the FTC Act does not equate to compliance with state consumer protection statutes, which often have heightened standards and provide additional remedies. Third, the Consent Order applies only to the relevant advertising and not to packaging. Fourth, the Consent Order does not apply to the use of the terms "natural" or "organic." Fifth, Defendants failed to comply with the requirements of the Consent Order, thereby abrogating any immunity. Finally, the Consent Order does not create safe harbors under the applicable state acts. For these reasons, Defendants remain liable for their conduct, which gives rise to Plaintiffs' affirmative misrepresentation and failure-to-disclose claims under applicable state law.

*1. Altria II Held that FTC Consent Orders Do Not Authorize Specific Conduct*

In *Altria II*, the U.S. Supreme Court made clear in reviewing a consent order that "[t]he FTC's failure to require petitioners to correct their allegedly misleading use of 'light' descriptors is not evidence to the contrary; agency nonenforcement of a federal statute is not the same as a policy of approval." *Altria II*, 555 U.S. at 89-90. The Consent Order here is similar: while it

requires a disclosure, it does not affirmatively approve of any particular conduct and thus cannot be read as a policy of approval.

Under the Consent Order, the FTC may not prohibit certain advertising by Defendants. *Altria II* confirms that this language simply enjoined the FTC from enforcing the FTC Act against Defendants so long as they complied with its terms. *Altria II*, 555 U.S. at 89, n.13. The proposition that the "FTC has specifically passed upon and authorized Santa Fe's use of the [descriptors]" or that the FTC "specifically authoriz[ed] Santa Fe to use the [descriptors]" is not viable after *Altria II*. (Def. Mem. at 7, 10-11.).[8]

A consent order is essentially a settlement agreement; it does not represent the same level of agency rulemaking that may be given deference in certain situations. "[T]he principal purpose of a consent order is to avoid the fact finding and adjudicatory process[.]" *Ford Motor Co. v. F. T. C.*, 547 F.2d 954, 956 (6th Cir. 1976).

### 2. *Compliance with the FTC Act Does Not Ensure Compliance with State Law*

When examining Plaintiffs' state claims under their respective state acts, it is important to recognize that the requirements of the FTC Act often serve as a minimum floor of acceptable conduct. The FTC's authority to administer the FTC Act is not "an obstacle to suits premised on overlapping state statutes or on common law." *United States v. Philip Morris Inc.*, 263 F. Supp.

---

[8] For the same reasons, Plaintiffs submit that Judge Vasquez's decision in *Mulford v. Altria Grp., Inc.*, 506 F. Supp. 2d 733 (D.N.M. 2007) ("*Mulford*") is no longer sound law, having been issued more than a year before *Altria II* and now standing in direct conflict with its holding. Furthermore, the Consent Order is "beyond the *Chevron* pale" and thus lacks the full force of law. *United States v. Mead Corp.*, 533 U.S. 218, 220 (2001) (churning out 10,000 rulings a year refutes any argument that they should be entitled to the "force of law."); *Delgado v. Capital Mgmt. Servs. LP*, case no. 4:12-cv-4057-SLD-JAG, 2013 WL 1194708, at *6 (C.D. Ill. Mar. 22, 2013), *aff'd sub nom. McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014) (concluding that *Chevron* deference should not be afforded to FTC enforcement efforts because they do not carry the force of law).

2d 72, 78 (D.D.C. 2003). Indeed, Congress has made it clear that it never intended the FTC to occupy the field of state unfair competition and consumer protection law. *Am. Fin. Servs. Assoc'n v. F.T.C.*, 767 F.2d 957, 990 (D.C. Cir. 1985).

States are free to enact their own overlapping or complementary laws with heightened standards or enhanced remedies. *Kellogg Co. v. Mattox*, 763 F. Supp. 1369, 1381 (N.D. Tex. 1991). "In fact, the FTC Act has long enjoyed a cooperative relationship with state laws. The FTC itself has encouraged state deceptive practices laws because problems in the marketplace go beyond the enforcement capabilities of the federal government." *Id.* Thus, even assuming *arguendo* that all of the challenged practices complied with the FTC Act, said compliance does not compel the conclusion that the same practices do not violate any other state or federal law.

Lastly, Defendants completely misrepresent the thrust of *Gilles v. Ford Motor Co.*, 24 F. Supp. 3d 1039 (D. Colo. 2014), in arguing that the FTC Act is not a "minimum floor." (Def. Mem. 14.) That is exactly what *Gilles* holds. Rather than finding that the plaintiff's proposed disclaimer imposed a different requirement and was preempted, the court determined that his claims under Colorado law *complemented* the federal regulation and ***were not*** preempted. *Id.* at 1046-48. The *Gilles* case provides strong support for the maintenance of the state claims here.

### 3. The Consent Order Governs Some of Defendants' Advertising But Not Its Packaging

Defendants cannot plausibly argue that the Consent Order provides any immunity for their false and deceptive packaging because the applicable section of the Consent Order only applies to advertising, not to packaging. Yet Plaintiffs' Complaint plainly challenged Defendants' ***labeling and packaging***. (*See* ¶¶ 7 ("packaging and advertising"), 12 ("labels and packaging"), 13–23 (same), 40, 70, and 76.)

25

Section I of the Consent Order addresses "the ***advertising***, promotion, offering for sale, sale, or distribution of cigarettes or any other tobacco product in or affecting commerce" and requires the disclaimer "***in advertisements***[.]" Consent Order, § I (emphasis added). The only provision to mention "advertisements and [] packaging" is that relating to non-tobacco herbal smoking products. Consent Order, § II. The principle of *expressio unius est exclusio alterius* compels the conclusion that the failure to include "packaging" in Section I excludes "packaging" from the ambit of the Consent Order. In addition, "advertisement" is a defined term in the Consent Order and includes statements, illustrations, or depictions that are "designed to effect a sale or create interest in the purchasing of any product" but does not cover the product or is packaging. Defendants confirm this interpretation, acknowledging they were not required to include the disclaimers on the labels. (Def. Mem. 9 (noting that Santa Fe has "gone *further* than the Consent Order requires[.]").)

### 4. The Consent Order Does Not Purport to Address the Use of "Natural" or "Organic"

The Consent Order does not address use of the terms "natural" and "organic" and therefore is irrelevant in considering Plaintiffs' failure-to-disclose claims associated with those terms. The Complaint challenges Defendants' representations and omissions relating to the use of both words. (*See e.g.* ¶¶ 4, 5, 6 ("organic"), 12-23, and 40 ("natural").)

The Consent Order requires the disclaimer in any advertisement that uses one of the following phrases to represent that a tobacco product has no additives or chemicals:

> no additives, no chemicals, additive-free, chemical-free, chemical-additive-free, 100% tobacco, [and] pure tobacco[.]

Consent Order, § I. "Natural" and "organic" are not included in this list of terms. Contrary to Defendants' argument, natural is not included as a "substantially similar term." (Def. Mem at 7.) Again applying the principle of *expressio unius est exclusio alterius*, Section I excludes those two key terms. This cannot be an oversight as the terms are literally contained in the names of the products and the term "natural" was specifically included in the original FTC investigation. (Def. RJN (ECF No. 71-1), Ex. 7.) The FTC's use of the "natural" descriptor during its investigation does not confirm that it considers it to be a substantially similar term to additive-free; it merely highlights its obvious omission and ultimate exclusion.

Including "natural" and "organic" in the Consent Order would have essentially mandated use of the disclaimer in any advertisement, a much broader restriction than a fair reading of the Consent Order permits. In addition, Paragraph 57 of the Complaint notes that the U.S. Department of Justice prevailed in a civil RICO case against Defendants enjoining them from using the term "natural" in 2006, further evidencing that the use of the term "natural" was outside of the scope of the Consent Order.[9] In sum, nothing in the Consent Order affirmatively (or even implicitly) authorizes the use of "natural" or "organic" in any advertisement or the product packaging.

---

[9] *United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 1, 938–39 (D.D.C. 2006) ("All Defendants, Covered Persons and Entities are permanently enjoined from conveying any express or implied health message or health descriptor for any cigarette brand either in the brand name or on any packaging, advertising or other promotional, informational or other material. Forbidden health descriptors include the words "low tar," "light," "ultra light," "mild," "***natural***," and any other words which reasonably could be expected to result in a consumer believing that smoking the cigarette brand using that descriptor may result in a lower risk of disease or be less hazardous to health than smoking other brands of cigarettes.") (emphasis added); *United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 1, 32 (D.D.C. 2006) (Defendants included RJR and Reynolds American).

### 5.     The NAS Packaging Does Not Comply With the Consent Order

Even if the Consent Order could be read broadly enough to include packaging, Defendants buried the disclaimer in small text to avoid the attention of consumers. This violates the express terms of the Consent Order, which required that the disclaimer be printed in the same size text as the Surgeon General's Warning. Consent Order, ¶7(c). Defendants agree. (Def. Mem. 8.) The product packaging confirms that Defendants failed to comply with this requirement:



Cropped image from RJN, Exh. 14 (Doc. 71-7, at 104).

Defendants do appear to have complied with this equal text size requirement on some of their websites, advertisements, and email marketing to class members. On the packaging, however, the disclaimer appears in the smallest font printed on the package – by Plaintiffs' estimation approximately a 4.5 point text size – while the Surgeon General Warning is much larger. In addition, Defendants did not bold the word "NOT" as required by Section I of the Consent Order.

Failure to comply with the terms of a consent order is fatal to any protection that compliance may have offered. Because Defendants have failed to comply with the requirements of the Consent Order, their argument that it provides any safe harbor fails as a matter of law.

### 6. *The FTC Consent Order Does Not Constitute a Safe Harbor Under the Applicable State Statutes*

The arguments above apply to each safe harbor contained in the state acts discussed below. As discussed herein, no state safe harbor doctrine or exemption applies here because: (1) the Consent Order enjoins FTC enforcement but does not permit or authorize any actual conduct (nor did the FTC ever approve any actual advertisement or package); (2) the FTC Act and Consent Order serve as a minimum floor that is complemented by other federal and state laws; (3) the Consent Order does not apply to product packaging; (4) the Consent Order does not encompass "natural" or "organic" claims; (5) Defendants failed to comply with the Consent Order's technical requirements; and (6) no safe harbor is created by federal law or the Consent Order because generally applicable state acts imposing a general duty not to deceive are not preempted or otherwise displaced. *See Altria II*, 555 U.S. at 83–84 (noting that only targeted regulations based on smoking and health are prohibited by federal law, not common-law fraud or general duty to disclose requirements).

### a. *California*

The Consent Order fails to provide a safe harbor under California law because no statute makes Defendants' actions lawful. Defendants have not cited a single law or regulation that permits its deceptive advertising or packaging.

In California, "[w]hen <u>specific legislation</u> provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor." *Cel-Tech Commc'ns, Inc. v. L. A.*

29

*Cellular Tel. Co.*, 973 P.2d 527, 541 (Cal. 1999) (emphasis added). The same safe harbor applies

to the CLRA. *Alvarez v. Chevron Corp.,* 656 F.3d 925, 933-34 (9th Cir. 2011).

 Here, Defendants do not (and cannot) argue that their conduct is permitted by the

Consent Order, but rather that it is not prohibited thereby. This is not enough under California

law, which provides that "[t]o forestall an action under the unfair competition law, another

provision must actually 'bar' the action or clearly permit the conduct." *Hauk v. JP Morgan*

*Chase Bank USA*, 552 F.3d 1114, 1122 (9th Cir. 2009). Indeed, as the California Supreme Court

explained in *Cel-Tech*:

> There is a difference between (1) not making an activity unlawful, and (2)
> making that activity lawful. … Acts that the Legislature has determined to be
> lawful may not form the basis for an action under the unfair competition law,
> but acts may, if otherwise unfair, be challenged under the unfair competition
> law even if the Legislature failed to proscribe them in some other provision.

*Cel-Tech*, 973 P.2d at 541-42. In urging dismissal of Plaintiffs' claims, Defendants rely

exclusively on the Consent Order, which plainly does not "permit" its conduct. As explained

previously, it does not affirmatively permit the use of the challenged terms on the product

packaging, does not permit the use of the terms "natural" and "organic," and does not permit the

use of the terms without the disclaimer printed in a text size equal to the Surgeon General

Warning.

 In addition, the Consent Order is not formal legislation or authorized rulemaking.

Defendants have failed to cite any authority that has extended California's safe harbor doctrine to

informal agency action like the Consent Order. And in fact, all of the authority is to the contrary.

*See Hofmann v. Fifth Generation, Inc.*, case no. 14-cv-2569 JM JLB, 2015 WL 5440330, at *7

(S.D. Cal. Mar. 18, 2015) (determining that label approval from the Alcohol and Tobacco Tax

and Trade Bureau was insufficient to invoke the safe harbor); *Ebner v. Fresh, Inc.,* 838 F.3d 958, 964 (9th Cir. 2016) (finding that safe harbor doctrine did not apply because the omission of statements was not expressly and affirmatively permitted by law). In sum, the Consent Order is insufficient to invoke the safe harbor.

### b.  Colorado

The Colorado Consumer Protection Act ("CCPA") does not apply to "[c]onduct in compliance with the orders or rules of, or a statute administered by, a federal, state, or local governmental agency." COLO. REV. STAT. ANN. § 6-1-106(a). "This section does not, however, grant a wholesale exemption to any industry or occupation that is subject to regulation." *Crowe v. Tull*, 126 P.3d 196, 207 (Colo. 2006). Indeed, "it should ordinarily be assumed that the CCPA applies to [any conduct] . . . . because of the strong and sweeping remedial purposes of the CCPA." *Showpiece Homes Corp. v. Assurance Co. of Am.*, 38 P.3d 47, 53 (Colo. 2001).

In *Gilles v. Ford Motor Co.*, the court determined that the CCPA savings clause did not apply to claims predicated on Ford's failure to disclose material information despite its alleged compliance with FTC guidance because federal law does not speak to the specific statements made by Ford, which formed the gravamen of plaintiff's claim. *Gilles*, 24 F. Supp. 3d at 1050. The same rationale applies here.

### c.  Florida

The safe harbor in the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) applies to "[a]n act or practice required or specifically permitted by federal or state law." FLA. STAT. ANN. § 501.212(1). It should not be applied here because Defendants' advertisements and packages were never approved by the FTC, FDA, or any other agency.

31

In *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1234 (S.D. Fla. 2007), the court determined that the safe harbor did not apply because there was no indication that the misleading advertisements were ever approved by the FDA. More recently, a court determined that the safe harbor did not apply to homeopathic products sold by Whole Foods because the FDA never specifically authorized the labels at issue in that case. *Herazo v. Whole Foods Mkt., Inc.*, case no. 14-cv-61909, 2015 WL 4514510, at *4 (S.D. Fla. July 24, 2015).

Neither of the cases Defendants cite in their brief compel a different result in this case because in each of those cases the relevant regulatory authority (the TTB and FDA) approved the actual label at issue. *See Pye v. Fifth Generation, Inc.*, case no. 14-cv-493 RH/CAS, 2015 WL 5634600, at *4 (N.D. Fla. Sept. 23, 2015) (granting safe harbor because "[t]he TTB *has expressly approved the Tito's label*") (emphasis added);[10] *Prohias v. AstraZeneca Pharm., L.P.*, 958 So. 2d 1054, 1056 (Fla. Dist. Ct. App. 2007) (applying the safe harbor because the product label had been expressly approved by the FDA "and this is '*specifically permitted*' by federal law") (emphasis added).

In stark contrast to *Pye* and *Prohias*, there is no evidence that the FTC or FDA ever approved any of Defendants' actual advertisements or packaging.[11] Indeed, the FDA's Warning Letter suggests that the opposite is true. Likewise, the Consent Order did not authorize any tobacco-related packaging or use of the words "natural" or "organic." Accordingly, neither case provides support for Defendants' position, and they have patently failed to meet their burden to

---

[10] It is also significant to note that numerous courts have rejected *Pye* and its reasoning. *See, e.g.*, *Singleton v. Fifth Generation, Inc.*, case no. 15-cv-474-BKS, 2016 WL 406295, at *7 (N.D.N.Y. Jan. 12, 2016) (collecting cases).

[11] The Consent Order resulted from what appears to be magazine advertisements from the 1990s. *See*, FTC Compl., ¶ 5 Exs. A-C, *available at* https://goo.gl/dJoQkm.

prove that the FDUPTA safe harbor applies. *Marty v. Anheuser-Busch Cos., LLC*, 43 F. Supp. 3d 1333, 1345 (S.D. Fla. 2014) (finding that Defendant failed to meet its burden that the specific statements at issue were permitted).

### d.    Illinois

In *Price v. Philip Morris, Inc.*, the Illinois Supreme Court held that:

> If the FTC has specifically authorized the use of the terms "lights" and "lowered tar and nicotine" by PMUSA in its *labeling and advertising*, PMUSA may not be held liable under the Consumer Fraud Act, even if the terms might be deemed false, deceptive, or misleading.

*Price*, 848 N.E.2d 1, 38 (Ill. 2005).[12] Contrary to the Consent Order here, the 1995 American Tobacco consent order at issue in *Price* expressly addressed the content of American Tobacco's "labeling." *In re Am. Tobacco Co.*, 119 F.T.C. 3, 10-11 (1995), § I (…in connection with the manufacturing, *labeling*, advertising, promotion, offering for sale, sale or distribution of any cigarette in or affecting commerce…), § II (…in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale or distribution of any cigarette in or affecting commerce…). No safe harbor applies to the product packaging failure-to-disclose claims because the Consent Order only addresses advertising and is silent as to tobacco packaging. *Price*, 848 N.E.2d at 36 ("Conduct is not specifically authorized merely because it has not been specifically prohibited."); *Fed. Ins. Co. v. Binney & Smith, Inc.*, 913 N.E.2d 43 (Ill. App. Ct. 2009) (same).

Notably, in *Altria II*, the U.S. Supreme Court rejected arguments about the FTC's *American Brands* consent order that the *Price* court accepted. "In short, the Supreme Court's

---

[12] In light of the U.S. Supreme Court's decision in *Altria II*, the Illinois Supreme Court has cast serious doubt on the 2005 *Price* decision, rejecting an attempt to vacate the final judgment on procedural grounds. *Price v. Philip Morris, Inc.*, 43 N.E.3d 53, 71 (2015), *cert. denied*, 136 S. Ct. 2485 (2016) (declining to vacate the decision *sua sponte*, but offering no opinion on the merits of a motion to recall the mandate from *Price*).

decision in *Altria II* reads the FTC's actions in a way that directly contradicts the interpretation on which the Illinois Supreme Court relied in *Price* to conclude that the agency had approved the use of 'light' or similar terms." *Cleary v. Philip Morris USA, Inc.*, 683 F. Supp. 2d 730, 739-40 (N.D. Ill. 2010). As a result, the safe harbor created by *Price* was based on a faulty understanding of FTC consent orders. Rather than affirmatively permitting specific conduct, the consent order "only enjoined conduct." *Altria II*, 555 U.S. at 89, n.13. In addition to failing to address packaging, Defendants cannot use the Consent Order to invoke safe harbor under Illinois law because it only enjoins conduct and does not specifically authorize Defendants' practices.

### e.    Massachusetts

Massachusetts' statute exempts "transactions or actions otherwise permitted" by a regulatory board or officer. G.L. c. 93A, § 3. Massachusetts's highest appellate court has confirmed that this exemption does not apply to the Consent Order as a result of the U.S. Supreme Court's decision in *Altria II*:

> The defendants' argument that the exemption of G.L. c. 93A, § 3, applies to them rests on the premise that, through consent decrees with other cigarette manufacturers and its failure to take action against cigarette manufacturers that put descriptors on their packages, the FTC "condoned," "authorized," and "permitted" the use of the descriptors "lights" and "lowered tar." The *Good* [*v. Altria*] decision expressly rejected these arguments.

*Aspinall v. Philip Morris, Inc.*, 902 N.E.2d 421, 424 (Mass. 2009). No exemption applies here for the same reasons.

34

### f.    Michigan

The logic in *Flanagan v. Altria Grp., Inc.*, case no. 05-cv-71697, 2005 WL 2769010, at

*7 (E.D. Mich. Oct. 25, 2005), relied upon by the Defendants was criticized and expressly

rejected by the First Circuit in *Altria I*, 501 F.3d at 56 ("In our view, these decisions overlook the

subtleties in the Commission's approach to tar and nicotine claims we have already discussed.").

Similarly, the FTC and FDA never specifically authorized any of the packaging or advertising at

issue here (or any packaging and advertising since 2000). *Peter v. Stryker Orthopaedics, Inc.*,

581 F. Supp. 2d 813, 816 (E.D. Mich. 2008) (applying exemption because FDA specifically

authorized the sale of the prosthetic knee at issue. Hence, no exemption applies.

### g.    New Jersey

New Jersey's judicially created safe harbor is extremely narrow, applying only where a

"direct and unavoidable conflict exists" between enforcement of the New Jersey Consumer

Fraud Act ("CFA") and another regulatory scheme. *Lemelledo v. Beneficial Mgmt. Corp. of Am.*,

696 A.2d 546, 554 (N.J. 1997). That is clearly not the case here. If anything, application of the

CFA is contemplated, as demonstrated in *Lemelledo*:

> We are loathe to undermine the CFA's enforcement structure, which specifically
> contemplates cumulative remedies and private attorneys general, by carving out
> exemptions for each allegedly fraudulent practice that may concomitantly be
> regulated by another source of law. The presumption that the CFA applies to
> covered practices, even in the face of other existing sources of regulation,
> preserves the Legislature's determination to effect a broad delegation of
> enforcement authority to combat consumer fraud.

*Id.* "Because no statutory or regulatory regime—akin to those governing public utilities or

regulated learned professions—purports to govern the sale of used cars to the exclusion of all

others, there is no exception to the CFA's reach that is applicable here." *Real v. Radir Wheels, Inc.*, 198 N.J. 511, 526, 969 A.2d 1069, 1079 (2009).

### h.     New Mexico

Due to intervening changes in law, this Court may (and should) avoid the holding rendered in *Mulford v. Altria Grp., Inc.*, 506 F. Supp. 2d 733 (D.N.M. 2007). Both the U.S. Supreme Court (*Altria II*) and the New Mexico Supreme Court have issued decisions that effectively overrule *Mulford* and reject the notion that an FTC order can constitute a safe harbor under state consumer protection statutes. In *Altria II*, the U.S. Supreme Court affirmed its holding in *Cipollone*, concluding that federal tobacco labeling laws and FTC orders do not preempt, nor prevent a jury from hearing, state deceptive practices claims predicated on a general duty not to deceive consumers. *Altria II*, 555 U.S. at 70 (2008). Three years after the *Mulford* decision, the New Mexico Supreme Court determined that the exemption in the UPA was a very narrow one, requiring express permission of the actual activity at issue, including the "particular manner of use" at issue. *Truong v. Allstate Ins. Co.*, 227 P.3d 73, 88 (N.M. 2010). As discussed above, the Consent Order does not specifically authorize the deceptive conduct, it merely enjoins enforcement. In addition, a fair reading of *Truong* suggests that the New Mexico Supreme Court, if it allowed any agency action to constitute permission, would first determine if the FTC or FDA ever actually approved of the actual packaging and advertisements at issue. Defendants, bearing the burden of invoking the safe harbor, have not demonstrated that the FTC or FDA ever did so.

### i.     New York

The New York state and federal courts have consistently confirmed that "[c]ompliance with regulations does not immunize misconduct outside the regulatory scope." *Blue Cross &*

*Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 133 F. Supp. 2d 162, 175 (E.D.N.Y. 2001). Similarly, regardless of one's compliance with a federal statute, "untruthful utterances, commercial or otherwise, are ***never*** entitled to such protection" of sections 349(d) or 350 of New York's General Business Law. *Small v. Lorillard Tobacco Co.*, 176 Misc. 2d 413, 423, 672 N.Y.S.2d 601, 609 (Sup. Ct. 1997) (emphasis added), *rev'd*, 677 N.Y.S.2d 515 (App. Div. 1998).

In sum, the Consent Order only restricts the FTC's enforcement and does not preclude claims arising under New York state law. As discussed above, the FTC never approved of the tobacco packing at issue and the FDA has deemed it a violation of the TCA and thus the FTC Act. Thus, there can be no argument that Defendants' packaging complies with the FTC's guidance, preventing any safe harbor protection. *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, case no. 12-md-2413 RRM 2013 WL 4647512, at *22 (E.D.N.Y. Aug. 29, 2013).

### j.      North Carolina

There is no doubt that North Carolina's Deceptive Trade Practices Act applies to the general duty-to-disclose claims of which *Altria II* expressly allowed to proceed. *See Altria II*, 555 U.S. at 83-84; *Kron Med. Corp. v. Collier Cobb & Assocs.*, 420 S.E.2d 192, 196 (N.C. Ct. App. 1992) *disc. review denied*, 424 S.E.2d 910 (N.C. 1992) (failure to disclose information may be tantamount to misrepresentation and thus constitute an unfair or deceptive trade practice); *Kure Corp. v. Peterson*, case no. 16-cv-13776, 2017 WL 61969, at *5 (N.C. Super. Jan. 5, 2017) (affirming application to securities transaction based on general breach of fiduciary duty despite exemption for securities transactions).

*Altria II* also confirms that because no federal regulation or order specifically authorizes the challenged conduct, the field of cigarette advertising and packaging cannot be said to be

"pervasively" regulated because there no regulations "existing in or spreading through every part of [of the field]." In turn, no exemption under North Carolina state law applies here.

### k.    Ohio

Ohio's Consumer Sales Practices Act ("CSPA") provides an affirmative defense when a supplier can show "that a violation was an act or practice required or specifically permitted by federal trade commission orders, trade regulation rules and guides[.]" OHIO REV. CODE ANN. § 1345.11(B); *Marrone v. Philip Morris USA, Inc.*, 850 N.E.2d 31, 38 (Ohio 2006). The CSPA should be broadly construed to effect its purpose of protecting unwary consumers. *Elder v. Fischer*, 717 N.E.2d 730, 737-38 (Ohio Ct. App. 1998). Despite acknowledging that "the cigarette industry is highly regulated by the federal government," the Ohio Supreme Court has not interpreted the CSPA to exempt activities by tobacco companies regulated by the federal government or the FTC. *Marrone*, 850 N.E.2d at 38. Thus, no exemption applies here.

### l.    Washington

Washington's Consumer Protection Act ("CPA") does not apply to "actions or transactions permitted by any other regulatory body or officer acting under statutory authority of this state or the United States[.]" WASH. REV. CODE ANN. § 19.86.170. As detailed above, the U.S. Supreme Court has made it clear that the Consent Order only enjoins enforcement and does not "permit" the conduct challenged here.

Only actions that are "specifically permitted" by rules or regulation are exempt, even if that industry is closely regulated by a regulatory body. *Singleton v. Naegeli Reporting Corp.*, 175 P.3d 594 (Wash. Ct. App. 2008); *Edmonds v. John L. Scott Real Estate, Inc.*, 942 P.2d 1072

(Wash. Ct. App. 1997) (same). Neither the FTC nor the FDA, nor any federal rule or regulation, ever specifically permitted the Defendants' actual advertising here. Thus, no exemption applies.

**B.    Each of Plaintiffs' Statutory Claims Survive Because Plaintiffs Have More Than Adequately Alleged that Defendants Made Statements Capable of Misleading a Reasonable Consumer**

Defendants contend that 14 of Plaintiffs' state statutory claims are subject to analysis under the "reasonable consumer" test; *i.e.*, whether Defendants' practices, representations, or omissions are likely to mislead a reasonable consumer acting reasonably under the circumstances. (*See* Def. Mem. 39-40.) While, as seen below, this is generally true, it is important to note from the outset that the Court's reasonableness inquiry should be informed by the following facts: (1) "a reasonable consumer may be unwary or trusting," and he "need not be 'exceptionally acute,'" "sophisticated,'" "wary," or "suspicious of advertising claims;" (2) each of the consumer protection statutes at issue here was enacted for the remedial purpose of protecting consumers and must be broadly interpreted to achieve that goal; (3) each of the statutes prohibit not only the use of representations that are literally false, but also representations that, while technically true, nevertheless have the capacity to deceive or mislead the consuming public; and (4) the courts in virtually all of the subject jurisdictions have recognized that whether a particular practice or representation has the requisite capacity to deceive or mislead is a question of fact not appropriate for determination on a motion to dismiss:

- **California Consumers Legal Remedy Act** (California Count I, CAC¶¶ 135-49); **California False Advertising Law** (California Count II, ¶¶ 150-59)**; California Unfair Competition Law** (California Count III, ¶¶160-69): *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008) (holding that determining "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer," and explaining that it is a "rare situation" indeed "in which granting a motion to dismiss is appropriate")

- **Florida Deceptive and Unfair Trade Practices Act** (Florida Count I, ¶¶ 194-208): FLA. STAT. ANN. § 501.202(2) (FDUTPA was enacted to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce," and it must therefore be "construed liberally" to effectuate that purpose); *Zlotnick v. Premier Sales Group*, 480 F.3d 1281, 1284 (11th Cir. 2007) (to prevail on a claim under the FDUTPA the plaintiff does not have to prove that the representation was actually false, but rather merely that it "is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment"); *Foster v. Chattem, Inc.*, case no. 14-cv-346 GJK, 2014 WL 3687129, at *3 (M.D. Fla. July 23, 2014) (whether a particular representation is likely to mislead the reasonable consumer "is a factual issue outside the scope of a motion to dismiss").

- **Illinois Consumer Fraud & Deceptive Business Practices Act** (Illinois Count I, ¶¶ 216-31) *Trujillo v. Apple Computer, Inc.*, 581 F. Supp. 2d 935, 938 (N.D. Ill. 2008) (under the Act "a statement or omission is deceptive if it creates the likelihood of deception or has the capacity to deceive"); *Biffar v. Pinnacle Foods Grp., LLC*, case no. 16-cv-0873-DRH, 2016 WL 7429130, at *8 (S.D. Ill. Dec. 26, 2016) (holding that he question of whether a reasonable consumer would be misled by a particular practice or representation "is a question of fact that cannot be resolved on a motion to dismiss").

- **Massachusetts General Laws, Chapter 93A** (Massachusetts Count I, ¶¶ 249-58): *Sladen v. Passaro*, 1994 Mass. App. Div. 29, 30 (1994) (the defendant's "conduct will be a violation of c. 93A even if it is not actually false, as long as it is likely to mislead a plaintiff acting reasonably under the circumstances"); *Santosuosso v. Gibbs Ford, Inc.*, 1992 Mass. App. Div. 167, 170 (1992) ("Whether the conduct complained of constituted an unfair or deceptive act is generally a question of fact for the trial court.").

- **Michigan Consumer Protection Act** (Michigan Count I, ¶¶ 266-67): *Dix v. American Bankers Life Assurance Co.*, 415 N.W.2d 206, 209 (Mich. 1987) (the Michigan Consumer Protection Act must" be construed liberally to broaden the consumers' remedy, especially in situations involving consumer frauds affecting a large number of persons"); MCLS § 445.903(1) prohibits "[c]ausing a probability of confusion or misunderstanding" and "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer. . .").

- **New Jersey Consumer Fraud Act** (New Jersey Count I, ¶¶ 289-97): *Cozier v. Johnson & Johnson Consumer Cos.*, 901 F. Supp. 2d 494, 505 (D.N.J. 2012) (the Act

40

"is designed to address 'sharp practices…whereby the consumer could be victimized by being lured into a purchase through fraudulent, deceptive or other similar kind of selling or advertising practices'"); *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 461 (N.J. 1994) ("the Act should be construed liberally in favor of consumers"); *Union Ink Co. v. AT&T Corp.*, 801 A.2d 361, 379 (N.J. App. Div. 2002) (under the CFA "[e]ven if an advertisement is literally true, it may be actionable if 'the overall impression [it] create[s] . . . is misleading and deceptive to an ordinary reader'"); *Stewart v. Smart Balance, Inc.*, 2012 WL 4168584, at *9 (D.N.J. June 25, 2012) ("Whether the labeling as a whole is misleading to an average consumer is a question of fact").

- **New Mexico Unfair Practices Act** (New Mexico Count I, ¶¶ 315-27): *State ex rel. Stratton v. Gurley Motor Co.*, 737 P.2d 1180, 1185 (N.M. Ct. App. 1987) ("Because the Unfair Practices Act constitutes remedial legislation, we interpret the provisions of this Act liberally to facilitate and accomplish its purposes and intent."); *New Mexico ex. Rel. Balderas v. Preferred Care, Inc.*, 158 F. Supp. 3d 1226, 1234 (D.N.M. 2015) ("New Mexico defines as an 'unfair or deceptive trade practice' any 'false or misleading statement' that . . . 'may tend to or does deceive or mislead any person.'"); *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 708 F. Supp. 2d 1209, 1241 (D.N.M. 2010) (holding that "it is generally a question of fact whether an advertisement is literally false").

- **New York General Business Law (GBL) §§ 349 and 350** (New York Counts I and II, ¶¶ 543-53 and 354-65, respectively): *Oxman v. Amoroso*, 659 N.Y.S.2d 963, 968 (N.Y. City Ct. 1997) (New York General Business Law section 349 "is a broad, remedial statute," which is "directed towards giving consumers a powerful remedy"); *Boule v. Hutton*, 328 F.3d 84, 86 (2d Cir. 2003) (to prevail under Section 349, the plaintiff needs only provide "proof of a deceptive practice," and "not proof that a statement was false"); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995) (New York General Business Law section 350 is founded on the overarching belief that "[c]onsumers have the right to an honest market place where trust prevails between buyer and seller"); *Mennen Co. v. Gillette Co.*, 565 F. Supp. 648, 655 (S.D.N.Y. 1983) (explaining that "intention to deceive need not be shown" in claims asserting a violation of section 350); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013) (holding that "whether a particular act or practice is deceptive is usually a question of fact").

- **North Carolina General Statutes § 75-1.1** (North Carolina Count I, ¶¶ 374-86): *Skinner v. E.F. Hutton & Co.*, 333 S.E.2d 236, 241 (N.C. 1985) (the purpose of section 75-1.1 is "to protect the consuming public"); *Overstreet v. Brookland, Inc.*, 279 S.E.2d 1, 7 (N.C. Ct. App. 1981) (to prevail on a claim under section 75-1.1 "it is

not necessary for the plaintiff to show fraud, bad faith, deliberate or knowing acts of deception, or actual deception"; rather, it is sufficient if he simply "show[s] that the acts complained of possessed the tendency or capacity to mislead, or created the likelihood of deception").

- **Ohio Consumer Sales Practices Act** (Ohio Count I, ¶¶ 395-411): *Lump v. Best Door & Window, Inc.*, case nos. 8-01-09 and 8-01-10, 2002 WL 462863, at *4 (Ohio Ct. App. Mar. 27, 2002) (that the relevant question under the Sales Practices Act is simply whether the subject representation "is likely to mislead consumers"); *Burton v. Elsea, Inc.*, No. 97CA2556, 1999 WL 1285874, at *8 (Ohio Ct. App. Dec. 27, 1999) ("The question of whether Elsea committed deceptive sales practices is also a question of fact.").

- **Washington Consumer Protection Act** (Washington Count I, ¶¶ 427-42): *Testo v. Russ Dunmire Oldsmobile*, 554 P.2d 349, 357-58 (Wash. Ct. App. 1976) (explaining: (a) that the "declared purpose" of the Washington CPA is "to protect the public and foster fair and honest competition, and to that end must be liberally construed;" and (b) if the consumer "can show that the defendant's actions possessed a tendency or capacity to mislead, an unfair or deceptive act is proved"); *Walker v. Quality Loan Serv. Corp. of Wash.*, 308 P.3d 716, 727 (Wash Ct. App. 2013) ("Whether an unfair act has the capacity to deceive a substantial portion of the public is a question of fact").

   1. ***Reasonable consumers could be deceived by Defendants' use of the terms "Natural" and "Additive Free."***

      a. ***Consumers are not required to look beyond misleading representations on the front of the cigarette package to discover the truth from a small print disclaimer on the side.***

Plaintiffs allege in their Complaint that "Defendants sell Natural American Spirit cigarettes in differently colored packs, all of which Defendant uniformly and prominently label and advertise with representations that the cigarettes are 'Natural' and '100% Additive Free.'" (¶¶ 40, 42-45.) By using these terms on the packs and in their advertising materials, Defendants have "successfully convey[ed] to reasonable consumers that Natural American Spirits cigarettes are safer and healthier to smoke than other competing cigarettes. (¶¶ 4, 49-54, 57-58.)

42

Any assertion by Defendants (explicit or implicit) that their cigarettes are safer or less harmful than any other brand is untrue. Indeed, Plaintiffs have alleged that Defendants' cigarettes actually "have substantially higher levels of certain carcinogens and heavy metals," and "also release exceedingly high levels of 'free base' nicotine, which makes them at least as addictive as other cigarettes." (¶¶ 9, 59-66.) Nevertheless, Defendants disseminate the foregoing falsehoods through a "pervasive nationwide marketing and advertising campaign" that "perpetuates the false impression that Natural American Spirit is a safer, healthier cigarette." (¶ 5.)

Defendants seek to avoid liability for their deceptions, relying primarily, if not entirely, on the presence of a disclaimer that "appears on every package and advertisement." (Def. Mem. 43.) This disclaimer states: "No Additives in our tobacco does NOT mean a safer cigarette." (*Id*. at 8, 43.) Noticeably absent from Defendants' brief, however, is any acknowledgment of *where* the disclaimer appears on its cigarette packs. This is not surprising given Defendants' relegation of the disclaimer to a distant and inconspicuous edge of a side panel, where it is presented in miniscule typeface and concealed by the proliferation of other more prominently displayed words and symbols.

As Defendants note in their brief, "[t]he FTC Consent Order requires the foregoing disclosure to be displayed 'clearly and prominently,'" (Def. Mem. 43, quoting Consent Order at § 7), which means that it must be placed "[i]n a clear and prominent location but not immediately next to other written or textual matter or any rectangular designs, elements, or similar geometric forms . . ." Consent Order at § 7(d). As noted above, the Consent Order also mandates that the

43

disclosure be printed in "the same type style and type size" as the Surgeon General's Warning. *Id.* at ¶7(c). Defendants' cigarette packs look like this:[13]



<---- Defendants' Disclaimer

Placed in a "clear and prominent location"?          **No**

Printed "in the same type style and type size"
as the Surgeon General's warning?                     **No**

Located "immediately next to other written
or textual matter or any rectangular designs . . ."?   **Yes**

Thus, even if the Consent Order applies to cigarette packages (as differentiated from tobacco product "advertisements") which Plaintiffs do not concede, Defendants violated it.

By hiding the disclaimer Defendants doomed their contention that reasonable consumers could not be misled by their use of the terms "Natural" and "Additive-Free," as courts across the country have recognized in denying similar motions on substantively indistinguishable facts.

The infirmity of Defendants' position is conclusively confirmed by *Williams v. Gerber Products Co.*, 522 F.3d 934 (9th Cir. 2008), a case upon which they rely in their brief. (*See* Def. Mem. 40, 44.) In *Williams*, the plaintiff sued Gerber alleging that it violated California consumer protection statutes by deceptively marketing its Fruit Juice Snacks. Specifically, the plaintiffs

---

[13] Defendants included this display as Exhibit 9 to its first Motion for Judicial Notice (ECF No. 71-1), and refer to it again in their instant submission. (*See* Def. Mem. 43 n.11.)

took issue with Gerber's decision to place the words "Fruit Juice" near images of various fruits on the product label, contending that this juxtaposition "was deceptive because the product contained no fruit juice from any of the fruits pictured on the packaging and because the only juice contained in the product was white grape juice from concentrate." *Williams*, 552 F.3d at 936. The plaintiffs also challenged: (1) a statement on the packaging touting the product as being made "'with real fruit juice and other all natural ingredients,' even though the two most prominent ingredients were corn syrup and sugar;" and (2) a statement on the packaging describing the product as "one of a variety of nutritious Gerber Graduates foods and snacks." *Id.*

Gerber filed a motion to dismiss, which the district court granted, concluding that its "statements were not likely to deceive a reasonable consumer, particularly given that the ingredient list was printed on the side of the box." *Id.* at 937. The Ninth Circuit reversed, recognizing first "***that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer.***" *Id.* at 938 (emphasis added). The court went on to conclude that "there are a number of features of the packaging Gerber used for its Fruit Juice Snack products which could likely deceive a reasonable consumer" – specifically those recounted above – and to reject Gerber's argument that the presence of an ingredient list on the side of the package obviated any confusion. *Id.* at 939. The Ninth Circuit explained:

> ***We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box***. The ingredient list on the side of the box appears to comply with FDA regulations and certainly serve some purpose. We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misrepresentations and provide a shield for liability for the deception. Instead, reasonable consumers expect that

45

the ingredient list contains more detailed information about the product that confirms other representations on the packaging.

*Id*. at 939-40 (emphasis added).

Likewise in this case, reasonable consumers should not be expected, and are not legally required, to look beyond the assurances Defendants prominently display on the front of each pack of their cigarettes and in every advertisement, *i.e.*, that they are "Natural" and "100% Additive Free." Moreover, those reasonable consumers should be able to expect that the information on the side of the package simply provides more detailed confirmation of the representations on the front. Finally, while the FTC may have blessed the language of Defendants' disclaimer, it did not do so with the intent of allowing them to mislead consumers and then rely on a cleverly hidden message "to correct those misrepresentations and provide a shield for liability for the deception." *Williams*, 552 F.3d at 939.

Also instructive is *Ackerman v. Coca-Cola Co.*, a case involving claims of deceptive acts and practices in violation of New York General Business Law sections 349 and 350. *Ackerman*, case no. 09-cv-0395, 2010 WL 2925955 (E.D.N.Y. July 21, 2010). In that case, the plaintiffs alleged that marketing of the beverage "vitaminwater" was misleading because it "bombard[s] consumers with a message of purported benefits, and draw[s] consumer attention away from the significant amount of sugar in the product." *Id*. at *6.

Coca-Cola filed a motion to dismiss, asserting the functional equivalent of the argument Defendants reiterate here, *i.e.*, that no reasonable consumer could have been misled because "the FDA-mandated label on each bottle bears the true facts about the amount of sugar per serving." *Ackerman*, 2010 WL 2925955 at *7. The court denied the motion, noting first that it was

46

required to consider "the marketing of vitaminwater as a whole,"[14] which it found to be "potentially misleading" because "the collective effect of the challenged statements was to mislead a reasonable consumer into believing that vitaminwater is either composed solely of vitamins and water, or that it is a beneficial source of nutrients rather than a 'food of little or no nutritional value [which has been fortified] for the sole purpose of claiming or implying that it is 'healthy.'"" *Id*. at \*9 (citation omitted).

Next, the court rejected the defendants' truth-in-labeling defense, explaining that "[t]he fact that the actual sugar content of vitaminwater was accurately stated in an FDA-mandated label in the product ***does not eliminate the possibility that reasonable consumers may be misled***." *Ackerman*, 2010 WL 2925955 at \*16 (emphasis added); *see also Delgado v. Ocwen Loan Servicing, LLC*, case no. 13-cv-4427, 2014 WL 4773991, at \*8 (E.D.N.Y. Sept. 23, 2014) (holding that "the mere presence of an accurate disclaimer does not necessarily cure other potentially misleading statements or representations on a product or advertisement"). Drawing guidance from the Ninth Circuit's decision in *Williams*, the court agreed that "[r]easonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Ackerman*, 2010 WL 2925955 at \*16 (quoting *Williams*, 552 F.3d at 939). It went on to conclude that "even reasonable consumers may not read the nutritional label prior to every purchase of a new product," and that therefore "the presence of a nutritional panel, though relevant, ***does not as a matter of law extinguish the possibility that reasonable consumers could be misled by***

---

[14] *See also Penrod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 250 (4th Cir. 2011) (explaining that "[c]hallenged statements are not to be read in isolation, but must be perused as the average reader would against the whole apparent scope and intent of the writing").

***vitaminwater's labeling and marketing***." *Ackerman*, 2010 WL 2925955 at *16 (emphasis added).

Numerous other courts have reached the same conclusion. *See, e.g.*, *Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1105 (N.D. Cal. 2012) ("***[The] ingredients list cannot be used to correct the message that reasonable consumers may take from the rest of the packaging[.]***") (emphasis added); *Wilson v. Frito Lay N. Am., Inc.*, case no. 12-cv-1586 SC, 2013 WL 1320468, at * 12 (N.D. Cal. Apr. 1, 2013) ("[T]he Court finds that Plaintiffs have adequately pled that a reasonable consumer could interpret a bag of chips claiming to have been 'Made with ALL NATURAL Ingredients' to consist exclusively of natural ingredients, contrary to the reality described in the nutrition box."); *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, case no. 13–cv–3073 NSR, 2014 WL 1285137, at *5 (S.D.N.Y. Mar. 27, 2014) (holding that where defendant's trademark and "advertising exclusively tout[ed]" the natural ingredients in its "Active Naturals" personal care products, the disclosure of synthetic ingredients on the back label did not as a matter of law prevent a reasonable consumer from being misled); *Lonner v. Simon Prop. Grp., Inc.*, 57 A.D.3d 100 (N.Y. App. Div. 2008) (finding plaintiff stated a [New York General Business Law] section 349 claim based on "the inadequate font size in which the [gift card's] dormancy fee provision was printed"); *Jou v. Kimberly Clark Corp.*, case no. 13-cv-03075 JSC, 2013 WL 6491158, at *1, *5 (N.D. Cal. Dec. 10, 2013) *("Defendant cannot rely on disclosures on the back or side panels of the packaging to contend that any misrepresentation on the front of the packaging is excused*." (emphasis added)).

In this case too, the marketing of Defendants' cigarettes "as a whole" is designed to convince consumers that they are safer and/or healthier than other brands. The terms "Natural"

and "Additive-Free" connote such properties, and studies have confirmed that smokers "frequently concluded that 'natural' cigarettes must be healthier or safer than cigarettes containing chemicals." (¶ 5.) Indeed, as researchers at the Schroeder Institute for Tobacco Research and Policy Studies noted in a recent study, reasonable consumers believe that cigarettes marketed and sold in packages with descriptors like "natural," "organic," and "additive free" – all of which Defendants use pervasively – "*are significantly more appealing, healthier or less harmful* than packages without those descriptors." (¶ 52 (emphasis added).) The FDA also determined that:

> [The] labeling for Natural American Spirit cigarettes, which uses the descriptors "Natural" and "Additive Free," *represents explicitly and/or implicitly* that the products or their smoke do not contain or are free of a substance and/or *that the products represent a lower risk of tobacco-related disease or are less harmful than one or more other commercially marketed tobacco products.*

(¶ 58 (emphasis added) (citation omitted).)

Given the foregoing alleged facts, which the Court must accept as true for purposes here, it is evident that Defendants' disclaimer "does not as a matter of law extinguish the possibility that reasonable consumers could be misled by [Defendants'] labeling and marketing." *Ackerman*, 2010 WL 2925955 at *16. Accordingly, Defendants' motion should be denied.

### b.   *Defendants' Cases Do Not Support Their Position*

Defendants cite a number of cases in their brief, each of which stands for the unremarkable proposition that the prominent presence of clearly worded disclaimer in close proximity to the representations alleged to be misleading may (but does not necessarily) dispel potential confusion. In addition to *Williams* (discussed *supra*), Defendants rely heavily on *Trujillo v. Apple Computer, Inc.*, 581 F. Supp. 2d 935 (N.D. Ill. 2008), citing it for the

proposition that "[i]f other information disclosed or available to the consumer dispels any tendency to deceive, there is no deception." (Def. Mem. at 43 (quoting *Trujillo*).) While Plaintiffs take no issue with the foregoing general proposition, this is patently ***not*** such a case here, as even a cursory review of the *Trujillo* decision conclusively confirms.

In *Trujillo*, the plaintiff alleged that by requiring purchasers of its iPhones to later ship them back to an Apple service provider for battery replacement, and to incur a corresponding $79 service fee, Apple was imposing a de facto annual maintenance or service charge on its customers. *Id.* at 936. Plaintiff contended that Apple "hid the particulars of [its] battery replacement program until after the device was launched for sale to the public, thereby misleading consumers about the 'true nature of the iPhone and its actual expense,'" in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. *Id.*

Apple filed a motion for summary judgment, which the trial court granted. In so doing, the court explained that prominently affixed to the front of the box in which each consumer received his or her iPhone was a "feature label," which informed the consumer "that the iPhone '[b]attery has limited recharge cycles and may eventually need to be replaced ***by Apple service provider***.'" *Id.* at 937 (emphasis added). In stark contrast to Plaintiffs here, the *Trujillo* plaintiffs ***did not*** argue that Apple's disclaimer "was hidden or obscured," or that it otherwise did not apply, and they ***conceded*** that the information set forth in the "feature label" should be "taken into account in determining whether he can establish the elements of his claim." *Id.* at 938. Given the conspicuous placement of the "feature label" – as opposed to Defendants' hidden so-called disclaimer in this case (which does not even apply to many of the challenged misleading representations such as "Natural") – and in light of plaintiff's concession in *Trujillo* that iPhone

50

buyers had indeed been "made aware of the limited life of the iPhone battery and the need for an authorized service provider to replace it" – concessions Plaintiffs have not made here – the court concluded (not surprisingly) that "[u]nder the circumstances, no reasonable jury could find that deception occurred." *Id.* at 938.

The Ninth Circuit employed similar reasoning in *Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995), where the plaintiff sued under the California consumer protection statutes alleging that Time had tricked him into believing he won a million-dollar prize when it sent him a promotional mailing for Sports Illustrated. Like the *Trujillo* court, the *Freeman* court focused heavily, if not entirely, on the placement and prominence of the disclaimer, explaining: (a) that "[t]he promotions ***expressly and repeatedly*** state the conditions which must be met in order to win; (b) that "***[n]one of the qualifying language is hidden or unreasonably small***;" and (c) that "[t]he qualifying language appears ***immediately next to the representations it qualifies*** and no reasonable reader could ignore it." *Id.* at 289 (emphasis added). As set forth in detail above, Defendants disclaimer here is not repeated, it does not appear "immediately next to the representations it qualifies," and it is indeed "hidden or unreasonably small."

Each of the other cases Defendants cite is to the same effect, *i.e.*, that the prominent presence of clearly worded language made it impossible for a reasonable consumer to be misled. In sharp contrast to those cases, Defendants here did not prominently display their disclaimer, did not repeat it, and did not place it immediately next to (or even anywhere near) the representations it was meant to qualify. Instead, Defendants relegated it to the distant edge of a side panel, where it was presented inconspicuously in miniscule typeface and concealed by the proliferation of other more prominently displayed text and symbols. Given these critical

51

differences, it is evident that the cases Defendants cite in their brief not only fail to support their position, but rather confirm the untenable nature of their motion.

>        2.    **The reasonable consumer would interpret the term "100% Additive Free-Natural Tobacco" to mean exactly what it says, that Defendants' tobacco is devoid of additives, which it is not.**

Defendants' assurance that their tobacco is "Additive-Free" is false "because Defendants use the filter as a means of adding menthol to the purportedly additive-free tobacco," and because menthol, being "highly volatile," "migrates into the tobacco and throughout the cigarette, providing the menthol flavor." (¶7, 67.) Indeed, the FDA has recognized that "menthol diffuses throughout the cigarette irrespective of where it was applied," and Defendants addition of menthol (an additive) to the tobacco makes their "Additive-Free" claims "literally false." (¶ 67.)

The use of literal falsities is, of course, barred by each of the consumer protection statutes at issue here. Defendants do not contend otherwise, but instead assert that "Plaintiffs cannot plausibly claim that a reasonable consumer would be misled into believing that NAS menthol cigarettes do not contain menthol." (Def. Mem. at 47.) Fatal to that contention is the fact that Plaintiffs are not claiming they were misled into believing that NAS menthol cigarettes do not utilize menthol. Instead, they are claiming they were misled into believing that the **tobacco** Defendants used (as opposed to any other portion of the cigarette, *e.g.*, the filter) was, as Defendants promised it would be, "100% Additive-Free Natural Tobacco." Because it was not, Plaintiffs have stated a viable claim under each of the relevant consumer protection statutes.

52

**3.      *A reasonable consumer could interpret the term "Natural" to mean that Defendants have not altered their tobacco through manufacturing processes.***

"Defendants proclaim on every package of Natural American Spirit Cigarettes that they are 'Natural,'" and reinforce that assertion with advertisements that include images of tobacco leaves.  (¶¶ 43, 70.) Contrary to these representations, Defendants cigarettes "[are] anything but natural." (¶ 71.) Indeed, "Defendants subject the tobacco in Natural American Spirit cigarettes to various complex, highly technical and unnatural engineering processes." (¶ 71.) For example, they artificially blend their tobacco, and they utilize a process called "flue curing," whereby the tobacco is heated to seal in sugars and artificially lower the pH of cigarette smoke. (¶¶ 72-73.) These processes alter the properties of the tobacco, and are no different than those employed by other cigarette manufacturers, though Defendants' use of the word "Natural" implies otherwise, thereby misleading reasonable consumers as to the true nature of their products. (¶¶ 74-78.)

Defendants contend, without any basis, that no reasonable consumer could believe that the tobacco they use "is simply plucked from the ground and put into cigarettes, free of any manufacturing intervention." (Def. Mem. 47.) The semantics of Defendants' foregoing assertion are important. To be clear, Plaintiffs understand that cigarettes do not spring from the ground fully formed. It does not necessarily follow, however, that this understanding translates into a corresponding inescapable awareness that Defendants artificially alter the tobacco itself from the "Natural" state in which it was harvested before selling it to consumers. That chemical alteration is the basis of Plaintiffs' claims.

Courts have rejected arguments similar to that forward by Defendants here in a wide array of cases where the term "Natural" has been used to describe a product. *See, e.g., Astiana v.*

*Hain Celestial Group, Inc.*, 783 F.3d 753, 756 (9th Cir. 2015) ("Although the underlying question of what constitutes a 'natural' cosmetic poses a fascinating question, it is not the one we answer."); *Jou*, 2013 WL 6491158, at *8 (denying motion to dismiss complaint premised on "natural" baby wipes); *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1385 (S.D. Fla  2014) (same for "natural" granola bars); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *1 (same for "natural" corn chips).

Here too, the Court should reject Defendants' attempt to substitute its own (biased) view of how the reasonable consumer would interpret its marketing with the allegations of the Complaint.  That issue cannot be determined on a motion to dismiss, and must be left for the finder of fact after the completion of discovery.

In light of the foregoing, it is evident that Defendants' use of the term "Natural" has the potential to mislead a reasonable consumer into believing that they have not materially altered their tobacco through manufacturing processes before offering Natural American Spirit cigarettes for sale to the public. Accordingly, Defendants have failed to prove "beyond doubt" that "'the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief.'" *Global Network Communs., Inc. v. City of New York*, 458 F.3d 150, 154 (2d Cir. 2006). Thus, Defendants' motion should be denied.

### C.   The Statutes of Illinois, New Jersey, and Ohio Apply Here

#### 1.   *Illinois Count II*

The Illinois Uniform Deceptive Trade Practices Act makes it unlawful to "advertise[] goods or services with intent not to sell them as advertised," and to "engage[] in any other conduct which similarly creates a likelihood of confusion or misunderstanding." 815 ILL. COMP.

STAT. ANN. 510/2(a)(9), (a)(12). The statute provides consumers with a private right of action for injunctive relief when "the consumer can allege facts indicating [a] likelihood of damage in the future." *Robinson v. Toyota Motor Credit Corp.*, 735 N.E.2d 724, 735 (Ill. App. Ct. 2000).

Defendants incorrectly argue that Plaintiffs cannot seek injunctive relief because now that they are allegedly aware of Defendants' deceptive conduct, they are unlikely to be harmed in the future. (Def. Mem. 49-50.) Defendants fail to even acknowledge, much less address, well-reasoned authority contrary to their position.

Plaintiffs have alleged that if Defendants are allowed to continue their deceptive advertising practices, there is a continuing risk to reasonable consumers. Plaintiffs generally seek injunctive relief to prohibit Defendants from continuing to deceive customers with their deceptive advertising and marketing practices. Defendants erroneously argue that because class representative Plaintiffs are now aware of Defendants' deception, and thus cannot be fooled again, putative class members likewise cannot be fooled.  This result betrays reality.  As one court recently held:

> the public policy conundrum inherent in the contrary view: the injunctive provisions of consumer protection statutes such as ICFA could never be invoked to enjoin deceptive practices if the complaining consumer's standing dissipated the moment she discovered the alleged deception and could no longer be fooled.

*Leiner v. Johnson & Johnson Consumer Cos.*, case no. 15-cv-5876, 2016 WL 128098, at *1 (N.D. Ill. Jan. 12, 2016) (holding plaintiff has standing to sue for injunctive relief under a state consumer protection statute.).

This Court should take a similar approach. Under Defendants' narrow view, the only victims of deceptive advertising that could have standing to seek injunctive relief would be those *unaware* of the fraudulent conduct--such persons would of course never file suit. This approach

is inequitable and undermines the substantive statutes on which the claims are asserted. Here, Plaintiffs alleged a legally cognizable injury, giving them standing to pursue injunctive relief under the consumer protection statutes. If Defendants' conduct is not enjoined, consumers and other putative class members, who may not even be aware of Defendants deceptive trade practices due to the early stage of the current proceedings, will continue to suffer.

### 2.      New Jersey Count II

Defendants argue that Plaintiffs' claim under New Jersey's Truth-in-Consumer Contract, Warranty and Notice Act fails because they have not adequately alleged a predicate statutory violation. This assertion is false. First, Plaintiffs have pled sufficient facts supporting multiple predicate violations under the New Jersey Consumer Fraud Act ("CFA"), and that Defendants made statements capable of misleading a reasonable consumer. (*See* New Jersey Count I.) Second, Plaintiffs have satisfactorily stated a claim under New Jersey's Truth-in-Consumer Contract Warranty and Notice Act (TCCWNA).

### a.      Direct Violations of The New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, et seq.

The CFA forbids affirmative acts and knowing omissions that constitute deceptive trade practices as specified in the Act, as well as violations of certain regulations adopted by the Division of Consumer Affairs. *Barry v. Arrow Pontiac, Inc.*, 100 N.J. 57 (1985). Unlawful acts under the CFA "fall into three general categories: affirmative acts, knowing omissions, and regulation violations. The first two are found in the language of N.J.S.A. 56:8-2, and the third is based on regulations [promulgated under the CFA]. A practice can be unlawful even if no person was in fact misled or deceived thereby. The capacity to mislead is the prime ingredient of all types of consumer fraud." *Id.* at 17.

As stated above, Plaintiffs have alleged facts supporting Defendants' multiple direct violations of the CFA, defined broadly at N.J.S.A. 56:8-2 as "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission…" With respect to what constitutes an "unconscionable commercial practice," the New Jersey Supreme Court explained in *Kugler v. Romain*, 58 N.J. 522 (N.J. 1971), that unconscionability is "an amorphous concept obviously designed to establish a broad business ethic." *Id.* at 543. The standard of conduct that the term "unconscionable" implies is lack of "good faith, honesty in fact and observance of fair dealing." *Cox*, 647 A.2d at 462.

Plaintiffs' have pled facts supporting multiple violations under the CFA, and that Defendants made statements capable of misleading a reasonable consumer. Defendants engaged in acts of omission, including, but not limited to knowing concealment, suppression and omission of material facts; unconscionable commercial practices that demonstrate a lack of good faith and a disregard for honesty and fair dealing in their labeling practices; and misrepresentations and false, deceptive, and misleading statements with respect to Natural American Spirit cigarettes.

### b. Plaintiffs' claims under The Truth-In-Consumer-Contract, Warranty and Notice Act ("TCCWNA")

The New Jersey legislature enacted TCCWNA in 1981 "to prevent deceptive practices in consumer contracts by prohibiting the use of illegal terms or warranties in consumer contracts." *Watkins v. DineEquity, Inc.*, 591 Fed. Appx 132, 134 (3d Cir. 2014). Although the TCCWNA does not establish consumer rights or seller responsibilities, the statute bolsters rights and

responsibilities established by other laws. *Id*. TCCWNA creates liability whenever a seller presents a consumer with a covered writing that "contains terms contrary to any established state of federal right of the consumer." *Id*. The rights and responsibilities to be enforced by TCCWNA are drawn from other legislation, including the CFA. *Id*.

To state a claim under TCCWNA, a plaintiff must allege each of four elements: (1) the plaintiff is a consumer; (2) the defendant is a seller; (3) the "seller offers a consumer a contract" or gives or displays any written notice, or sign; and (4) the contract, notice or sign includes a provision that "violate[s] any legal right of a consumer" or responsibility of a seller. *Id*. at 135. Not only have Plaintiffs' satisfied these elements, Defendants do not even dispute that Plaintiffs have satisfied each element under the TCCWNA. Instead, they argue that Plaintiffs' have not adequately alleged a predicate statutory violation that their TCCWNA claim can stand on. Defendants' argument is devoid of merit and should fail. Given Defendants' conduct, Plaintiffs have sufficiently laid out facts supporting multiple violations under the CFA, to which the rights and responsibilities may now be enforced under the TCCWNA.

### 3.     Ohio Count I

Defendants move to dismiss Plaintiffs' Ohio Count I, arguing that the pre-suit notice required by the Ohio state consumer protection statutes was not provided. This argument fails.

As a threshold matter, Plaintiffs were not required to provide pre-suit notice in this federal action because the various state notice requirements, which are purely procedural in nature, have no effect in federal court. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938) (federal court sitting in diversity must apply relevant substantive rather than procedural state law requirements to state law claims). Consequently, courts routinely hold that state notice statutes are trumped by Rule 23. *See, e.g.*, *Mace v. Van Ru Credit Corporation*, 109 F. 3d 338, 345-46 (7th Cir. 1997) (pre-suit notice provisions like those at issue here, do "not grant or deny a substantive right . . . [r]ather, it affects the period within which that right can be exercised."); *Braddock v. Orlando Reg'l Health Care Sys., Inc.*, 881 F. Supp. 580 (M.D. Fla. 1995) (denying motion to dismiss for lack of pre-suit notice, holding that "where states have created specialized hurdles for filing causes of action, as Florida has with regard to medical malpractice suits, the Eleventh Circuit has consistently favored the federal rules…As a result of this conflict, the heightened notice requirement followed by a waiting period before formally filing suit should not be considered part of the substantive law of a state, to be applied in federal court.").

Here, the pre-suit notice requirements of Ohio are, in the words of the *Braddock* court, "specialized hurdles for filing causes of action." *Braddock*, 881 F. Supp. at 583-84. They do "not grant or deny a substantive right . . . [r]ather, [they] affect the period within which that right can be exercised." *Mace*, 109 F. 3d at 346. They are, in short, purely procedural.  Since Federal Rule of Civil Procedure 23 does not contain a similar pre-suit notice requirement, the state rules

requiring such notice conflict with the federal rule, and thus require application of the federal rule. *Caster v. Hennessey*, 781 F. 2d 1569, 1570 (11th Cir. 1986) (federal law governs pleading requirements). Accordingly, Federal Rule of Civil Procedure 23 controls, and Defendants' motion to dismiss for lack of compliance with Ohio's notice requirement must fail.

However, even if this Court finds that the certain state pre-suit notice requirement applies to this case, Defendants' motion to dismiss still fails because Ohio's notice requirements have been satisfied. Plaintiffs have pled sufficient facts in their complaint that provided Defendants with sufficient written notice of the nature of their claims, including a detailed account of Defendants' wrongful and deceptive conduct and the economic harms Plaintiffs' suffered from such conduct. (CAC at ¶¶ 95-96.)

Defendants also conveniently ignore that pre-suit notice requirements are to be interpreted liberally and that courts typically consider them as merely formalistic and ceremonial. *Whitaker v. M.T. Auto., Inc.*, 855 N.E.2d 825, 829 (Ohio 2006) (stating that "[t]he CSPA is a remedial law which is designed to compensate for traditional consumer remedies and so must be liberally construed."). Accordingly, even if the notices Plaintiffs provided Defendants are deemed insufficient, there can be little doubt that Plaintiffs' individual and subsequent consolidated complaints are enough to cure the defect.

#### 4.      *Ohio Count II*

Defendants also move to dismiss Ohio Count II on the grounds that "Plaintiffs' claim under the Ohio Deceptive Trade Practices Act fails because that law does not create a right of action for individual consumers." (Def. Mem. at 50.)  This argument should be rejected because the express language of the Ohio Deceptive Trade Practices Act ("ODTPA") affirmatively grants the plaintiffs standing. *See Schumacher v. State Auto Mut. Ins. Co.*, 47 F. Supp. 3d 618, 630-32 (S.D. Ohio 2014) ("The limited number of Ohio lower courts to have considered this issue immediately jump to a comparison of the ODTPA with the Lanham Act without first considering the *actual language* of the ODTPA. That language plainly provides that a "person" may "commence a civil action" against another "person" who has committed a "deceptive trade practice"); *Bower v. IBM,* 495 F. Supp.2d 837, 843 (S.D. Ohio 2004) (holding that consumer has standing to sue under ODTPA).

The cases relied on by Defendants have all but ignored the plain language of the statute, and have relied instead on the ODTPA's similarity to the federal Lanham Act. *See, e.g.*, *Dawson v. Blockbuster, Inc.*, case no. 86451, 2006 WL 1061769 (Ohio Ct. App. 2006). Those courts reason that because "[a]t least half of the circuits hold . . . that [the Lanham Act] bars a consumer from suing," consumers should have no standing to sue under the ODTPA either. *Id.* at *4; *see also Blankenship v. CF Moto Powersports, Inc.*, 944 N.E. 2d 769, 777 (Ohio Ct. Com. Pl. 2011) ("Lanham Act does not provide for a cause of action for a consumer"). The text of the ODTPA is unambiguous, however, and the Court need not look to the Lanham Act. Rather, this court should simply apply the plain language of the statute and deny the motion to dismiss the Plaintiffs' action for damages under the ODTPA.

61

IV.    **PLAINTIFFS' UNJUST ENRICHMENT CLAIMS ARE PROPERLY PLED**

A.    **Plaintiffs' Unjust Enrichment Claims Are Governed by the Law of the State Where Plaintiffs Purchased the Cigarettes, and Procedural Questions Are Governed by Federal Law**

Plaintiffs agree with Defendants that their unjust enrichment claims are governed by the substantive law of the state in which the cigarettes were purchased. Procedural questions are governed by federal law. *See Kerns v. Bd. of Commissioners of Bernalillo Cty.*, case no. 07-cv-0771 JB/WPL, 2015 WL 7873783, at *17 (D.N.M. Nov. 19, 2015). In multidistrict litigation proceedings, the law of the circuit where the transferee court sits governs questions of federal law. *Van Dusen v. Barrack*, 376 U.S. 612, 639 n.40 (1964); *In re Gen. Am. Life Ins. Co. Sales Practices Litig.*, 391 F.3d 907, 911 (8th Cir. 2004).[15]

B.    **Plaintiffs Have Adequately Alleged Misleading Conduct**

Defendants argue that Plaintiffs' unjust enrichment claims "fail" because Plaintiffs "have failed to plausibly allege that Defendants made *any* misleading representations." (Def. Mem. at 54–55). This argument is meritless, as Plaintiffs have shown above. Moreover, Plaintiffs' Complaint unquestionably alleges that Defendants have made misleading "natural" and "additive-free" claims in their labeling and advertising. (¶¶ 40–87.) These allegations are also re-alleged and incorporated by reference in Plaintiffs' unjust enrichment claims. (¶¶ 170, 187, 192, 209, 210, 242, 243, 259, 260, 278, 283, 307, 308, 334, 335, 366, 367, 387, 388, 418, 420, 443, 444.) Plaintiffs' factual allegations, which must be accepted as true for purposes of a Rule

---

[15]  The Tenth Circuit's decision in *Olcott v. Delaware Flood Co.*, 76 F.3d 1538, 1546-47 (10th Cir. 1996), is not to the contrary because that decision was based on "the unique language and purpose of 15 U.S.C. § 78aa–1," where the federal law was not intended to be geographically uniform. *See In re Indep. Serv. Organizations Antitrust Litig.*, CIV. A-md-1021, 1998 WL 919125, at *2 (D. Kan. Dec. 31, 1998) (distinguishing *Olcott*).

12(b)(6) motion, are thus sufficient to "state a claim for relief that is plausible on its face." *Tavasci v. Cambron*, case no. 16-cv-0461 JB/LF, 2016 WL 6405896, at *12 (D.N.M. Oct. 25, 2016).

> ### C.   Defendants' Arguments for Dismissal of Plaintiffs' Unjust Enrichment Claims Are Premature

Defendants argue that under the law of ten states, Plaintiffs' unjust enrichment claims must be dismissed because they have an "adequate remedy at law." (Def. Mem.  at 55–60.) These arguments are premature at the Rule 12(b)(6) motion to dismiss stage of litigation because Federal Rule of Civil Procedure 8(d) permits the pursuit of alternative and inconsistent claims. *Kikumura v. Osagie*, 461 F.3d 1269, 1296 (10th Cir. 2006). Numerous district courts in multidistrict litigations have found that it is premature to dismiss unjust enrichment claims based on "adequate remedy at law" arguments at the pleading stage under Rule 8(d). *See, e.g.*, *In re Dial Complete Mktg. & Sales Practices Litig.*, case no. 11-md-2263-SM, 2013 WL 1222310, at *8 (D.N.H. Mar. 26, 2013); *In re Light Cigarettes Mktg. Sales Practices Litig.*, 751 F. Supp. 2d 183, 192 (D. Me. 2010); *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1321 (S.D. Fla. 2010). Defendants' "adequate remedy at law" arguments are also contrary to the presumption that "[a]bsent specific legislative intent to the contrary … state statutes are interpreted *not* to displace state common law causes of action." *In re Light Cigarettes Mktg. Sales Practices Litig.*, 751 F. Supp. 2d at 193. Defendants have not identified any provisions in the relevant state consumer protection laws that show an intent to provide exclusive remedies or to displace equitable common law claims.

**D.      Defendants' "Adequate Remedy at Law" Arguments Are Legally Incorrect**

In addition to being premature, Defendants' "an adequate remedy at law" arguments are not supported by the state law of the ten states addressed in Defendants' Motion.

**Colorado:** Under Colorado law, unjust enrichment claims may proceed in addition to a tort claim because unjust enrichment provides an equitable restitution-based remedy that is different from the compensatory relief generally offered by tort claims. *See L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 125 F. Supp. 3d 1155, 1175–76 (D. Colo. 2015). Plaintiffs' unjust enrichment claims, including those sounding under Colorado law, specifically request restitution (¶ 193), and thus should be allowed to proceed. Defendants' reliance on *Francis v. Mead Johnson & Co.*, case no. 10-cv-00701-JLK, 2010 WL 5313540, at *9 (D. Colo. Dec. 17, 2010), is misplaced because that decision specifically acknowledged that "an unjust enrichment claim may be appropriate where the objective of available legal remedies is different," as is the case here.

**Florida:** Under Florida law, an unjust enrichment claim fails only upon a showing that an express contract exists. *Williams v. Bear Stearns & Co.*, 725 So. 2d 397, 400 (Fla. Dist. Ct. App. 1998). Defendants have not argued that there is an express contract, and thus Plaintiffs' Florida Count II should not be dismissed.[16]

**Massachusetts:** Defendants' argument that the "mere availability" of statutory relief bars a claim for unjust enrichment is not supported by Massachusetts law. In both of the cases cited

---

[16] Defendants' reliance on *Herazo v. Whole Foods Mkt., Inc.*, case no. 14-cv-61909, 2015 WL 4514510, at *2–*3 (S.D. Fla. July 24, 2015), is misplaced because there was an express contract in that case. *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005), does not aid Defendants, as the interpretation of Florida law has been implicitly overruled by the Eleventh Circuit's decision in *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Center, Inc.*, 427 Fed. Appx. 714, 722 (11th Cir. 2011).

by Defendants,[17] the cited legal authority can be traced back to a footnote in *Adrion v. Knight*, case no. 07-cv-11277-RGS, 2009 WL 3152885, at *1 (D. Mass. Sept. 28, 2009), which, in turn, relies upon two Delaware cases applying Delaware law, and one Massachusetts case that does not provide any support for the sweeping claim that the "mere availability" of a legal remedy precludes an unjust enrichment claim. *See Lopes v. Com.*, 811 N.E.2d 501, 509 (Mass. 2004) (finding unjust enrichment theory of recovery under a contract not viable because there was no contract between the parties). The district court cases cited by Defendants are also contrary to First Circuit precedent holding that it is premature to dismiss unjust enrichment claims at the motion to dismiss stage. *See Lassv. Bank of America, N.A.*, 695 F.3d 129, 140–41 (1st Cir. 2012); *see also Depianti v. Jan-Pro Franchising Int'l, Inc.*, 39 F. Supp. 3d 112, 143 (D. Mass. 2014) (allowing both unjust enrichment claim and unfair or deceptive business practices claim to proceed at summary judgment stage).

**Michigan:** Under Michigan law, the elements of an unjust enrichment claim do not include the non-existence of an adequate legal remedy. *See Sweet Air Inv., Inc. v. Kenney*, 739 N.W.2d 656, 663 (Mich. 2007). Defendants reliance on *Tkachik v. Mandeville*, 790 N.W.2d 260, 265 (Mich. 2010), is misplaced because the court held that the plaintiff's unjust enrichment claim was ***not*** precluded, explaining that "[a] remedy at law, in order to preclude a suit in equity, must be complete and ample, and not doubtful and uncertain." *Id.* at 265. It is premature at this stage to determine whether Plaintiffs' statutory claims will provide "complete" relief that is "not doubtful and uncertain." *Payne v. Wood*, 62 F.3d 1418 (6th Cir. 1995).

---

[17] The two cases cited by the Defendants are distinguishable because in *Reed v. Zipcar, Inc.*, 883 F. Supp. 2d 329 (D. Mass. 2012), there was an express contract, and in *Ferreira v. Sterling Jewelers, Inc.*, 130 F. Supp. 3d 471 (D. Mass. 2015), the plaintiff offered no argument on her unjust enrichment claim and thereby waived it.

**New Jersey:** Under New Jersey law, the elements of an unjust enrichment claim are: "(1) that the defendant has received a benefit from the plaintiff," and "(2) that the retention of the benefit by the defendant is inequitable." *Wanaque Borough Sewerage Auth. v. Twp. of W. Milford*, 677 A.2d 747, 753 (N. J. 1996). Plaintiffs' allegations satisfy these elements. (*See* ¶¶ 310-313.) Neither of the cases cited by Defendants support dismissal of Plaintiffs' unjust enrichment claims at the motion to dismiss stage, which, as discussed above, would be premature. *See Nat'l Amusements, Inc. v. New Jersey Tpk. Auth.*, 619 A.2d 262, 267 (N.J. Law. Div. 1992) (dismissing unjust enrichment claim at summary judgment stage because defendants derived no benefit from plaintiff); *Adamson v. Ortho-McNeil Pharm., Inc.*, 463 F. Supp. 2d 496, 505 (D.N.J. 2006) (dismissing unjust enrichment claims because defendant did not make any actionable misrepresentations, and thus there was nothing "unjust" about product purchase).

**New Mexico:** Under New Mexico law, the availability of statutory remedies does not automatically foreclose equitable remedies that address the same claim unless the statute contains express language that is intended to foreclose equitable remedies. *See Bustillos v. Bd. of Cty. Comm'rs of Hidalgo Cty.*, 310 F.R.D. 631, 677 (D.N.M. 2015) (citing *Starko, Inc. v. Presbyterian Health Plan, Inc.*, 276 P.3d 252 (N.M. Ct. App. 2011)); *see also Sims v. Sims*, 930 P.2d 153, 160 (N.M. 1996) ("only if a statute so provides with express language or necessary implication will New Mexico courts be deprived of their inherent equitable powers."). The New Mexico Unfair Practices Act ("NM UPA"), N.M. STAT. ANN. §§ 57-12-1, *et seq.*, does not contain any express language foreclosing equitable remedies, and thus it does not foreclose Plaintiffs' unjust enrichment claims. Defendants' reliance on *Abraham v. WPX Energy Prod., LLC,* 20 F. Supp. 3d 1244, 1271–72 (D.N.M. 2014), is misplaced because in that case there was

66

an enforceable contract against another party and the Court found "a very real likelihood that the plaintiffs will recover on the contract claim against a different party." *Id.* at 1284–85. In this case, Defendants contend that Plaintiffs' unjust enrichment claim is foreclosed by statutory remedies under the NM UPA, not by an enforceable contract, and thus this Court's decision in *Bustillos*, rather than *Abraham*, identifies the applicable standard under New Mexico law. *See Bustillos*, 310 F.R.D. at 676–77. As stated above, the statute does not preclude unjust enrichment. Accordingly, Defendants' argument is without merit and must be denied.

**New York:** The elements of an unjust enrichment claim under New York law are "(1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Georgia Malone & Co. v. Rieder*, 973 N.E.2d 743, 746 (N.Y. 2012). Plaintiffs have adequately pled each element. (*See* ¶¶ 366-73.) As discussed above, dismissal of Plaintiffs' unjust enrichment claim at this stage would be premature because Plaintiffs are permitted to plead in the alternative and because it is too early to determine if they have an adequate remedy at law. *See TOT Payments, LLC v. First Data Corp.*, 128 A.D.3d 468, 469 (N.Y. App. Div. 2015) (finding unjust enrichment cause of action could be properly pleaded in the alternative to other claims); *Farina v. Bastianich*, 116 A.D.3d 546, 549 (N.Y. App. Div. 2014) (reversing dismissal of unjust enrichment claims and finding that possibility of compensation under other claims did not bar unjust enrichment claims at motion to dismiss stage); *Fenerjian v. Nongshim Co., Ltd*, 72 F. Supp. 3d 1058, 1086 (N.D. Cal. 2014) (finding dismissal of an unjust enrichment claim under New York law premature at the motion to dismiss stage). Neither of the cases cited by Defendants support dismissal of Plaintiffs' unjust enrichment claims. *See Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 81, 883

67

N.E.2d 990, 996 (2008) (dismissing unjust enrichment claim after determining that plaintiff had a valid claim under state labor law); *In re First Cent. Fin. Corp.*, 377 F.3d 209, 215-16 (2d Cir. 2004) (declining to find a constructive trust where a valid agreement controlled the rights and obligations of the parties).

**North Carolina:** The absence of an adequate remedy at law is not an element of a *prima facie* case for unjust enrichment under North Carolina law. *See In re Processed Egg Prod. Antitrust Litig.*, 851 F. Supp. 2d 867, 915 fn 50 (E.D. Pa. 2012); *see also In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, case no. 9-cv-3690, 2015 WL 3988488, at *36 (N.D. Ill. June 29, 2015) (applying North Carolina law and finding adequate remedy at law argument premature at motion to dismiss stage). The two district court cases cited by the Defendants actually confirm that it would be premature to dismiss Plaintiffs' North Carolina unjust enrichment claim. *See Thompkins v. Key Health Med. Sols., Inc.*, case no. 12-cv-613, 2015 WL 1292228, at *10 (M.D.N.C. Mar. 23, 2015) (finding it "premature" to foreclose unjust enrichment claims at motion to dismiss stage); *Embree Const. Grp., Inc. v. Rafcor, Inc.*, 411 S.E.2d 916, 920–23 (N.C. 1992) (finding that the plaintiff had adequately stated a claim for unjust enrichment to survive a 12(b)(6) motion to dismiss).

**Ohio:** Ohio law also permits plaintiffs to plead unjust enrichment claims in the alternative to other legal claims. *See Paikai v. Gen. Motors Corp.*, case no. 07-cv-892 FCD GGH, 2009 WL 275761, at *4 (E.D. Cal. Feb. 5, 2009); *Nessle v. Whirlpool Corp.*, case no. 07-cv-3009, 2008 WL 2967703, at *6 (N.D. Ohio July 25, 2008). The case cited by the Defendant does not support dismissal under Ohio law.

**Washington:** Dismissal based on Defendants' "adequate remedy of law" argument would be premature at this stage of the litigation. *See U.S. ex rel. Kester v. Novartis Pharm. Corp.*, case no. 11-cv-8196 CM, 2014 WL 4401275, at *12 (S.D.N.Y. Sept. 4, 2014) (declining to dismiss unjust enrichment claim under Washington law at the motion to dismiss stage).

### E.   Plaintiffs' Unjust Enrichment Claims Should Not Be Dismissed Due to Lack of Direct Purchase from Defendants

Defendants also contend that Plaintiffs' claims fail under the laws of Michigan, New Jersey, North Carolina, and Ohio because "Plaintiffs do not and cannot allege that they conferred a benefit 'directly' on Defendants…" (Def. Mem. at 60.) This is false. Plaintiffs' unjust enrichment claims for each of these four states specifically alleges that Defendants "received a direct benefit" from the Plaintiffs "in the form of a price premium, increased sales and increased market share." (¶¶ 282, 310, 390, 422.) Thus, Plaintiffs have alleged that Defendants directly benefited from the purchase in multiple ways. *See Stewart v. Beam Glob. Spirits & Wine, Inc.*, 877 F. Supp. 2d 192, 200 (D.N.J. 2012) (finding a "sufficiently direct relationship" for an unjust enrichment claim, "where a plaintiff alleges that a defendant manufacturer has made false claims or misrepresentations directed for the purpose of generating retail sales, and where those retails sales could have the effect of increasing the amount of wholesale sales to the manufacturer").

Defendants also contend that Plaintiffs do not allege that they "purchased any products directly from Defendant." (Def. Mem. 61.) Fatal to that contention is the fact that Plaintiffs are not required to make such allegations under the laws of any of the four states identified by Defendants.  *See Miller v. MSX-IBS Holding, Inc.*, case no. 16-cv-10596, 2016 WL 4138238, at *7 (E.D. Mich. Aug. 4, 2016) (Michigan); *Stewart*, 877 F. Supp. 2d at 199 (noting that it would be "inequitable" under New Jersey law to allow the defendants to "insulate themselves from

69

liability on an unjust enrichment claim simply by asserting that retail sales . . . cut off any relationship between the consumers and the manufacturer"); *Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, 72 Fed. Appx. 916, 921 (4th Cir. 2003) ("Under North Carolina law, it is sufficient for a plaintiff to prove that it has conferred some benefit on the defendant, without regard to the directness of the transaction."); *Paikai v. Gen. Motors Corp.*, case no. 07-cv-892 FCD GGH, 2009 WL 275761, at *5 (E.D. Cal. Feb. 5, 2009) (Ohio).

For the reasons stated above, Defendants' motion to dismiss Plaintiffs' unjust enrichment claims under the laws of Michigan, New Jersey, North Carolina, and Ohio should be denied.

## F.    Plaintiffs' New Jersey Unjust Enrichment Claim Does Not Sound in Tort

Defendants argue that "New Jersey does not recognize an independent cause of action for unjust enrichment that sounds in tort." (Def. Mem. 62–63.) This is an incorrect statement of New Jersey law. *See In re LIBOR-Based Fin. Instruments Antitrust Litigation*, case no. 11-md-2262 NRB, 2015 WL 6243526, at *80 (S.D.N.Y. Oct. 20, 2015).

The elements of an unjust enrichment claim are "(1) that the defendant has received a benefit from the plaintiff," and "(2) that the retention of the benefit by the defendant is inequitable." *Milford*, 677 A.2d N.J. at 747. Plaintiffs have specifically alleged these elements. (¶¶ 83, 310-313.) Thus, Plaintiffs have adequately stated a claim under New Jersey law. *See Stewart*, 877 F. Supp. 2d at 196-202 (New Jersey unjust enrichment claim based on "natural" representation upheld). Moreover, Plaintiffs' New Jersey unjust enrichment claim should not be dismissed at this stage because it could properly be construed as an equitable remedy, which can be pleaded in the alternative under Federal Rule of Civil Procedure 8(a)(3). *U.S. ex rel. Kester v.*

70

*Novartis Pharm. Corp.*, case no. 11-cv-8196, 2014 WL 4401275, at *13 (S.D.N.Y. Sept. 4, 2014).

### G.      Plaintiffs' New York Unjust Enrichment Claim Should Not be Dismissed for Being Duplicative of Its Statutory Claims

Defendants also argue that Plaintiffs' New York Count III should be dismissed because under New York law "an unjust enrichment claim cannot survive where it simply duplicates, or replaces, a conventional contract or tort claim." (Def. Mem. 63). This argument is based on the same fundamental principles as Defendants' "adequate remedy at law" argument and thus it is premature and should be denied for the reasons described above. *See TOT Payments, LLC*, 128 A.D.3d at 469.

71

## V.      PLAINTIFFS' WARRANTY CLAIM IS PROPERLY STATED

Plaintiffs have satisfied the standards for pleading a claim for breach of express warranty, and this claim should not be dismissed.

### A.      Plaintiffs Properly Allege That Defendants Breached an Express Warranty

Courts consistently find that product labels create actionable express warranties. *See, e.g.*, *Vicuna v. Alexia Foods, Inc.*, case no. 11-cv-6119 PJH, 2012 WL 1497507, at *2 (N.D. Cal. Apr. 27, 2012) ("Here, plaintiffs have adequately stated a claim that the designation "All Natural" constituted a description of the potato products, or a statement of fact about the potato products, and that the warranty was breached by the inclusion of an ingredient that was arguably synthetic."). Nevertheless, Defendants' argue that "Plaintiffs cannot plausibly allege that they reasonably relied on a warranty that menthol NAS cigarettes ***do not*** contain menthol." (Def. Mem. at 65.) This is not Plaintiffs' claim at all. Rather, Plaintiffs claim that Defendants add menthol (an additive) to the tobacco, making their "Additive-Free" claims false. (¶ 68.) At the pleading stage, these allegations are more than sufficient. *Silva v. Smucker Nat. Foods, Inc.*, case no. 14-cv-6154 JG RML, 2015 WL 5360022, at *10 (E.D.N.Y. Sept. 14, 2015) ("What a reasonable consumer's interpretation of a seller's representation might be is generally an issue of fact that is not appropriate for decision on a motion to dismiss."). Here, too, Plaintiffs sufficiently alleged a breach of express warranty, and Defendants' argument as to Plaintiffs' interpretations of Defendants' representations about their cigarettes is not the proper subject of a motion to dismiss at this early stage of the litigation.

### B.      Plaintiffs Properly Allege Pre-Litigation Notice

In the Complaint, Plaintiffs allege that "[a]ll conditions precedent to Defendants' liability have been performed by the Nationwide Menthol Plaintiffs and Nationwide Menthol Subclass Members, who paid the premium price charged by Defendants to purchase their cigarettes." Additionally, Plaintiffs have plausibly alleged that Defendants had notice of its breach due to Defendants' actual knowledge that their menthol cigarettes are not "100% Additive Free." (¶¶ 67-69.)

At the pleading stage, these allegations are sufficient and courts do not require plaintiffs to provide specific facts regarding the notice each named plaintiff provided. *In re Hydroxycut Mktg. & Sales Practices Litig.*, 801 F. Supp. 2d 993, 1009 (S.D. Cal. 2011). Moreover, at the pleading stage, allegations that the defendant had actual knowledge of its alleged breach are sufficient to establish the notice requirement for breach of warranty claims. *See Keith v. Ferring Pharm., Inc.*, case no. 15-cv-10381, 2016 WL 5391224, at *7 (N.D. Ill. Sept. 27, 2016); *In re Rust-Oleum Restore Mktg., Sales Practices & Prod. Liab. Litig.*, 155 F. Supp. 3d 772, 800 (N.D. Ill. 2016) (denying motion to dismiss breach of express warranty claim in a class action case with plaintiffs from multiple states based on lack of pre-suit notice because "direct notice includes when the seller had actual knowledge of the defect of the particular product"). Defendants have not been prejudiced and they had an opportunity to cure the defect—they knew that their claims that their menthol cigarettes are "100% Additive Free" are false. (¶ 68.)

In *Rust-Oleum*, the court reasoned that the issue of notice is usually a question of fact for the jury and it went on to find "that the allegations presented are sufficient and note[d] that an exhaustive review of the factual sufficiency of each Plaintiffs' allegations regarding notice under

73

each applicable state law is not appropriate at this stage." *In re Rust-Oleum*, 155 F. Supp. 3d at 801–02. The court ruled similarly in *In re Caterpillar, Inc.*, another class action case with named plaintiffs from multiple states, when it "decline[d] to exhaustively review the sufficiency of Plaintiffs' allegations regarding notice under each applicable state law." *In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*, case no. 14-cv-3722 JBS-JS, 2015 WL 4591236, at *28 (D.N.J. July 29, 2015). There the court explained that "[a]lthough notice presents a close question in states where neither constructive notice of the alleged defect, nor filing of the complaint is sufficient to establish notice, such a conclusion would be premature at this juncture." *Id.*; *see also In re Hydroxycut*, 801 F. Supp. 2d at 1009 (the court "decline[d] to require Plaintiff to provide more specific facts regarding notice at this time because pre-litigation notice is not strictly required under the laws of a number of states," and because "under the laws of a number of states, the filing of a complaint can serve as notice").

Moreover, even if Plaintiffs did not adequately allege that Defendants had pre-litigation notice—which they did—Defendants state specific arguments relating to notice are not enough to defeat Plaintiffs' claims because those claims fall under recognized exceptions to the notice requirement. For example, in "New York, the notice requirement does not even apply to cases involving goods sold for human consumption." *In re Hydroxycut*, 801 F. Supp. 2d at 1009. Similarly, in California, courts have found that the notice requirement does not apply when an injured consumer asserts a breach of express warranty claim "against manufacturers with whom they have not dealt." *Zapata Fonseca v. Goya Foods Inc.*, case no. 16-cv-02559-LHK, 2016 WL 4698942, at *6–7 (N.D. Cal. Sept. 8, 2016) (holding plaintiff did not need to provide defendant pre-suit notice when he purchased a food product from a third party retailer).

In North Carolina, the Supreme Court has held that the filing of a lawsuit can be notice for a breach of express warranty claim. *Maybank v. S. S. Kresge Co.*, 273 S.E.2d 681, 685 (N.C. 1981). Under Illinois law, "[d]irect notice is not required when (1) the seller has actual knowledge of the defect of the particular product;" or "(2) the seller is deemed to have been reasonably notified by the filing of the buyer's complaint alleging breach of UCC warranty." *Keith v. Ferring Pharm., Inc.*, case no. 15-cv-10381, 2016 WL 5391224, at *6 (N.D. Ill. Sept. 27, 2016). Here, not only did Plaintiffs sufficiently allege notice, including that Defendants have actual knowledge of the defect, but Plaintiffs also fall under the exceptions to the notice requirement for New York, California, North Carolina and Illinois.

### C. Plaintiffs' Warranty Claims Should Not Be Dismissed Based on a Lack of Privity

Under Florida, Illinois, and New York law, courts recognize exceptions to the requirement that a plaintiff must be in privity with a defendant. *Karhu v. Vital Pharm., Inc.*, case no. 13-cv-60768, 2013 WL 4047016, at *6 (S.D. Fla. Aug. 9, 2013) (holding no privity required under Florida law for statements made on packaging); *Bietsch v. Sergeant's Pet Care Prod., Inc.*, case no. 15-cv-5432, 2016 WL 1011512, at *6 (N.D. Ill. Mar. 15, 2016) ("There are exceptions to the privity requirement… under Illinois law, a manufacturer may be liable to a buyer for breach of an express warranty for representations or promises made on the manufacturer's documents or other materials…"); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283 (S.D.N.Y. 2015) (same for New York law). Here, where Defendants are manufacturers whose misrepresentations are included on their product labels, privity is not required for Plaintiffs' express warranty claims.

## VI.   PLAINTIFFS' DEMANDS FOR INJUNCTIVE RELIEF ARE NOT MOOT

For the reasons discussed in Plaintiffs' Opposition to Defendants' Motion for Judicial Notice (ECF No. 97), this Court should not take judicial notice of Defendants' Memorandum of Agreement with the FDA's Center for Tobacco Products ("Memorandum of Agreement"). As such, Defendants' reliance on this document in their Motion to Dismiss is improper. *See Romero v. Bd. of Cty. Commissioners for the Cty. of Curry*, 202 F. Supp. 3d 1223 (D.N.M. 2016). However, even if this Court takes judicial notice of the Memorandum of Agreement, the terms of this document do not moot Plaintiffs' claims for injunctive relief, which seek to bar Defendants from using the term "Natural" on their product labels, including in the product name itself. As Defendants concede, they will continue to use "Natural" in the product brand name (Def. Mem. at 68), and "Natural" will continue to be prominently displayed on their labels. Moreover, Defendants have not even made the changes to their labels, underscoring the prematurity of their argument.

None of the cases Defendants rely on stand for the proposition that an agreement to partially remove the terms at issue from a product label renders a claim for injunctive relief moot. Here, not only do Defendants fail to meet their heavy burden to demonstrate that their wrongs will not be repeated, but they concede that they intend to continue to repeat their use of the term "Natural" on their product labels. Courts have consistently refused to dismiss claims for injunctive relief under such circumstances. *See Reese v. Odwalla, Inc.*, case no. 13-cv-00947-YGR, 2017 WL 565095, at *6 (N.D. Cal. Feb. 13, 2017). Here too, even if this Court takes judicial notice of the Memorandum of Agreement, further development of the factual record,

76

including Defendants continued use of the term "Natural" on its product labels, is necessary. Accordingly, Plaintiffs claims should not be dismissed.

Finally, Defendants argument that once they eventually remove certain uses of the terms "Natural" and "Additive Free" from their product labels, they will not resume using them in the future is misplaced. It does not moot Plaintiffs' claim for injunctive relief because a judgment from this Court is necessary not only to require Defendants to remove all use of the terms "Natural" and "Additive-Free" from the labels, but to ensure that Defendants do not resume using those terms in the future.

## VII.   THE COURT HAS JURISDICTION OVER RAI

A plaintiff need make only a *prima facie* showing of personal jurisdiction to defeat a motion to dismiss under Rule 12(b)(2). *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1090 (10th Cir. 1998).  When considering whether plaintiff has made a sufficient showing of personal jurisdiction, the Court must take the complaint's allegations as true to the extent the defendant's affidavits do not controvert them. *See Tompkins v. Executive Comm. of S. Baptist Convention*, case no. 13–cv-0840 JB, 2015 WL 1569034, at *4 (D. N.M. Mar. 31, 2015) (Browning, J.).

RAI's challenge to personal jurisdiction is unnecessary as a matter of procedure and incorrect as a matter of fact. First, Defendants do not dispute that Santa Fe and RJR are subject to this court's jurisdiction so as to allow discovery on *all* of Plaintiffs' claims against those two RAI operating companies. Second, RAI is subject to this court's jurisdiction so as to allow discovery on Plaintiffs' claims against RAI in connection with *a number of the plaintiffs* who have brought class claims. As a result, without imposing any additional burden on RAI,

substantial discovery will necessarily occur in this MDL proceeding that will shed further light on the propriety of exercising jurisdiction over RAI in the states that RAI contests jurisdiction.

RAI's challenge is also incorrect as a matter of fact because the boilerplate declaration that RAI submits fails to adequately refute Plaintiffs' allegations of RAIs substantial involvement in activities that gave rise to Plaintiffs' claims – activities that were coordinated with and conducted through RAI's operating companies that concede personal jurisdiction in connection with *all* of Plaintiffs' claims. RAI's boilerplate declaration is deficient, and it cannot be said to render Plaintiffs' specific jurisdictional allegations "uncontroverted." *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984). As alleged in the Complaint:

- "[RJRT] has service agreements with [Santa Fe] and other [RAI] subsidiaries, which according to [RAI], enables an 'integrated' system where the executives from [RAI] and [RJRT] 'collaborate to develop, coordinate, and execute programs to achieve company-wide goals and targets, and guidelines through which initiatives are reviewed and approved.'" (¶ 29.)

- "[RAI] considers [Santa Fe] an operating segment: [Santa Fe's] assets are [RAI's] assets. [RAI] essentially controls the financial operations of [Santa Fe's], including [Santa Fe's] business initiatives and capital expenditures. [Santa Fe] employees are considered [RAI]' employees; board members between [Santa Fe] and [RAI] overlap; [RAI] controls pricing for its subsidiaries; [RAI] owns its operating subsidiaries' executive offices and manufacturing facilities; [RAI] reports [Santa Fe's] financial statements in its SEC filings; and [RAI] requires [Santa Fe] to make capital investments to support other [RAI's] brands such as VUSE." (¶ 35.)

- "[RAI's] involvement and control over [Santa Fe's] advertising is exhibited in [RAI's] response to the Food and Drug Administration's (the "FDA") August 27, 2015 Warning Letter concerning the advertising of Natural American Spirit cigarettes. Mitchell A Neuhauser, Vice President and Assistant General Counsel for [RAI], responded to the FDA on September 18, 2015 on [Santa Fe's] behalf. Mr. Neuhauser also requested an in-person meeting with the FDA for mid-November. Mr. Neuhauser designated various [RAI] and [RAI's] affiliated representatives to address the issues raised in the Warning Letter. The vast majority of proposed attendees were from [RAI] or [RJRT]. (¶ 36.)

These "uncontroverted" allegations and supplemental evidence show that RAI was not simply a passive parent company, but rather an active participant. Such circumstances should result in a court exercising specific personal jurisdiction over a parent company:

> A court may assert specific jurisdiction if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities. In the tort context, a defendant has purposefully directed his activities at New Mexico or its residents when he or she has: (i) taken intentional action; (ii) the action was expressly aimed at New Mexico; and (iii) the action was taken with the knowledge that the brunt of the injury would be felt in New Mexico.

*Res. Assocs. Grant Writing & Eval. Servs. v. Southampton Union Free Sch. Dist.*, 193 F. Supp. 3d 1200, 1221 (D.N.M. 2016) (J. Browning).

Finally, it should be noted that courts have exercised personal jurisdiction over the parent tobacco company based on its involvement with the marketing, advertising and other activities of its subsidiaries over which there was personal jurisdiction. *See, e.g.*, *Simon v. Philip Morris, Inc.*, 86 F. Supp. 2d 95, 128 (E.D.N.Y. 2000) ("A number of courts in other tobacco litigation have exercised personal jurisdiction"); *Washington v. American Tobacco Co.*, No. 96–2–15056–8 SEA (Wash. Super. Ct. June 9, 1998). This Court should similarly exercise personal jurisdiction over RAI.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss should be denied.

April 6, 2017

Respectfully Submitted,

**REESE LLP**
*/s/ Michael R. Reese*
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
*mreese@reesellp.com*

*Member of Plaintiffs' Executive Committee*

**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
John A. Yanchunis
Marisa K. Glassman
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
*JYanchunis@forthepeople.com*

**HALUNEN LAW**
Melissa W. Wolchansky
Amy E. Boyle
1650 IDS Center 80 South 8th Street
Minneapolis, Minnesota 55402
Telephone: (612) 605-4098
*mwolchansky@halunenlaw.com*

**SCHLESINGER LAW OFFICES, P.A.**
Scott P. Schlesinger
Jeffrey L. Haberman
1212 SE 3rd Avenue
Fort Lauderdale, Florida 33316
Telephone: (954) 467-8800
*scott@schlesingerlaw.com*

*Plaintiffs' Co-Lead Class Counsel*

**MCGINN, CARPENTER, MONTOYA and LOVE, P.A.**
Randi McGinn
Kathy Love
201 Broadway Boulevard SE
Albuquerque, New Mexico 87102
Telephone: (505) 843-6161
*randi@mcginnlaw.com*

*Liaison Counsel*

**ZIMMERMAN REED, LLP**
Caleb Marker
2381 Rosecrans Avenue, Suite 328
Manhattan Beach, California 90254
Telephone: (877) 500-8780
*caleb.marker@zimmreed.com*

**ZIMMERMAN REED, LLP**
Hart L. Robinovitch
14646 N. Kierland Blvd., Suite 145
Scottsdale, Arizona 85254
Telephone: (800) 493-2827
*hart.robinovitch@zimmreed.com*

**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
D. Greg Blankinship
445 Hamilton Avenue - Suite 605
White Plains, New York 10605
Telephone: (914) 298-3281
*gblankinship@fbfglaw.com*

**LEVIN, PAPANTONIO, THOMAS,**
**MITCHELL, RAFFERTY & PROCTOR, P.A.**
Matthew D. Schultz
316 S. Baylen St., Suite 600
Pensacola, FL
Telephone: (850) 435-7140
Facsimile: (850) 436-7141
*mschultz@levinlaw.com*

**CUNEO GILBERT & LADUCA, LLP**
Charles J. LaDuca
8120 Woodmont Avenue - Suite 810
Bethesda, Maryland 20814
Telephone: (202) 789-3960
*charles@cuneolaw.com*

**LAW OFFICES OF RONALD A. MARRON**
Ronald A. Marron
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006

**SEARCY, DENNEY, SCAROLA,**
**BARNHART & SHIPLEY, P.A.**
James W. Gustafson
517 N. Calhoun St.
Tallahassee, Florida 32301
Telephone: (850) 224-7600

**PEARSON, SIMON & WARSHAW, LLP**
Daniel L. Warshaw
Alexander R. Safyan
15165 Ventura Boulevard, Suite 400
32502 Sherman Oaks, California 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104
*dwarshaw@pswlaw.com*

*Members of Plaintiffs' Executive Committee*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed using this Court's CM/ECF service, which will send notification of such filing to all counsel of record on April 6, 2017.

_/s/ Michael  R. Reese_
Michael R. Reese